Opinion delivered June 24, 1887.

<hr />

## No. 5596.

### EMELIO GARCIA *v.* THE STATE.

ASSAULT WITH INTENT TO MURDER—FACT CASE.—See the statement of the case for evidence *held* insufficient to support a conviction for assault with intent to murder.

APPEAL from the District Court of Travis. Tried below before the Hon. A. S. Walker.

This was a conviction for an assault with intent to murder one Charles Landes. A term of two years in the penitentiary was the penalty assessed.

Francisco Lopez was the first witness for the State. He testified that a Mexican came to the restaurant of Landes on the night alleged in the indictment and asked for Landes. Witness pointed Landes out, when the Mexican drew a gun and presented it at Landes. The witness then ran for the police. Witness could not identify the defendant as the Mexican who drew the gun on Landes.

Officer Montgomery testified, for the State, that the previous witness called him on the night of the alleged offense to arrest a Mexican. Witness went to Landes's chile stand, and just as he got there he saw a Mexican crossing the street with a gun in his hands. The Mexican ran down an alley and witness followed and shot at him. He returned the fire and escaped. Witness could not identify defendant as that man.

Deputy Sheriff Platt testified, for the State, that he arrested

the defendant about eight miles from Austin.   Defendant, after being duly cautioned, said that he went to Landes's restaurant very drunk; that he had his gun, and Landes got frightened and ran; that he then ran and was pursued by an officer; that the officer shot at him and he shot at the officer.

No brief for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE.   This is an appeal from a judgment of conviction for an assault with intent to murder one Charles Landes.

We are of the opinion that the evidence is entirely insufficient to support the judgment rendered.   On the trial the State put in evidence the voluntary statement of defendant, made after due caution.   This statement was not only reasonable, but was probably true when viewed in the light of all the facts adduced in evidence.   The most that can be said of this statement is that it showed threats upon the part of the defendant against Landes upon the happening of conditions precedent, which conditions never came to pass as far as shown by the record, and there is not a particle of evidence that Landes was ever assaulted by defendant.

Because the evidence is insufficient, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered June 24, 1887.

# INDEX.

## A.

ACCOMPLICE TESTIMONY.
> *See* CHARGE OF THE COURT, 2.
>> EXHIBITING GAMING BANK, 2.
>> Concealment of knowledge that a felony is to be committed does not make the party concealing it an accomplice or a *particeps criminis*, and therefore does not necessitate corroboration of his testimony inculpatory of the accused. *Smith v. State*, 357.

ADEQUATE CAUSE.
> The uttering of insulting words by the deceased about a female relative of the slayer, though they were not uttered in the presence of the slayer, is adequate cause to reduce a homicide to manslaughter, provided the slayer was informed of the utterance of the insulting words, and slew the deceased upon the first meeting after being so informed. But, before the slayer can prove the utterance of the insulting words in mitigation of the homicide, it devolves upon him to establish a com plete predicate by showing that he was informed of the utterance of the insulting words before he killed the deceased, and that he killed him on the first meeting thereafter. Proof that the insulting words were communicated to the slayer is not enough to establish a predicate; it must go farther and show that the killing occurred upon the first meeting of the parties. *Howard v. State*, 265.

ADULTERY.
> In the trial of appellant for adultery with one J., in Bosque county, the State was permitted over objection by the defense, to prove certain acts and conduct of J. and appellant in other counties and since the presentment of the indictment; and the trial court, with reference to this evidence, refused to instruct the jury as to the special purpose for which it was competent, and to guard the jury against convicting the accused of adultery in Bosque county by considering such evidence as independent proof thereof. Bills of exception were reserved by the defense to the admission of the proof and to the rejection of the requested instructions. *Held*, that there was no error in admitting the evidence, in view of the other proof in the case, but it was error to omit and refuse to limit it to its proper purpose, and properly to guard the jury against misapplying it to the prejudice of the accused. *Funderberg v. State*, 392.

## AFFIDAVIT.

1. Variance, as to the date of the alleged offense, between the affidavit or complaint and the information based upon it, is fatal, and a motion to quash the information should prevail. *Huff v. State*, 291.

2. The affidavit on which the information was based alleged November 16, 1885, to be the date of the effense, but the information laid said date as the sixth of said November. *Held* that the variance is fatal to the conviction. *Baumgartner v. State*, 335.

## AMENDMENT.

*See* SPECIAL VENIRE.

1. In the return of a sheriff upon a special venire, he set down in a column the names of twelve of the veniremen, and opposite the first name wrote "not found after diligent search." Under this and opposite each of the other names he put ditto marks, to indicate the same return as to them. The defense moved to quash the writ because the return did not, as required by the Code of Procedure, Article 614, state the diligence used to summon the said veniremen and the cause of the failure to do so. The trial court permitted the sheriff to amend his return so as to show that each of said twelve veniremen had moved out of the county or was absent from it. The defense excepted to the overruling of the motion to quash, and also to the amendment of the return, and to the sufficiency of the return as amended. *Held*, that the amendment was properly allowed, and none of the objections are tenable. *Powers v. State*, 42.

2. In support of a motion to amend the complaint in this case, the county attorney filed his affidavit to the effect that, since the filing of the complaint and information, some unknown person had fraudulently added a figure to the original figure inserted by him in the complaint to indicate the date of the offense, by which fraudulent addition the variance between the complaint and the information was made to appear. Upon the hearing of evidence the trial court sustained the motion to amend, and the trial proceeded. *Held*, that the proceeding was wholly unauthorized. The date of the offense, both in the complaint and information, being matter of substance and not of form merely, could not be amended, either upon motion or by order of the court. *Huff v. State*, 291.

3. Matters of form in an indictment or information are amendable before both parties announce ready for trial upon the merits, but not thereafter. Allegations as to the court and term at which the indictment was presented are matters of form, and amendable, subject to the above limitations. *Osborne v. State*, 431.

4. Over objection by the defense, the trial court permitted the State to substitute, by amendment, the words "fourth Monday" in place of "first Monday," where the indictment designated the commencement of the term at which the indictment was presented. Prior to the allowance of the amendment, both the State and the defense had announced ready for trial on the merits, but the defendant had not been arraigned, nor had he pleaded to the indictment. *Held*, that the allowance of the amendment, after such announcement by both parties, though before arraignment or plea, was erroneous, because in contraven-

Index.

AMENDMENT—*continued*.

tion of Article 550 of the Code of Criminal Procedure; but, as the defect was in a matter of a mere form, and as no exception therefor was taken to the indictment, the error was cured by the verdict, and is not cause for reversal. *Id.*

APPEAL BOND.

If on an appeal from a justice's court to the county court the appeal bond conforms substantially to the requirements prescribed therefor by Article 854 of the Code of Criminal Procedure, it is sufficient, whether in literal compliance with them or not. *Oyechawaich v. State,* 430.

ARREST.

1. A peace officer has no authority beyond the limits of his county, to arrest a party accused of crime. *Ledbetter v. State,* 247.

2. Warrant of arrest issued by a justice of the peace is wholly without authority in a different county, unless it be indorsed by a judge of the Supreme Court, Court of Appeals, district or county courts (when it may be executed anywhere in the State), or by a magistrate of the county in which the accused was found, when it may be executed in the latter county. If so indorsed, the warrant must be executed by an officer of the county in which the accused is found. *Id.*

3. Homicide to prevent illegal arrest amounts, as a general rule, to no higher offense than manslaughter. *Id.*

ARSON.

Under the Penal Code of this State the willful burning of any "house" is arson, and a house is any building, edifice or structure enclosed with walls and covered, whatever the materials used for building. Though the house be neither destroyed nor seriously injured, the "burning" is complete when the fire has communicated to it, and, if the burning was designed, it is immaterial by what means the fire was communicated. Appellant, while confined in the wooden prison of a county poor farm, set fire to the roof of the prison, burning a hole therein. Being tried for arson, there was no evidence tending to disclose with what intent he set fire to the building. To the charge given by the trial court to the jury the defense objected, in substance, because it did not instruct for an acquittal if the appellant's intent was to effect an escape, and not to consume or injure the building. *Held,* on a review of both elementary and adjudicated authority, that the exception to the charge was not well taken. Delaney's case, 41 Texas, 601, is overruled on this point. *Smith v. State,* 357.

ASSAULT AND AGGRAVATED ASSAULT AND BATTERY.

*See* ASSAULT TO MURDER, 1.

1. By an unbroken line of decisions in the Supreme as well as this court it has been as it is now *held,* that a conviction for aggravated assault may be had under an indictment for assault with intent to mur-

ASSAULT AND AGGRAVATED ASSAULT AND BATTERY—*continued.*
der, notwithstanding no circumstance of aggravation be alleged in the in-
dictment. (Hurt, J., dissents.) *Bolding v. State,* 172.

2. The law confides to teachers a discretionary power to punish their
pupils, and exonerates them from responsibility unless the punishment
be excessive or malicious. Moderate restraint and correction of a pupil
by his teacher is not an offense, but is authorized by law; and it seems
that the authority of a teacher is not limited to the time the pupil is at
the school room or under the actual control of the teacher. *Id.*

3. A homicide committed in mutual combat would not be reduced
to manslaughter, under the code of this State, unless it was com-
mitted under the influence of sudden passion arising from an adequate
cause; and therefore, if death did not ensue, the offense would not be
mitigated from assault with intent to murder to aggravated assault.
Note the distinction taken in the opinion between manslaughter under
the code of this State and manslaughter at common law and in some
of the other States. *Spearman v. State,* 224.

4. Reasonable chastisement inflicted by a school teacher upon a pupil
for a violation of a rule of the school, even though the violation did
not occur at the school house nor during school hours, does not, under
the laws of this State, constitute an assault. See the opinion *in extenso*
for the substance of evidence *held* insufficient to support a conviction
for aggravated assault and battery. *Hutton v. State,* 386.

5. "Striking and beating with a pistol in a manner calculated to in-
flict serious bodily pain and injury" does not *per se* constitute an aggra-
vated assault. If, as used, the pistol was a deadly weapon, or if the
assault was made with premeditated design, the assault would be an ag-
gravated one; but, in the absence of both these allegations, the indict-
ment charges a simple assault only. *Miles v. State,* 410.

6. See the statement of the case for evidence, which, in view of the
other facts in proof, should have been admitted on the trial of the ac-
cused for an aggravated assault. *Burns v. State,* 641.

ASSAULT TO MURDER.

1. See the opinion of this court for a summary of the evidence upon
which the appellant was convicted of an assault with intent to murder
and which should have elicited instructions from the trial court to the
jury upon certain phases of the law of aggravated assault, of self defense
and of manslaughter. *Roberts v. State,* 170.

2. Indictment for assault with intent to murder charged that the
accused "did then and there make an assault upon Frank Stoker, with
the intent to murder him, the said Frank Stoker." This was excepted to
on the ground that it charges a conclusion of law, and not the facts con-
stituting the offense. *Held,* by a majority of the court, that the indict-
ment was sufficient, and the exception properly overruled. Note the
animadversion of Hurt, J., upon the ruling, and upon the precedents and
reasoning on which it is maintained. *Gordon v. State,* 219.

3. A homicide committed in mutual combat would not be reduced to
manslaughter, under the code of this State, unless it was committed un-

ASSAULT TO MURDER—*continued.*

der the influence of sudden passion arising from an adequate cause; and therefore, if death did not ensue, the offense would not be mitigated from assault with intent to murder to aggravated assault. Note the distinction taken in the opinion between manslaughter under the code of this State and manslaughter at common law and in some of the other States. *Spearman v. State*, 224.

4. The trial court instructed the jury in effect that, to constitute justification on the ground of self defense, the act must have been done "in fact in self defense, and not merely colorably so." *Held* erroneous, because subversive of the right of self defense resulting from reasonable expectation or fear of death or serious bodily injury, and because it absolved the jury from their duty to view the circumstances from the standpoint of the defendant at the time. *Id.*

5. See the statement of the case for evidence *held* insufficient to support a conviction for assault with intent to murder. *Garcia v. State*, 712.

ASSAULT TO RAPE.

1. See the statement of the case for evidence *held* insufficient to support a conviction for assault to rape. *Pless v. State*, 73.

2. No testimony should be rejected in a rape case which, in the remotest degree, will tend to aid the jury in reaching the truth. In this case the State offered a medical witness who examined the privates of the alleged injured party, five weeks after the alleged offense, but, upon objection by the defendant, the evidence was rejected. *Held*, that, though somewhat remote in point of time, the evidence should have been received as tending to throw light upon the transaction. *Id.*

3. It is not competent to indict for an assault with intent to rape, and convict upon evidence establishing an attempt to rape by fraud. *Melton v. State*, 204.

4. Assault with intent to rape can only be established by proof of force or attempted force, and not by proof of threats or fraud as the means of accomplishing the offense. But an attempt to commit rape may be committed by means of threats or fraud, and the use of chloroform as the means comes within the meaning of fraud, and can not be construed to be force. *Id.*

ATTEMPT TO RAPE.
*See* ASSAULT TO RAPE, 3, 4.

## B.

BAIL.

1. The Bill of Rights, section 11 of the Constitution, declares that all prisoners are bailable "unless for capital offenses when the proof is evident." *Ex parte England*. 90.

2. A mistrial because of disagreement of the jury as to a verdict in a trial for a capital offense does not establish *per se* that the proof is not evident, and that the accused is entitled to bail. But see the statement of the case for evidence in a habeas copus proceeding for bail, under an indictment for murder, *held* not to authorize the refusal of bail. *Id.*

BAIL—*continued.*

    3.  In a habeas corpus proceeding for bail after the presentment of an indictment for a capital offense, it is incumbent on the applicant to show that he is entitled to bail. In his application for the writ of habeas corpus he must allege under oath that he "is illegally restrained in his liberty," and, as this allegation is an affirmative one, and the applicant the actor or plaintiff, the burden is upon him to maintain it in the proof. He can not rest his right to bail upon the presumption of innocence, inasmuch as the issue of which he has assumed the affirmative is determinable by the proof alone, regardless of the presumption of innocence. In his trial upon the indictment, of course the presumption of innocence obtains in favor of the accused, and, the State being then the actor or plaintiff, and holding the affirmative of the issue of guilty or not guilty, the burden of proof on that issue is upon the State. Note the collocation in the opinion of the court of adjudicated cases maintaining this ruling, and the citations from the Bill of Rights and the Code of Procedure impliedly sanctioning it. (Hurt, J., dissents.) *Ex Parte Smith*, 100.

    4.  In this case the court renounces the ruling in Foster's case, 5 Texas Court of Appeals, 625, to the effect that bail should be refused in a capital case if the judge would sustain a capital conviction found by a jury upon such evidence as that adduced before him. A better test is that announced in McAnally's case, 53 Alabama, 495, viz: "If the evidence is clear and strong, leading a well guarded and dispassionate judgment to the conclusion that the offense has been committed, that the accused is the guilty agent, and that he will probably be punished capitally if the law be administered, bail is not a matter of right." *Id.*

    5.  From the fact that there is a conflict of evidence in a habeas corpus trial for bail, it does not necessarily follow that the inculpatory evidence fails to make the proof "evident;" for it is not all exculpatory evidence that will destroy or impair that which is inculpatory, or which will raise a reasonable doubt of the guilt of the applicant for bail. The evidence is to be considered in its entirety, and if, when so considered, a reasonable doubt of the applicant's guilt of a capital offense is not engendered, the "proof is evident," and bail should be refused. *Id.*

    6.  The trial court admitted certain inculpatory evidence which this court considers inadmissible because it was *res inter alios acta*, but, instead of reversing the judgment on that account, this court excludes the objectionable evidence from consideration, and upon the legal evidence affirms the judgment refusing bail. *Id.*

    7.  See the dissenting opinion of Hurt, Judge, controverting the ruling formulated in the first headnote, and maintaining that the general rule favors the right to bail in all cases except capital cases in which the "proof is evident,"—that in cases of this character the State stands on the exception and must establish it,—that the true issue is whether or not the "proof is evident" that the applicant is guilty of a capital offense, and of this issue the State has the affirmative and the burden of proof;—that the indictment, even if its allegations proved anything, can have no bearing upon this issue, inasmuch as it does not allege that the

BAIL—*continued.*

"proof is evident" of the capital offense charged;—that the presumption of innocence avails the accused in this as well as on his trial upon the indictment;—and, therefore, that the applicant is entitled to bail unless the State shows, by evident proof, that he is guilty of the capital offense charged against him. Note the dissenting opinion *in extenso* for an exhaustive discussion of these positions and of those announced in the opinion rendered by a majority of the court. *Id.*

8. See the statement of the case for evidence on which it is *held* that the court below did not err in disallowing bail to an applicant charged by indictment with murder in the first degree. (Hurt, J., dissenting.) *Id.*

9. See the opinion in extenso for a summary of evidence *held* insufficient to support a final judgment upon a forfeited bail bond. *Baker v. State,* 657.

10. See the statement of the case for evidence adduced in a proceeding by habeas corpus for bail under a charge of murder, *held,* insufficient to authorize a refusal of bail. *Ex Parte McDowell,* 679.

BILL OF EXCEPTIONS.

1. Refusal of reasonable time for the preparation of a bill of exceptions is not material error when it does not appear that the party was or may have been in any wise prejudiced thereby. His bill of exceptions should show the prejudice or injury. *Powers v. State,* 42.

2. Bill of exceptions, to be available on appeal, should set forth the facts relevant to the ruling excepted to. The judge's authentication of the bill does not establish the validity of its grounds of exception, but merely certifies its presentation and the court's disposition of it. *Hennessy v. State,* 340.

BILL OF SALE.
*See* OWNERSHIP, 2.

BURDEN OF PROOF.

1. In a habeas corpus proceeding for bail after the presentment of an indictment for a capital offense, it is incumbent on the applicant to show that he is entitled to bail. In his application for the writ of habeas corpus he must allege under oath that he "is illegally restrained in his liberty," and, as this allegation is an affirmative one, and the applicant the actor or plaintiff, the burden is upon him to maintain it in the proof. He can not rest his right to bail upon the presumption of innocence, inasmuch as the issue of which he has assumed the affirmative is determinable by the proof alone, regardless of the presumption of innocence. In his trial upon the indictment, of course the presumption of innocence obtains in favor of the accused, and, the State being then the actor or plaintiff, and holding the affirmative of the issue of guilty or not guilty, the burden of proof on that issue is upon the State. Note the collocation in the opinion of the court of adjudicated cases maintaining this ruling, and the citations from the Bill of Rights and the Code of

Index.

BURDEN OF PROOF—*continued.*

Procedure impliedly sanctioning it.   (Hurt, J., dissents.)   *Ex Parte Smith,* 100.

2.   The appellant in this case was confined in the penitentiary under seven different convictions for horse theft, the penalties aggregating forty-five years.   On August 25, 1886, the Governor issued his full pardon to cover each conviction, and delivered the same to the appellant's attorney.   On the thirtieth day of the same month the said pardon was delivered to a clerk in the office of the superintendentof the penitentiary at Huntsville.   On the same day, but before the same had been delivered to the appellant, or recorded in the books of the superintendent's office, the said superintendent received a telegram from the Governor, directing him to hold the said pardon for further orders.   By subsequent telegram the Governor notified the superintendent that the said pardon had been revoked, and ordered its return, and it was returned to the Governor, who then indorsed upon it instructions to the Secretary of State, as follows: "Issue an order revoking this pardon as having been granted upon misinformation."   Thereafter proceedings by habeas corpus were instituted in the district court of Travis county, and, to support his application for release under the pardon, the appellant produced in evidence the charter of pardon bearing the said indorsement.   *Held,* 1: A pardon procured by fraud upon the pardoning power, whether by suppression of truth or suggestion of falsehood, or by other imposition, is absolutely void.   2. Having relied upon the pardon with its indorsement, the appellant established against himself, prima facie, the procurement of the pardon by fraud, and assumed the onus of proving no fraud; failing to do which, or to controvert the prima facie case established by himself, the trial court did not err in remanding him to the custody of the superintendent of the penitentiary.   *Rosson v. State,* 287.

BURGLARY.

1.   Indictment may be sufficient to charge burglary with intent to commit theft, without describing the property intended to be stolen.   *Neiderluck v. State,* 38.

2.   See the opinion for a state of proof in a trial for burglary *held* to be insufficient to establish a burglarious entry by fraud; wherefore the trial court having charged the jury upon an entry by fraud, and having confined the jury in the charge to such an entry, it should have awarded the defendant a new trial.   *Id.*

3.   In order to convict a domestic servant for the burglary of his master's house, it must be shown that he, if he acted alone, entered the same by an actual breaking.   If, however, the domestic servant is shown to have been one of two or more conspirators to enter and burglarize his master's house, and, in pursuance of the conspiracy, he admitted his coconspirators, a constructive breaking, it seems, will authorize his conviction.   Independent of this rule, the co-conspirators will be guilty of burglary upon the constructive breaking by the domestic servant.   *Id.*

4.   In a trial for burglary and theft of oats from the premises entered, it was in proof that oats were found in the defendants's crib, and

BURGLARY—*continued.*

that he told the searching party that he had bought them from one B·
In his defense he relied upon his alleged purchase, and adduced evidence
in support of it. The trial court properly instructed the jury with re-
gard to opportune explanation of the possession of recently stolen prop-
erty, but wholly ignored the defense of purchase relied on by the accused.
*Held*, that the charge was insufficient. The defendant denied that the
oats found in his crib were stolen, and, on the contrary, claimed to have
purchased them; and to this defense the instruction was not directly
relevant, as it should have been. *Bond v. State.* 180.

5. It is the right of a defendant to have the charge of the court
make a distinct and affirmative presentation of his issues to the jury,
and to have them determined by the jury alone. *Id.*

6. Appellant was tried for burglary and the theft of certain oats which
were found in the possession of one Bond, which oats the said Bond,
in appellant's presence, claimed to have purchased; and there was evi-
dence in support of this claim of Bond's. *Held* that the trial court, in
its charge to the jury, should have affirmatively and pertinently ex-
pounded the law both as to opportune explanation of the possession of
recently stolen property and as to the defense of purchase of the prop-
erty, as claimed by Bond, who was jointly indicted with this appellant
for the offense. *Shuler v. State*, 182.

7. Indictment for burglary need not allege the non consent of the
owner or occupant to the entry of the house. *Taylor v. State,* 639.

8. But to be sufficient, an indictment for burglary must allege the
elements of the felony or theft intended to be committed, with the same
particularity that is required in charging directly the intended offense
Indictment, to charge theft, and, therefore, to charge burglary to com-
mit theft, of property belonging to two or more owners, must, to be
sufficient, negative the consent of each of the owners, and not merely
their conjoint consent, unless a separate possession and ownership of the
property in two or more persons is to be charged, as was the case in Smith
v. The State, 21 Texas Court of Appeals, 96. The indictment in this
case charged that the intent was to take the property of B. and H.,
without *their* consent, and was bad.

## C.

CARRYING PISTOL.

1. The proof showed that the accused, when he carried the pistol
on his person, was going from his home in Williamson county to the
site of said county, intending to return on the following day. *Held* that
such facts did not constitute the accused a traveler within the meaning
of that term as it is used in the statute denouncing a penalty for the
carrying of a pistol on the person. *Darby v. State*, 407.

2. See the statement of the case for evidence adduced in a trial for
carrying a pistol *held* insufficient to support the defense that, when
he carried the pistol, the accused had reasonable grounds to apprehend
an unlawful attack upon his person, etc. *Id.*

3. Upon his trial for unlawfully carrying a pistol, the accused sought

CARRYING PISTOL—*continued.*

to exculpate himself under the exception to the statute, that the pistol was carried on his own premises. The proof was that the premises on which the pistol was carried was the joint inheritance of the wife of the accused and one M., but that it was occupied by M., and not by the accused or his wife. *Held* that the proof did not bring the premises within the exception. *Brannon v. State,* 428.

4. Evidence insufficient to support a conviction for carrying a pistol. *Cathey v. State,* 492; *Sanderson v. State,* 520.

CASES OVERRULED.

1. Foster's case, 5 Texas Court of Appeals, 625, overruled. *Ex Parte Smith,* 100.

2. Delaney's case, 41 Texas, 601, overruled. *Smith v. State,* 357.

3. Hamilton's case, 2 Texas Court of Appeals, overruled. *Pitner v. State,* 366.

CERTIFICATES.

Certificates given to authenticate depositions, or testimony taken at coroner's inquests or examining trials, are not necessary or even proper matters to be incorporated in a statement of facts. *Kirby v. State,* 13.

CHALLENGE.

1. An exception reserved to the overruling of a challenge for cause is of no avail when it does not appear that the party had exhausted his peremptory challenges, and consequently that an objectionable juror was forced upon him. *Powers v. State,* 42.

2. While the jury in a capital case was being organized, and during a temporary absence of the defendant from the court room, a talesman was examined as to his qualifications and was peremptorily challenged by the State. The attention of the court being called to the absence of the defendant, further proceedings were stayed and the sheriff was sent to bring back the challenged talesman. After waiting an hour without avail, the court, over defendant's objection, proceeded with the examination of the remaining talesmen. *Held,* that there was no material error in the action of the court, in as much as there is nothing to indicate that it either did prejudice, or could have prejudiced, any right of the defendant. *Id.*

CHARGE OF THE COURT.

*See* ASSAULT, 4.
    EVIDENCE, 23, 49, 52, 61.
    FRAUDULENT DISPOSITION OF MORTGAGED PROPERTY.
    VENUE, 4.

1. The first count in the indictment alleged the ownership of the stolen property to be unknown, and the second count alleged it to be in one S. The proof sustained the second count. *Held,* that a conviction could be had only under the second count, and therefore the trial court should have confined its charge to that count. *Boren v. State,* 28.

**CHARGE OF THE COURT**—*continued.*

2. See the opinion *in extenso* for a state of proof in a theft case under which the trial court should have given in charge to the jury the law of accomplice testimony. *Id.*

3. See the opinion for a state of proof in a trial for burglary *held* to be insufficient to establish a burglarious entry by fraud; wherefore the trial court having charged the jury upon an entry by fraud, and having confined the jury in the charge to such an entry, it should have awarded the defendant a new trial. *Neiderluck v. State,* 38.

4. Charge of the court correctly omits requested instructions when it comprehends within itself all the law of the case. *Pless v. State,* 73.

5. See the statement of the case for the substance of evidence developed in a trial for murder, which resulted in a conviction for manslaughter, whereunder the trial court, having charged in substance the rule of law laid down in Article 615 of the Penal Code, did not, in view of said evidence, err in omitting to charge upon the rules declared in Articles 612 and 614 of the said Code with regard to an instrument not necessarily a deadly weapon, unless its use and manner of use were accompanied by an intention to kill. *Hartwell v. State,* 88.

6. A person unlawfully attacked is not bound to retreat in order to avoid the necessity of killing his assailant, when the attack is such as produces a reasonable expectation or fear of death or some serious bodily injury; and in many cases it is the imperative duty of the trial court to so instruct the jury. Such an instruction, however, was unnecessary and would have been irrelevant in this case, inasmuch as the evidence adduced to show self defense affirmed that the defendant was in full retreat when he fired the fatal shot. *May v. State,* 146.

7. The true rule upon the doctrine of reasonable doubt as applied to murder of the second degree is that the inculpatory proof must show beyond a reasonable doubt the *absence* of the mitigating, excusing or justifying facts. *White v. State,* 156.

8. It is a part of the law of self defense under the code of this State that an assailed party is not bound to retreat in order to make good his right of self defense. Failure to so charge the jury will not of itself necessitate reversal, in the absence of exception, unless under all the facts of the case, the omission to so charge was calculated to injure the rights of the accused. The omission in this case, not having been excepted to, and being in no wise calculated to prejudice the accused, was not reversible error. *Id.*

9. An established rule upon the right of self defense, when the slayer provoked the occasion for the killing, is as follows: "If he (the slayer) provoke the contest, or produce the occasion, in order to have a pretext for killing his adversary, or doing him great bodily harm, the killing will be murder, no matter to what extremity he may have been reduced in the combat. But if he provoked the combat or produced the occasion, without any felonious intent—intending, for instance, an ordinary battery merely—the final killing in self defense will be manslaughter only." See the opinion *in extenso* for a charge upon the subject *held,* in view of the evidence, erroneous. *Id.*

CHARGE OF THE COURT—*continued.*

10.　It is an equally well established rule that "no words nor libelous publications, however aggravating, will compromit a slayer's right of defense, if in consequence of the same he is attacked; for no words, of whatsoever nature, will justify an assault." *Held* that, under this rule, and in view of the evidence, the trial court erred in refusing the defendant's requested instruction to the effect that threats made by defendant against deceased did not operate to deprive defendant of his right of self defense. *Id.*

11.　It is an established rule of practice in this State that the charge of the court must make a pertinent application of the law arising out of the evidence, no matter how weak and impotent the evidence may appear to the court. See the opinion *in extenso* for evidence in a murder case which, under this rule, demanded of the trial court a charge upon the law of manslaughter. *Liskosski v. State,* 165.

12.　There being evidence in this case tending to show an original conflict between the deceased on the one hand, and the accused and one K., acting together, on the other, and that that conflict was abandoned, and that it was renewed between K., acting alone, and the deceased, in which second conflict the fatal injury was inflicted, the trial court, having correctly instructed the jury upon a conflict in which K. and the accused acted together, should have further charged upon the alternative theory of a homicide in which K. acted alone. *Id.*

13.　See the opinion of this court for a summary of the evidence upon which the appellant was convicted of an assault with intent to murder, and which should have elicited instructions from the trial court to the jury upon certain phases of the law of aggravated assault, of self defense and of manslaughter. *Roberts v. State,* 170.

14.　Article 196 of the Penal Code, in defining the offense of "false swearing," requires that it be done "deliberately and willfully." The trial court properly instructed the jury as to the legal signification of "deliberately" but omitted to define the legal meaning of "willfully." *Held,* in view of the facts in proof, that this omission was reversible error. See the opinion *in extenso. Steber v. State,* 176.

15.　In a trial for burglary and theft of oats from the premises entered, it was in proof that oats were found in the defendant's crib, and that he told the searching party that he had bought them from one B. In his defense he relied upon his alleged purchase, and adduced evidence in support of it. The trial court properly instructed the jury with regard to opportune explanation of the possession of recently stolen property, but wholly ignored the defense of purchase relied on by the accused. *Held,* that the charge was insufficient. The defendant denied that the oats found in his crib were stolen, and, on the contrary, claimed to have purchased them; and to this defense the instruction was not directly relevant, as it should have been. *Bond v. The State,* 180.

16.　It is a right of the defendant to have the charge of the court make a distinct and affirmative presentation of his issues to the jury, and to have them determined by the jury alone. *Id.*

17.　In a trial for horse theft the State introduced evidence tending to prove that, besides the animal in question, other horses were stolen at

CHARGE OF THE COURT—*continued.*

the same time and in the same neighborhood; but the trial court omitted to instruct the jury for what purposes the evidence was allowed, and this omission was relied upon in the motion for a new trial. The State's case stood upon circumstantial evidence alone. *Held* that the omission in the charge, though not excepted to nor a proper instruction requested, was calculated to prejudice the rights of the defendant, and is therefore reversible error. *Davis v. State*, 210.

18. The trial court instructed the jury in effect that, to constitute justification on the ground of self defense, the act must have been done "in fact in self defense, and not merely colorably so." *Held* erroneous, because subversive of the right of self defense resulting from reasonable expectation or fear of death or serious bodily injury, and because it absolved the jury from their duty to view the circumstances from the standpoint of the defendant at the time. *Spearman v. State*, 224.

19. In a trial for murder this appellant was convicted of manslaughter upon evidence which showed that the deceased, as appellant knew, had threatened to kill him if he should ever speak to him, and that, the deceased having dropped some coins, the appellant spoke to him and called his attention to one of them; whereupon the deceased, calling appellant a d—d son of a bitch, replied that he had told and sent him word not to speak to him. Appellant, saying "all right," went out of the back door of the house, and then called to him a relative of the deceased, and in their ensuing conversation said he could "not stand this," and that he would "kill him." Deceased, still in the house, commenced whittling, and was apparently listening, and soon, closing his knife and putting it in his pocket, walked towards where appellant was, and when he got about a third of the way, he took his knife out of his pocket and seemed to be opening it. Proceeding to and having passed out of the back door, he was shot and killed by appellant. A pocket knife, partly open, lay close by deceased on the ground, after he was shot. The trial court did not give in charge to the jury the law of self defense, and rejected a requested instruction on that subject. *Held*, that the evidence fairly raised the issue of self defense, and the defendant was entitled not only to have all relevant circumstances, whether anterior to or contemporaneous with the killing, put in evidence, but also the law of self defense given in charge to the jury. *Wheelis v. State*, 238.

20. The failure of the trial court to define the word "willful" in the charge given to the jury was error, but not reversible error, inasmuch as, the offense being a misdemeanor, it devolved upon the defendant to request a special charge to supply the omission, or to reserve exception to the omission. *Clark v. State*, 260.

21. Special charges are properly refused if they announce incorrect principles of law, or if, being correct, they are substantially embraced in the general charge. *Id.*

22. In order to raise the issue of manslaughter, it is not essential that the overt act relied upon was sufficient to raise the issue of self defense; but if, in connection with other antecedent facts and circumstances, it excited in the mind of the accused, and was sufficient to excite in the

CHARGE OF THE COURT—*continued.*
mind of a person of ordinary temper, such sudden passion as would render it incapable of cool reflection, then adequate cause would be produced sufficient to raise the issue of manslaughter, and the law of manslaughter would be part of the law of the case. See the opinion for a case to which the rule applies, and which demanded of the trial court a charge upon the law of manslaughter; and note the approval of Hobbs's case, 16 Texas Court of Appeals, 523. *Howard v. State,* 265.

23. See the statement of the case for evidence *held* sufficient to support a conviction for murder of the first degree, founded upon the defendant's plea of guilty; and also for a charge of the trial court, *held* to be correct, the evidence proving that the homicide was committed in the perpetration of robbery, which the Penal Code, Article 606, makes murder in the first degree *per se. Giles v. State,* 281.

24. In order to sustain a prosecution for theft when the taking was originally lawful (Penal Code, art. 727), the proof must show either that the taker obtained the lawful possession of the property by some false pretext, which induced or deceived the owner to surrender the possession of the property to him; or that, at the time he obtained the possession of the property with the consent of the owner, he intended to deprive the owner of the value of the same, and to appropriate it to his own use. See the opinion for a charge of the court on the subject *held* correct. And see the statement of the case for evidence *held* sufficient to support a conviction for theft of money obtained from the owner by false pretext. *Porter v. State,* 295

25. Local option law, when adopted by the vote of the electors, does not become operative until the order of the commissioners court declaring the result of the election has been published for four successive weeks, and the sale of intoxicating liquors in the community to be affected is not, prior to such publication, a violation of the local option law. The order in this case was published in four successive issues of the newspaper of July 4, 11, 18 and 25, and the trial court charged in substance that the law became operative on the last named date. *Held,* erroneous. The law contemplates that the order shall be published for four full consecutive weeks, or twenty-eight days from the day of its first publication, and in refusing a special charge to that effect the trial court further erred. *Phillips v. State,* 304.

26. Charge of the court, in the absence of a statement of facts, can be considered on appeal only with reference to fundamental errors. If it conforms to the indictment it must be presumed that it responded to the evidence adduced on the trial. *Wade v. State,* 308.

27. Charge of the court is erroneous if it announces imprisonment in jail to be part of the punishment for keeping or exhibiting a gaming bank, with no discretion in the jury to dispense therewith and impose a fine alone. Article 358 of the Penal Code prescribes the penalty as a fine, but empowers the jury to also assess imprisonment in the county jail for not exceeding thirty days; and this Article is still in full force, notwithstanding the abortive amendatory Act of March 19, 1885, heretofore declared unconstitutional in the case of Hunt v. The State, 22 Texas Court of Appeals, 396. *Wright v. State,* 313.

CHARGE OF THE COURT—*continued.*

28. If the indictment charges that the carnal knowledge was obtained by means of force, threats, or fraud, it charges a rape, whether perpetrated upon a female under or over the age of ten years, and if the indictment also contains an averment of non-age, the same may be treated as surplusage and eliminated. In this case the proof showed the female alleged to have been raped to be over the age of ten years, and the defendant requested the trial court to charge the jury, in substance, that, the indictment charging the non-age of the prosecutrix at the time of the offense, the defendant was entitled to an acquittal if the jury believed from the evidence that she was then over ten years old. The trial judge refused the special charge "because the indictment alleges that the offense was committed by means of 'force and threats' on the part of defendant, and the allegation of age of the prosecutrix or injured female is not of that descriptive character which requires corresponding proof, the State having proved force and threats." *Held,* that the ruling was correct, and the special charge was properly refused. *Nicholas v. State,* 317.

29. Although at the time of the alleged commission of this offense it was not per se an offense to stop the running of a train of cars (Murray and Anthony v. The State, 21 Texas Ct. App., 620), it was, nevertheless, under the provisions of Article 279, an offense for two or more persons to meet and co-operate in preventing the conductor of a railway train from pursuing his usual avocation and employment of operating the said train. See the opinion for a charge of the court upon the subject *held* correct. *McGee v. State,* 330.

30. The record and judgment in the proceeding in which the perjury was alleged to have been committed, while not admissible in evidence to be considered by the jury indiscriminately, was admissible as matter of inducement in the matter assigned as perjury. When admitted for this specific purpose, it became the duty of the trial court to give to the jury an instruction as to the purpose of its admission and the extent to which it could be considered. The omission of such an instruction was material error. *Washington v. State,* 336.

31 Under the Penal Code of this State the willful burning of any "house" is arson, and a house is any building, edifice or structure enclosed with walls and covered, whatever the materials used for building. Though the house be neither destroyed nor seriously injured, the "burning" is complete when the fire has communicated to it, and, if the burning was designed, it is immaterial by what means the fire was communicated. Appellant, while confined in the wooden prison of a county poor farm, set fire to the roof of the prison, burning a hole therein. Being tried for arson, there was no evidence tending to disclose with what intent he set fire to the building. To the charge given by the trial court to the jury the defense objected, in substance, because it did not instruct for an acquittal if the appellant's intent was to effect an escape, and not to consume or injure the building. *Held,* on a review of both elementary and adjudicated authority, that the exception to the charge was not well taken. Delaney's case, 41 Texas, 601, is overruled on this point. *Smith v. State,* 357.

CHARGE OF THE COURT—*continued.*

32. To invoke instructions on the law controlling accomplice testi-
mony, there must be evidence to which the instructions would be appli-
cable. *Pitner v. State*, 366.

33. With regard to the punishment ror cattle theft, the trial court in-
structed the jury that it was "not less than two nor more than five
years," but failed to instruct that it should be by confinement in the
penitentiary. The verdict assessed the punishment at "confinement in
the penitentiary for two years." The charge of the court was not ex-
cepted to. *Held* that the omission in the charge is not fundamental,
nor even reversible, error, inasmuch as it is obvious that it neither mis-
led the jury nor prejudiced the accused. So far as this ruling may con-
flict with that of this court in Hamilton's case, 2 Texas Cou  of Appeals,
494, the latter case is overruled. *Id.*

34. The accused, upon his trial for the false imprisonment of one Brox-
ton, requested the trial court to charge the jury in substance that, if one
Blake was drunk on the street and disturbing the peace, it was the duty
of the appellant, who was the city marshal, to arrest the said Blake
without warrant, and to confine him in the calaboose, and that Broxton
had no right to force or compel defendant to release said Blake on bond,
while drunk; and that if, while defendant and his deputies were convey-
ing Blake to jail, Broxton attempted to release Blake by force, then de-
fendant had the right to arrest said Broxton and confine him in jail.
*Held*, that responding to the evidence on the trial, the requested charge
was a part of the law, and should have been given. See the statement
of the case for a resume of the evidence referred to. *Moseley v. State*,
409.

35. In the absence of proof showing that the defendant's husband
and co-principal, who fired the fatal shot, heard or was informed of the
insulting epithet applied to the defendant by the deceased, the trial
court did not err in refusing a special charge upon manslaughter. *Gib-
son v. State*, 414.

36. Trial courts are not required to charge the jury in misdemeanor
cases, except when requested to do so by one or both sides of the cause;
and even then they can be required only to give, with or without modi-
fication, or to refuse such charges as are requested in writing. The
refusal of a special charge does not impose upon the court the duty of
giving an independent charge. *Sparks v. State*, 447.

37. Special charges which respond to no issue raised by the evidence
are correctly refused. *Id.*

38 Refusal of the trial court in a misdemeanar case to instruct the
jury as to the legal meaning of the word "willful," when that word is
used to characterize the offense, and a correct instruction is requested in
writing, is error. *Id.*

39. Upon the joint trial of this appellant and W. F. B., for murder,
the State, over the objection of appellant, was permitted to prove
threats against the deceased and his family, made by W. F. B. in the
absence of appellant—the court promising to limit and control the said
evidence in the charge to the jury, which it failed to do. *Held*, that
in this failure the trial court erred. *Barron v. State*, 462.

CHARGE OF THE COURT—*continued.*

40. See the opinion *in extenso* for a special instruction asked by the defendant, which, in view of the evidence in the case, should have been given. *Id.*

41. On this, a trial for murder, the State was permitted to prove by a witness that, when he arrived at the place of the homicide, some member of the crowd there congregated pointed to the defendant whom the witness had just met two doors distant from the place of the homicide, and exclaimed: "There is the man who did the shooting." The defendant at that time was walking with another man. The rule under which such proof could be admitted may be stated as follows: To entitle the State to introduce in evidence the declaration of a bystander, it must be clearly shown that the defendant understood himself to be accused of the criminal act committed; and, further, the circumstances must have been such as to require of him a response. Even when the requirements of this rule are complied with, and the evidence has been properly admitted, it devolves upon the trial court to instruct the jury as to the legal function of the evidence so admitted, and that it can not be relied upon by the State to establish the defendant's guilt of the main fact in issue, *i. e.*, that he committed the criminal act. *Held* that, under the rule stated, the admission of the declaration of the bystander in this case was error. *Felder v. State,* 477.

42. It is only when the State relies *exclusively* upon circumstantial evidence that the trial court is required to charge the jury upon the law controlling that character of evidence   *Jones v. State,* 501

43. The charge in the indictment being that the appellant received the property from one Noon Tucker, knowing that the same was stolen by the said Noon Tucker, the theft of the property by the said Noon Tucker became an essential issue in the case, and, as tending to establish that issue, the court properly permitted a State's witness to testify that when he saw the said Noon Tucker in possession of the said property, he questioned the said Noon as to his title, and the said Noon replied that he had raised it. The failure of the trial court, in its charge to the jury, to limit and restrict such evidence became immaterial in view of the defendant's failure to except to such omission, and in view of the fact that the omission could not prejudice his rights.. *Tucker v. State,* 512.

44. Before reading his charge in this case to the jury, the trial judge, in the presence of the jury, announced to the counsel for the defense, that he would enforce the rules laid down by the Court of Appeals with reference to exceptions on trial to the charge. *Held,* that such action was not error. *Held,* further, that, while the action of the court in requiring the defendant's counsel to point out specifically his objections to the charge, at the time it was given, was error, it became immaterial in view of the fact that the counsel subsequently obtained complete bills embodying his said exceptions. *Id.*

45. The record of proceedings on the trial of W. for theft was admissible against the defendant on his trial for perjury committed on the trial of W., but only as matter of inducement in committing the perjury,

CHARGE OF THE COURT—*continued.*

and not to prove the perjury; and, being admitted for that specific pur-
pose, the charge of the trial court, omitting to restrict and limit it ac-
cordingly, though not excepted to, was erroneous. *Maines v. State,* 568.

46. Having admitted proof that other property of like character was
driven at the same time and from the same place as the property de-
scribed in the indictment, the trial court erred in omitting in its charge
to limit the jury as to the legitimate purpose for which that proof could
be considered. *Wheeler v. State,* 598.

47. The legal meaning of the word "willful" should, ordinarily, when
it enters into the description of the offense, be given in charge to the
jury. Such, however, is not the rule when willfulness is comprehended
in the other concomitants of the forbidden act. *Id*

48. See statement of the case for evidence *held* sufficient to establish
the issue of value both in the county of the original taking and in the
county of the forum. In substance the trial court charged that the
measure of value was the value of the property at the time of the taking
in the county of the taking, and not in the county of the forum at the
time it was brought into that county. *Held,* that the converse of the
charge is the law, the rule being that "where a party is prosecuted in a
county other than that in which the theft was committed, a complete
offense must be shown in the county where the conviction was had."
See the opinion on the question. *Clark v. State,* 612.

49. Charge of the court with respect to the reasonable doubt is suffi-
cient if it applies the doctrine to the whole of the case, though not to
each and every contested question arising upon the evidence. *McCul-
lough v. State,* 620

50. An erroneous charge of the court in a misdemeanor case is not
cause for reversal, unless the same was excepted to when it was given.
*Burns v. State,* 641.

51. Charge of the court should be confined to the issues raised by the
evidence. *Mayfield v State,* 645.

52. The trial court in this case did not err in charging upon murder
of the first degree, in view of evidence tending to establish a premedi-
tated killing, and in view of the further fact that such charge was neces-
sary to a complete exposition of the elements of murder of the second
degree. *Simmons v. State,* 653.

53. Special charges of the court unauthorized by any proof on the
trial, or which, if authorized and correct, are embodied in the general
charge, are properly refused. *McVey v State,* 659.

54. If, upon a trial for theft, the trial court admits proof of contem-
poraneous and contiguous thefts of other property, it becomes the im-
perative duty of the trial judge, in his charge, to limit and restrict such
proof to its legitimate purpose, and omission to do so is fundamental
error. *Cravey v. State,* 677.

55. See the opinion for a charge of the court on a trial for cattle theft,
*held* erroneous, inasmuch as it authorized a conviction although the evi-
dence should fail to show that the accused had any connection with the
original taking. *Curlin v. State,* 681.

CHARGE OF THE COURT—*continued*.

56. See the statement of the case for a state of proof which demanded of the trial court a charge to the effect that, in order to raise a presumption against the defendant, because of his possession of the stolen animal, his possession must be shown to be recent. *Id.*

57. In view of the reasonable explanation of his possession given by the accused when his possession was first challenged, the omission of the trial court to instruct the jury as to the legal effect of the explanation was material error. *Id.*

CIRCUMSTANTIAL EVIDENCE.

*See* EVIDENCE, 64.
    MURDER, 32.

COMPLAINT.

Complaint alleging that the affiant "has good reason to believe and does believe" that the allegations made in the complaint are true is not invalid by reason of that form of averring the charge preferred. *Clark v. State*, 260.

COMPULSORY PROCESS.

The Constitution of this State (Bill of Rights, sec. 10) guarantees to any one accused of crime the right to have compulsory process for his witnesses, and of this right it is not in the power of the legislature to deprive him. In so far, therefore, as the act of the Eighteenth legislature "to provide for the payment of attached witnesses in felony cases" deprives a defendant of his right to an attachment for his absent witnesses, that act is unconstitutional and void. *Homan v. State*, 212.

CONFESSIONS.

1. The Code of Criminal Procedure, Article 774, places testimony taken at an inquest in the same category as testimony taken at an examining trial, and the same rules govern the admissibility of both; wherefore the confession of a prisoner to a coroner's inquest is competent evidence against him if, as provided in Article 750, it was made in his voluntary statement taken in accordance with law, or was made voluntarily after having been cautioned that it could be used against him, etc. Articles 261 and 262 prescribe the mode of taking and authenticating such a voluntary statement "in accordance with law," and require that it be made before any witness be examined, and be signed but not sworn to by the accused. *Kirby v. State*, 13.

2. Appellant being on trial for the murder of his jailer, the State was allowed, over objection, to put in evidence his statement to the coroner's inquest, which statement, as shown by the magistrate's certificate, was made after due caution that it could be used against him. It does not appear that he was in arrest or under accusation when he made the statement, but it is inferred that he was then suspected by the magistrate, and was therefore cautioned, though treated as a witness and sworn to his statement. *Held*, that the statement is not "a confession made in

CONFESSIONS—*continued.*

the voluntary statement of the accused," and its admissibility depends upon whether it was "made voluntarily after having been first cautioned that it may be used against him." *Id.*

3. The Code of Criminal Procedure prescribes no form in which must be given the "caution" that a voluntary statement may be used in evidence against the maker. The caution is sufficient if the maker of the statement be warned that so much of it as is inculpatory of himself may be used against him. His silence or refusal to testify could not be used against him as a confession. *Id.*

4. In view of the ample caution given appellant in this case, and of his subsequent declaration that he was willing to tell all he knew in regard to the killing, and of his signing and swearing to his statement, the statement must be regarded as clearly a "voluntary statement;" and the trial court committed no error in admitting it as evidence for the State, *Id.*

5. If inculpatory declarations of a defendant were *res gestœ*, they are competent evidence against him, notwithstanding they would be incompetent as confessions because he was in arrest when he made them. See the eighth subdivision of the opinion of the court in elucidation of this important distinction. *Powers v. State,* 42

CONSTITUTIONAL LAW.

1. Section 10 of the Bill of Rights of the Constitution of this State guarantees to a person accused of crime the right to be heard in person and by counsel, etc. That section, however, has reference exclusively to the trial in the *nisi prius* court, and can not be stretched to confer upon a person convicted of crime, and confined in jail, pending his appeal to this court, the right to be brought personally before this court to be heard in person upon his appeal. *Tooke v. State,* 10.

2. The local option law is an enactment which comes within the scope of the police powers of this State and does not take, damage nor destroy private property for public use within the meaning of section 1 of the Bill of Rights, and does not infringe upon any other provision of constitutional law. (See Ex parte Lynn, 19 Texas Ct. App., 293.) *Ex parte Kennedy,* 77.

3. Article 3230 of the Revised Statutes, requiring the county clerk to post copies of the order of election at least twenty days before an election under the local option law, controls Article 3229, which makes it the duty of the court to order the election to take place not less than fifteen nor more than thirty days after the issuance of the order. *Id.*

4. When a penal law prohibits two or more acts, one valid and constitutional and the other not, it may and will be held valid and constitutional, and can and will be enforced, as to that portion which is valid and constitutional. See the opinion for a case to which the rule applies. *Id.*

5. It is not a valid objection to the legality of an election under the local option law that two of the five notices required by law to be posted in the county were posted in a single precinct. *Id.*

6. The local option law of this State (Rev. Stat., arts. 3230, 3232),

CONSTITUTIONAL LAW—*continued.*

requires that the commissioners court of the county "shall appoint and qualify the proper officers in accordance with the election law," and that "the officers holding said election shall in all respects not herein specified conform to the existing laws regulating elections." Articles 1681 and 1682 of the Revised Statutes prescribe the duties of officers under the general election law. *Id.*

7. Failure on the part of the proper officers to perform duties required of them in furtherance of an election will, if the election be a special one, render it nugatory and void, if thereby electors sufficient to have changed the result were deprived of the right to vote at said election. See the opinion *in extenso* upon the question, and for a case to which the rule applies. *Id.*

8. The Bill of Rights, section 11, of the Constitution, declares that all prisoners are bailable "unless for capital offenses when the proof is evident." *Ex parte England*, 90.

9. The Constitution of this State (Bill of Rights, sec. 10) guarantees to any one accused of crime the right to have compulsory process for his witnesses, and of this right it is not in the power of the legislature to deprive him. In so far, therefore, as the Act of the Eighteenth Legislature "to provide for the payment of attached witnesses in felony cases" deprives a defendant of his right to an attachment for his absent witnesses. that Act is unconstitutional and void. *Homan v. State*, 212.

10. In prosecutions for gaming a conviction may be had upon the uncorroborated testimony of an accomplice or joint offender; and Article 367 of the Penal Code, which so provides, is a constitutional enactment. *Wright v. State*, 313.

11. The judgment offered to disqualify the State's witness showed upon its face that it was rendered upon an information, and not upon an indictment, and that he had been convicted in Kansas of forgery in the second degree; wherefore the prosecution contends that the said offense must either be a misdemeanor in Kansas, or, if a felony, the judgment of conviction was void because the Constitution of the United States provides that "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury." But *held* that this provision of the United States Constitution is a limitation only upon the the powers of the Federal Government, and does not impair the powers of the States. Therefore it is competent for Kansas or any other State to authorize the prosecution of felonies by information; but, to warrant the use in the courts of Texas of a judgment of conviction rendered on an information in another State for an offense which is felony in this State, it must be proved by the law of the other State that such judgment was valid under its organic and statutory law. *Pitner v. State*, 366.

12. Article 730 of the Code of Procedure disables as witnesses "all persons who have been or may be convicted of felony in this State or in *any other jurisdiction*," unless, etc. *Held* that the expression "other jurisdiction" is not to be limited to the tribunals of the United States exercising their jurisdiction in Texas, for such a construction would be a

Index.

CONSTITUTIONAL LAW—*continued.*

narrow and strained interpretation of the language used, and would not fully accomplish the legislative intent. See the opinion for a clear exposition of this and the antecedent rulings. *Id.*

17. The unconstitutionality of the Act of March 19, 1885, does not affect the validity of Article 358 of the Penal Code, under which this prosecution should have been maintained. *Ford v. State*, 520.

14. An Act of the Seventeenth Legislature of the State of Texas imposes upon "every commercial traveler, drummer, salesman or solicitor of trade by sample or otherwise" an annual occupation tax of thirty-five dollars, payable in advance to the State comptroller, and enacts that any such trader who fails or refuses to exhibit the comptroller's receipt, when demanded by any tax collector or justice of the peace, shall be guilty of a misdemeanor punishable by fine of not less than twenty-five dollars, nor more than one hundred dollars. *Held* that this enactment, whether considered with reference to citizens of this or of other States, is a valid exercise of the taxing power of the legislature, and in no respect violates or contravenes that provision of the United States Constitution which empowers Congress to "regulate commerce with foreign nations, and among the several States, and with the Indian tribes." The contrary doctrine, in so far as citizens of other States are concerned, has been recently held by the Supreme Court of the United States in the case of Robbins v. The Taxing District, etc., but this court, while conceding that State tribunals are bound by such construction of the United States Constitution as is settled by adjudications of the Supreme Court of the United States, declines to recognize the authority of the said case, inasmuch as it was determined by a mere majority of the sitting justices, and a minority of a full bench, and is in direct conflict with other decisions of the same court, unanimously concurred in. See the opinion of this court for a collocation of elementary authorities, and of adjudications both State and Federal, in support of its ruling. *Ex parte Asher*, 662.

CONTINUANCE.

1. Seven or eight days prior to his trial were allowed by the defendant to elapse after an attachment for his absent witness was returned "not found," and in that interim he took no steps to procure the attendance of the witness. *Held* that this failure to sue out further process for the witness shows a want of due diligence, and justifies the refusal of the continuance. *Jackson v. State*, 183.

2. That a continuance was refused because of a want of diligence does not absolve the trial court, on the motion for a new trial, from the duty of considering the materiality and probable truth of the testimony expected from the absent witness in connection with the evidence adduced at the trial. Though an application for a continuance to obtain absent testimony fails to comply with the requirements of the statute, if, in view of the evidence adduced at the trial, the absent testimony appears to be material and true, it should be considered in determining the motion for a new trial. *Id.*

CONTINUANCE—*continued.*

3. A continuance on account of absent witnesses was refused by the trial court, and the refusal is assigned for error. But it appears that one of them appeared and testified at the trial; that the testimony expected from another was fully supplied at the trial, and its truth not disputed; and that the remainder of the expected testimony was immaterial. *Held,* no error in the refusal of the continuance. *Brown v. State,* 214.

4. Defendant was indicted on March 17, and his trial was set for the twentieth of the ensuing April. On the eleventh day prior to said day of trial he sued out a writ of attachment for a witness who resided in a distant county, and the return on the writ shows that the witness had removed to the District of Columbia before the writ reached the officer's hands. No further effort was made to obtain the witness's attendance or testimony. *Held,* that these facts fail to show such diligence as entitled the defendant to a continuance, inasmuch as it does not appear that the attendance of the witness could not have been secured by a more prompt procurement of the attachment, nor that his testimony could not have been obtained by deposition. *Hennessy v. State,* 340.

5. Continuance is properly refused when it is apparent that the desired testimony, if adduced, would be neither relevant nor material to the issue in the case. *Id.*

6. Being indicted for forgery by alteration of an authenticated account against the State for postage stamps, etc., furnished to State senators, the accused (who was sergeant at arms) applied for a continuance to obtain the testimony of certain senators that they received the amount of stamps, etc., charged against them by the accused. *Held,* that such proof had no relevancy to the issue in the case, and would neither be material nor admissible at the trial. *Id.*

7. Though a continuance was properly refused because diligence was not shown, yet upon the motion for new trial, if the evidence adduced at the trial denotes that the absent testimony was material and probably true, the trial court should grant a new trial. And the action of the trial court in this matter will be revised on appeal if it appears that the defendant may have sustained injury in consequence of the refusal of the continuance. *Covey v. State,* 388.

8. As cause for reversal on appeal, however, it must not only appear that the defendant suffered prejudice by reason of the refusal of the continuance by the trial court, but it must be reasonably probable that the absent testimony would induce a verdict more favorable to the appellant. See this case in illustration. *Id.*

9. A third application for continuance was properly refused the defendant in this case, in view of the fact that he adduced upon the trial, from other sources, the substance of the alleged absent testimony. *Tucker v. State,* 512.

10. This court will not revise the refusal of a continuance by the court below, unless a bill of exceptions thereto appears in the record. *Scott v. State,* 521.

11. See the statement of the case for evidence set up in an application for continuance, which, considered in connection with the evidence ad-

CONTINUANCE—*continued.*

duced on the trial, entitled the accused to a new trial—the continuance having been refused. *Mayfield v. State*, 645.

CONSPIRACY.

1. Appellant and two other prisoners conspired to escape from jail, and arranged that C., who was one of them, should secure and detain the jailer in the corridor while the escape should be effected. No understanding to kill or injure the jailer, otherwise than by his detention, was expressly proved, but the conspirators had obtained and prepared a piece of iron with which the jailer was killed by C., and it had been concealed by the appellant the morning previous to the homicide. C. killed the jailer in the corridor of the jail, and whilst the appellant and the other prisoner were locked up in their cell and thus disabled from assisting C. in the homicide. There was no proof that appellant by word or gesture encouraged C. to kill the jailer. *Held* that on this state of case the question arises whether the appellant was a principal in the homicide, and the test of that question is whether he and C. acted together, and whether the act was done in pursuance of a common design and purpose wherein their minds had agreed. *Kirby v. State*, 13.

2. It is contended for appellant that the conspiracy extended no further than the escape, and did not contemplate the killing of the jailer, or the infliction of bodily injury upon him beyond his mere detention, and that the killing was the individual and independent act of C. alone, perpetrated without appellant's knowledge or complicity, and without ability on his part to prevent it. But *held*, in view of the nature and object of the conspiracy, and of the preparation and use of a deadly weapon as a means to execute the common design, that the homicide was not the independent act of C. alone, but was the act of each and all the conspirators, because it was directly incident to and grew out of the common design of all. See the opinion *in extenso* on the amenability of co-conspirators for the acts of each other done in the execution of an unlawful thing. *Id.*

CONTINUOUS OFFENSES.

The keeping of a disorderly house is, under the law of this State, a continuous offense, and a conviction bars all further prosecution up to the time of conviction, unless, as in this case, the indictment specifies or "carves out" the times of the commission of the offense, and the evidence is confined to the times carved out; when a conviction will not be a bar to prosecutions for like offenses at other times not carved out by the indictment. *Huffman v. State*, 491.

COUNTY CLERKS.

County clerks, by virtue of the general power conferred on them by Article 1149 of the Revised Statutes, "to administer all oaths and take depositions," have authority to take affidavits of the consent of parents to the marriage of their daughter, and such an affidavit, if false, may be assigned as "false swearing," though not as perjury. (Davidson v. The State, 22 Texas Ct. App., 376, on this subject, cited and approved.) *Steber v. State*, 176.

Index.

## D.

DEADLY WEAPON.

See the statement of the case for the substance of evidence developed in a trial for murder, which resulted in a conviction for manslaughter, whereunder the trial court, having charged in substance the rule of law laid down in Article 615 of the Penal Code, did not, in view of said evidence, err in omitting to charge upon the rules declared in Articles 612 and 614 of the said Code with regard to an instrument not necessarily a deadly weapon, unless its use and manner of use were accompanied by an intention to kill. *Hartwell v. State*, 88.

DEFACING PUBLIC BUILDING.

1. Complaint and information, otherwise good, which describes the building defaced as a "public building" that was "held for public use by Cooke county" is sufficient to charge the offense of defacing a public building. *Clark v. State*, 260.

2. The fact that the title to a school house was vested in the county judge in his official capacity, for the use of the county, could not disqualify him to preside over a trial for defacing the said school house, and hence the motion to transfer this cause to the district court was properly overruled. *Id.*

DEFINITIONS.

*See* JUDGMENT, 4.

VOLUNTARY STATEMENT, 3, 4.

1. Article 196 of the Penal Code, in defining the offense of "false swearing," requires that it be done "deliberately and willfully." The trial court properly instructed the jury as to the legal signification of "deliberately" but omitted to define the legal meaning of "willfully." *Held*, in view of the facts in proof, that this omission was reversible error. *Steber v. State*, 176.

2. Although the statute (Penal Code, art. 528) contains but one general definition of rape, it embraces two separate offenses: 1. rape when committed upon "a woman," and, 2, rape when committed upon "a fe male under the age of ten years." *Nicholas v. State*, 317.

3. Article 279 of the Penal Code defines an unlawful assembly to be the "meeting of three or more persons with intent to aid each other by violence, or in any other manner, either to commit an offense, or illegally to deprive any person of any right, or to disturb him in the enjoyment thereof." *McGehee v. State*, 330.

4. Article 289 of the Penal Code provides that, "if the purpose of the unlawful assembly be to prevent any person from pursuing any labor, occupation or employment, or to intimidate any person from following his daily avocation, or to interfere in any manner with the labor or employment of another, the punishment shall be by fine not exceeding five hundred dollars. *Id.*

5. Article 295 of the Penal Code provides that "if the persons unlawfully assembled together do or attempt to do any illegal act, all those engaged in such illegal act are guilty of riot." *Id.*

DEPOSITIONS.
Certificates given to authenticate depositions or testimony taken at coroner's inquests or examining trials, are not necessary or even proper matters to be incorporated in a statement of facts. *Kirby v. State*, 13.

DILIGENCE.
1. Seven or eight days prior to his trial were allowed by the defendant to elapse after an attachment for his absent witness was returned "not found," and in that interim he took no steps to procure the attendance of the witness. *Held* that this failure to sue out further process for the witness shows a want of due diligence, and justifies the refusal of the continuance. *Jackson v. State*, 183.
2. Defendant was indicted on March 17, and his trial was set for the twentieth of the ensuing April. On the eleventh day prior to said day of trial he sued out a writ of attachment for a witness who resided in a distant county, and the return on the writ shows that the witness had removed to the District of Columbia before the writ reached the officer's hands. No further effort was made to obtain the witness's attendance or testimony. *Held*, that these facts fail to show such diligence as entitled the defendant to a continuance, inasmuch as it does not appear that the attendance of the witness could not have been secured by a more prompt procurement of the attachment, nor that his testimony could not have been obtained by deposition. *Hennessy v. State*, 340.

DISQUALIFICATION OF JUDGES.
The fact that the title to a school house was vested in the county judge in his official capacity, for the use of the county, could not disqualify him to preside over a trial for defacing the said school house, and hence the motion to transfer this cause to the district court was properly overruled. *Clark v. State*, 260.

DISORDERLY HOUSE.
1. The keeping of a disorderly house is, under the law of this State, a continuous offense, and a conviction bars all further prosecution up to the time of conviction, unless, as in this case, the indictment specifies or "carves out" the times of the commission of the offense, and the evidence is confined to the times carved out; when a conviction will not be a bar to prosecutions for like offenses at other times not carved out by the indictment. *Huffman v. State*, 491.
2. It was agreed in this case that the appellant should be tried upon her bond, and judgment was rendered against both the appellant and her sureties. *Held*, error as to the sureties, but as to appellant the judgment is affirmed. *Id.*

DRIVING STOCK FROM ACCUSTOMED RANGE.
Having admitted proof that other property of like character was driven at the same time and from the same place as the property described in the indictment, the trial court erred in omitting in its charge to limit the jury as to the legitimate purpose for which that proof could be considered. *Wheeler v. State*, 598.

Index.

DRUMMERS' TAX. .
    An Act of the Seventeenth Legislature of the State of Texas imposes upon "every commercial traveler, drummer, salesman or solicitor of trade by sample or otherwise" an annual occupation tax of thirty-five dollars, payable in advance to the State comptroller, and enacts that any such trader who fails or refuses to exhibit the comptroller's receipt, when demanded by any tax collector or justice of the peace, shall be guilty of a misdemeanor punishable by fine of not less than twenty-five dollars, nor more than one hundred dollars. *Held* that this enactment, whether considered with reference to citizens of this or of other States, is a valid exercise of the taxing power of the legislature, and in no respect violates or contravenes that provision of the United States Constitution which empowers Congress to "regulate commerce with foreign nations, and among the several States, and with the Indian tribes." The contrary doctrine, in so far as citizens of other States are concerned, has been recently held by the Supreme Court of the United States in the case of Robbins v. The Taxing District, etc., but this court, while conceding that State tribunals are bound by such construction of the United States Constitution as is settled by adjudications of the Supreme Court of the United States, declines to recognize the authority of the said case, inasmuch as it was determined by a mere majority of the sitting justices, and a minority of a full bench, and is in direct conflict with other decisions of the same court, unanimously concurred in. See the opinion of this court for a collocation of elementary authorities, and of adjudications both State and Federal, in support of its ruling. *Ex parte Asher*, 662.

DUPLICITY.
    *See* Indictment, 14, 35,

DYING DECLARATIONS.
    1. As a predicate for the introduction in evidence of a dying declaration, the State must prove, first, that the deceased, when he made it was conscious of approaching death, and believed there was no hope of his recovery; second, that the declaration was voluntarily made, and not through the persuasion of any person; third, that it was not made in answer to interrogatories calculated to lead deceased to make any particular statement; and, fourth, that the deceased was of sane mind at the time of making the declaration. See the opinion of the court for a predicate *held* insufficient to prove the first of the above requisites; wherefore the dying declaration was erroneously admitted. *Ledbetter v. State*, 247.
    2. It is competent for a defendant on trial for murder to impeach the dying declarations of the deceased inculpating him as the slayer, by proving statements made by the deceased, contradictory of his dying declarations; and, in excluding such impeaching proof in this case, the trial court erred. See the opinion on the question. *Felder v. State*, 477.

## E.

**ELECTION.**

1. The local option law of this State requires that the commissioners court of the county to be affected by the election under the said law shall order the said election at the first session of the said court after the filing of the petition for said election, and this statute is mandatory. An election held under an order issued at any other than the first session of the said court after the filing of the petition is absolutely void. *Ex parte Sublett*, 309.

2. Under the local option law, as it existed in November, 1876, an election under its provisions could be ordered at a special session of the commissioners court, if such was the first session after the filing of the petition. *Id.*

**EMBEZZLEMENT.**

1. Embezzlement, like theft, may be prosecuted in any county through or into which the property was transported by the accused, and the fact of transportation may, like any other fact, be proved by circumstantial evidence. See the opinion for circumstantial evidence *held* sufficient to prove the venue in the county of the forum, which was a different county from that wherein he received the embezzled money. *Brown v. State*, 214.

2. "Property," as defined in Article 732, Penal Code, includes any and every article commonly known and designated as personal property, and money certainly is commonly so known and designated. Money, therefore, is "property" within the meaning of Article 219 of the Code of Procedure, by which the venue of prosecutions for embezzlement is regulated. *Id.*

3. Appellant's principal lived in B. county, and was engaged in the business of selling and putting up lightning rods anywhere in Texas. He there employed appellant as a traveling agent to sell and put up rods, furnishing him the rods and outfit. Appellant sold and put up rods in R. county, and there received the money for the same. Thence he returned to B. county, where, in a settlement with his employer, he denied that he had received the money, and thus his employer first discovered that he had embezzled it. *Held* that, at common law and without reference to our code, the proper court of B. county had jurisdiction of the offense, inasmuch as the code, if it does not provide for such jurisdiction, does not exclude it. *Id.*

**EVIDENCE.**

*See* Adequate Cause.        Exhibiting Gaming Bank.
Assault.        Forgery, 3.
Assault to Rape, 4.        Impeaching Testimony.
Conspiracy.        Murder, 15.
Driving Stock from Range.        Receiving Stolen Property.

1. In this State the common law rule in rape cases obtains, that neither the particulars of the injured female's complaint nor the name of the person she mentioned as the offender can be proved as original evi-

EVIDENCE—*continued.*

dence, though they may be brought out by the defendant, if he chooses, upon cross examination. Under this rule the trial court erred in permitting the State to prove the particulars of the complaint made by the prosecutrix and the name she gave as that of the person who assaulted her. *Holst v. State*, 1.

2. Article 730 of the Code of Criminal Procedure provides as follows: "Children or other persons who, after being examined by the court, appear not to possess sufficient intelligence to relate transactions with respect to which they are interrogated, or who do not understand the obligation of an oath, are incompetent witnesses." See the opinion *in extenso* for circumstances under which it is *held* that the prosecuting witness was incompetent to testify, because, even if intelligent enough to relate the transaction, she was not sufficiently intelligent to understand the obligation of an oath. *Id.*

3. As tending to prove guilty knowledge on the part of the defendant, the State relied upon the shape and condition of the brand on the alleged stolen animal. It was proved that the brand of the person from whom the defendant claimed to have acquired the animal was a long horizontal "11," and that the brand on the stolen animal was a short perpendicular 11. The defense offered to prove by stock men that mistakes in the placing of brands were of frequent occurrence. *Held,* that in excluding the evidence the trial court erred. *Boren v. State*, 28.

4. See the opinion for a state of proof in a trial for burglary *held* to be insufficient to establish a burglarious entry by fraud; wherefore the trial court having charged the jury upon an entry by fraud, and having confined the jury in the charge to such an entry, it should have awarded the defendant a new trial. *Neiderluck v. State*, 38.

5. In order to convict a domestic servant for the burglary of his master's house, it must be shown that he, if he acted alone, entered the same by an actual breaking. If, however, the domestic servant is shown to have been one of two or more conspirators to enter and burglarize his master's house, and, in pursuance of the conspiracy, he admitted his co-conspirators, a constructive breaking, it seems, will authorize his conviction. Independent of this rule, the co-conspirators will be guilty of burglary upon the constructive breaking by the domestic servant. *Id.*

6. When an emotion, such as fear, anger, and the like, was manifested merely by demeanor or appearances not otherwise communicable, the witness may be allowed to describe its effect upon his mind, even though the effect be opinion. In this case a State's witness testified that the defendant, about two hours before he killed the deceased, put his foot on the foot of the deceased and kept it there for about half a minute after the deceased remarked to him, "that's my foot you are on," and then the deceased pushed the defendant's foot off of his. The State, over defendant's objection, asked the witness whether the defendant put his foot on the deceased's in a jocular or an insulting manner, and the witness replied that he regarded the act as an insult. *Held,* that the question and answer were allowable. Note the sixth subdivision of the opinion of the court for a succinct but lucid exposition of the rules governing this species of testimony. *Powers v. State*, 42.

EVIDENCE—*continued.*

7. A State's witness being on the stand, the court, over objection of the defense, allowed prosecuting counsel to ask him if he had not had frequent difficulties with the defendant. The objections of the defense were that the question was irrelevant, incompetent, and calculated to moot the character of the defendant, which he had not put in issue. The trial judge, explaining the bill of exceptions, states that the defendant was "boss" on the witness's ranch, and that the prosecuting counsel announced the object of the question to be to prove that the witness and the defendant had had difficulties, and that the witness had threatened the defendant to discharge him and employ the deceased in his place— thus showing a motive for the homicide, for which purpose alone the question was allowed. *Held* that the explanation shows sufficient reason for the allowance of the question. *Id.*

8. If inculpatory declarations of a defendant were *res gestæ*, they are competent evidence against him, notwithstanding they would be incompetent as confessions because he was in arrest when he made them. See the eighth subdivision of the opinion of the court in elucidation of this important distinction. *Id.*

9. To support a conviction for the offense of knowingly selling intoxicating liquor to a minor the evidence must show that at the time the liquor was sold the seller knew the purchaser to be a minor. *Williams v. State*, 70.

10. The indictment in this case charged the appellant with the fraudulent disposition of "four bales of cotton" upon which he had previously executed and delivered a valid mortgage in writing, etc., and was sufficient to charge the offense of fraudulently disposing of mortgaged personal property. The mortgage, however, as it described the property mortgaged as a "*crop* of cotton to be raised by" defendant "during the year 1886," was inadmissible in support of the indictment. *Honeycut v. State*, 71.

11. Under the Act of the Nineteenth Legislature (General Laws, p. 85), a growing crop may be mortgaged, and a fraudulent disposition of the same when mortgaged is an offense against the laws of this State. See the opinion *in extenso* for a form of indictment for fraudulently disposing of a growing crop of cotton when mortgaged. *Id.*

12. See the statement of the case for evidence *held* insufficient to support a conviction for assault to rape. *Pless v. State*, 73.

13. No testimony should be rejected in a rape case which, in the remotest degree, will tend to aid the jury in reaching the truth. In this case the State offered a medical witness who examined the privates of the alleged injured party, five weeks after the alleged offense, but, upon objection by the defendant, the evidence was rejected. *Held*, that, though somewhat remote in point of time, the evidence should have been received as tending to throw light upon the transaction. *Id.*

14. See the opinion and the statement of the case for evidence *held* insufficient to support a conviction for theft, because insufficient to support the allegation of ownership. *Groom v. State*, 82.

15. Bill of sale executed by the general owners of the cattle subsequent

EVIDENCE—*continued.*

to the alleged theft of the same from the special owner, was improperly admitted, because irrelevant, and because, not being of record at the time of the theft, it was not evidence of ownership. *Id.*

16. From the fact that there is a conflict of evidence in a habeas corpus trial for bail, it does not necessarily follow that the inculpatory evidence fails to make the proof "evident;" for it is not all exculpatory evidence that will destroy or impair that which is inculpatory, or which will raise a reasonable doubt of the guilt of the applicant for bail. The evidence is to be considered in its entirety, and if, when so considered, a reasonable doubt of the applicant's guilt of a capital offense is not engendered, the "proof is evident," and bail should be refused. *Ex parte Smith*, 100.

17. The trial court admitted certain inculpatory evidence which this court considers inadmissible because it was *res inter alios acta*, but, instead of reversing the judgment on that account, this court excludes the objectionable evidence from consideration, and upon the legal evidence affirms the judgment refusing bail. *Id.*

18. If the defendant elicits from a witness an answer prejudicial to his interest, he is not entitled to have it excluded from the consideration of the jury. *May v. State*, 146.

19. It is an established rule of practice in this State that the charge of the court must make a pertinent application of the law arising out of the evidence, no matter how weak and impotent the evidence may appear to the court. See the opinion *in extenso* for evidence in a murder case which, under this rule, demanded of the trial court a charge upon the law of manslaughter. *Liskosski v. State*, 165.

20. There being evidence in this case tending to show an original conflict between the deceased on the one hand, and the accused and one K., acting together, on the other, and that that conflict was abandoned, and that it was renewed between K., acting alone, and the deceased, in which second conflict the fatal injury was inflicted, the trial court, having correctly instructed the jury upon a conflict in which K. and the accused acted together, should have further charged upon the alternative theory of a homicide in which K. acted alone. *Id.*

21. See the opinion of this court for a summary of the evidence upon which the appellant was convicted of an assault with intent to murder, and which should have elicited instructions from the trial court to the jury upon certain phases of the law of aggravated assault, of self defense and of manslaughter. *Roberts v. State*, 170.

22. Appellant was tried for falsely making oath that the mother of the intended bride was willing for her to marry her affianced husband. It was in proof that the bride's mother had been dead some two years when the oath was made and the license obtained, and that since her death the bride had lived in the family and at the home of one G., who stood to her *in loco parentis*. The trial court permitted the State to prove by said G. that he did not give his consent to the marriage. *Held* that this testimony was inadmissible because wholly irrelevant to the issue, and tended to prejudice the rights of the defendant. *Steber v. State*, 176.

23. Over objection by the defense, a State's witness was allowed to

**EVIDENCE—***continued.*

testify that, after the commission of the offense, and in the absence of the accused, certain persons came to witness and made overtures for a compromise, inquiring how much money it would take, etc. There was no proof that these overtures were made by the authority or with the knowledge of the accused. *Held*, that the evidence was hearsay and inadmissible, and was calculated to prejudice the accused. *Barbee v. State*, 199.

24. A jury in a felony case should always be instructed that they are the exclusive judges of the facts proved, and of the weight to be given to the testimony. *Id.*

25. That the State, over objection, was allowed, in the cross examination of the defendant's wife, to elicit testimony not germane to her evidence in chief, is not reversible error unless the objectionable testimony was calculated to prejudice defendant's rights. *Davis v. State*, 210.

26. In a trial for theft, the State, for the purpose of rebutting proof of alibi, proved a statement of defendant that he was not at the wedding of one H., and then, over objection, was permitted to put in evidence the marriage license of H., with the minister's certificate of its solemnization. *Held*, that it was error to admit in evidence the marriage license and certificate, because, with relation to the accused, they were *res inter alios acta*. The proper evidence of the fact of the marriage and its date would have been the testimony of some one who was present when it was solemnized. *Chew v. State*, 230.

27. It was not *held* in the cases of Hunnicut v. The State, 20 Texas Court of Appeals, 632, and Phillips v. The State, 22 Texas Court of Appeals, 139, that the State must in every case introduce all the eye witnesses of the *res gestæ*. As laid down in the latter case, this is a matter within the sound discretion of the trial court, though there may be cases in which the requirement should be made. *Wheelis v. State*, 238.

28. The State, in this case, before the defendant could interpose an objection, proved the former trial and conviction of the defendant for this same offense, and the trial court refused to entertain a subsequent objection to the proof, and permitted it to go to the jury. *Held*, error. The statute specially provides that a former conviction shall not operate as a presumption of guilt, and inhibits allusion to it in argument. The evidence being illegitimate, and having been adduced before the defendant could interpose an objection, the court, upon the defendant's motion, should have withdrawn it from the jury, charging them that the same could not be considered in their deliberations upon their verdict. *Clark v. State*, 260.

29. Upon a trial for the unlawful sale of liquor to a minor, the point at issue being the defendant's knowledge of the purchaser's minority, the State was permitted, over objection, to ask a witness if, at the time of the alleged offense, the purchaser, by reason of his physical appearance, would be taken by a person of ordinary observation to be a minor; and the witness was permitted to answer in the affirmative. *Held*, error. *Koblenschlag v. State*, 264.

30. It is a rule of evidence that when an original document can be

EVIDENCE—*continued.*

produced in court, oral proof of its contents can not be made. The original instrument in this case being in court on this trial, the court below erred in permitting a witness to testify to. the contents and date of the same. *Huff v. State,* 291.

31. If the perjury assigned be evidence given by the accused as a witness in a case under judicial investigation, the materiality of his testimony is a question of law and not of fact. But, like any other question of law, it may be so mingled with the facts that the court should submit it to the jury, with proper instructions upon the law. In no event, however, can the materiality of the testimony assigned as perjury be established by the opinions of witnesses. *Washington v. State,* 336.

32. The perjury assigned being the false testimony given by the defendant upon the trial of one G., the trial court erred in permitting certain witnesses who served as jurors upon the trial of G. to testify, upon this trial, that they discredited and discarded the evidence of this defendant in considering of their verdict in the G. case. See the opinion on the question. *Id.*

33. The record and judgment in the proceeding in which the perjury was alleged to have been committed, while not admissible in evidence to be considered by the jury indiscriminately, was admissible as matter of inducement in the matter assigned as perjury. When admitted for this specific purpose, it became the duty of the trial court to give to the jury an instruction as to the purpose of its admission and the extent to which it could be considered. The omission of such an instruction was material error. *Id.*

34. Evidence insufficient to support a conviction for obstructing a public road. *Guthrie v. State,* 339.

35. Continuance is properly refused when it is apparent that the desired testimony, if adduced, would be neither relevant nor material to the issue in the case. *Hennessy v. State,* 340.

36. Being indicted for forgery by alteration of an authenticated account against the State for postage stamps. etc., furnished to State senators, the accused (who was sergeant at arms) applied for a continuance to obtain the testimony of certain senators that they received the amount of stamps, etc., charged against them by the accused. *Held,* that such proof had no relevancy to the issue in the case, and would neither be material nor admissible on the trial. *Id.*

37. In a trial for forgery by alteration of an account against the State for postage stamps, etc., the prosecution was permitted, over objection, to put in evidence certain post office receipts for disbursements made by the defendant for stamps. etc., about the time of the alleged forgery, and was also permitted to adduce evidence that the amounts of said receipts had been altered. The jury were instructed that they could not consider this evidence as any proof that the alleged alteration was made by the defendant, but only with reference to his intent, if in fact the alteration was made by him. *Held,* that the post office receipts were properly admitted as evidence on the question of intent, and for the purpose expounded to the jury. *Id.*

EVIDENCE—*continued.*

38.  The prosecution was further allowed to adduce evidence tending to prove that the defendant had not purchased and distributed the quantity of postage stamps, etc., charged in his accounts against the State. *Held,* competent evidence of a fraudulent intent and a systematic falsification of a number of accounts which comprised the one involved in the charge of forgery on trial. *Id.*

39.  The manner of introducing evidence is largely left to the discretionary control and regulation of the trial court, and rulings thereon will not be revised on appeal when no abuse of that discretion to the defendant's prejudice is apparent. *Id.*

40.  Bill of exceptions, to be available on appeal, should set forth the facts relevant to the ruling excepted to. The judge's authentication of the bill does not establish the validity of its grounds of exception, but merely certifies its presentation and the court's disposition of it. *Id.*

41.  Note evidence *held* amply to sustain a conviction for the forgery of an account against the State by altering and augmenting the amount for which the account had been approved. *Id.*

42.  Evidence insufficient to support a conviction for theft. *Thompson v. State,* 356.

43.  Predicate sufficient to admit in evidence the written testimony of an absent witness taken upon the examining trial is laid when it is shown that the absent witness either lives out of the State or that he has removed beyond the limits of the State. In this case it was shown that the absent witness was an officer in the United States army; that he was temporarily on duty in the State at the time of the examining trial; that his command, at that time, was stationed in the Indian Territory; that since the examining trial he had left this State to go to the post where his command was stationed, and that, since his departure, the witness proving the predicate had received a telegram from him announcing his arrival at his post. *Held,* a sufficient predicate to admit his written testimony. *Conner v. State,* 378.

44.  This court has judicial knowledge of the fact that the Indian Territory is beyond the jurisdiction of this State. *Id.*

45.  Circumstantial evidence is competent to establish the fact that an absent witness is beyond the limits or jurisdiction of this State. *Id.*

46.  The rule of evidence which would require the State to produce a telegram as the best evidence of its contents, before resorting to secondary evidence to prove the same, obtains when the contents of the telegram become essential in determining the rights of parties to it. The object sought in this case was not proof of the contents of the telegram, but proof only of the independent fact that the telegram purporting to have been sent by the absent witness was received by the witness on the stand. *Held,* that the evidence was properly admitted. *Id.*

47.  It is a settled rule of practice in this State that, to relieve the trial judge of the duty of charging upon the lower degrees of culpable homicide, the evidence must establish the highest degree; for the reason that if there be reasonable doubt it must be solved by the jury and not by the court. It would be error to charge that the jury must either convict

EVIDENCE,—*continued.*

of murder of the first degree or acquit, if by any possible legitimate construction of the evidence the jury might convict of the second degree. *Id.*

48.  Stated in another form, the rule has been held to be, in effect, that a failure to define murder of the second degree, in a case where the jury upon the evidence might have found the defendant guilty of the less offense, will be cause for reversal whether the instructions were asked or not. In this case the jury returned a verdict of guilty in the second degree under the charge of the court defining that grade of murder, and the defendant has nothing to complain of.  *Id.*

49.  In the trial of appellant for adultery with one J., in Bosque county, the State was permitted over objection by the defense, to prove certain acts and conduct of J. and appellant in other counties and since the presentment of the indictment; and the trial court, with reference to this evidence, refused to instruct the jury as to the special purpose for which it was competent, and to guard the jury against convicting the accused of adultery in Bosque county by considering such evidence as independent proof thereof.  Bills of exception were reserved by the defense to the admission of the proof and to the rejection of the requested instructions.  *Held*, that there was no error in admitting the evidence, in view of the other proof in the case, but it was error to omit and refuse to limit it to its proper purpose, and properly to guard the jury against misapplying it to the prejudice of the accused. *Funderberg v. State*, 392.

50.  The proof showed that the accused, when he carried the pistol on his person, was going from his home in Williamson county to the site of said county, intending to return on the following day.  *Held* that such facts did not constitute the accused a traveler within the meaning of that term as it is used in the statute denouncing a penalty for the carrying of a pistol on the person.  *Darby v. State*, 407.

51.  See the statement of the case for evidence adduced in a trial for carrying a pistol *held* insufficient to support the defense that, when he carried the pistol, the accused had reasonable grounds to apprehend an unlawful attack upon his person, etc.  *Id.*

52.  It was competent for the State to prove in this trial for murder that the homicide occurred in a house of prostitution, and that the accused was the proprietress of the house,—as those facts tended in this case to elucidate the *res gestœ*.  *Gibson v. State*, 414.

53.  The State has the right, on the trial of a criminal case, to anticipate defensive testimony upon a material issue, and may support its theory thereupon by its evidence in chief as well as by its evidence in rebuttal.  See the opinion for a case to which this rule applies.  *Id.*

54.  That the trial court is required to compel the State, under all circumstances, to introduce every eye witness to the transaction is a doctrine which has never been announced by this court, and which is not supported by its adjudications in the Hunnicutt case (20 Texas Ct. App., 626) and the Phillips case (22 Texas Ct. App., 139).  *Id.*

55.  The State having proved the acts and declarations of the defendant just before and just after the shooting, the defense proposed

EVIDENCE—*continued.*

to prove statements made to a witness by the defendant, twelve days subsequent to the shooting, with respect to her declarations at the time of the shooting, which proposed evidence was excluded by the trial court. It is insisted by the defense that the excluded testimony was admissible under the last clause of Article 751 of the Code of Criminal Procedure, which reads as follows: "And when a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood, or to explain the same, may also be given in evidence." *Held*, that the proposed evidence was properly excluded. The rule announced in the said Article can not be invoked in this case, inasmuch as the declarations of the accused at the time of the shooting were proved as *res gestæ* on the trial, and not as detailed declarations. *Id.*

56. In the absence of proof showing that the defendant's husband and co-principal, who fired the fatal shot, heard or was informed of the insulting epithet applied to the defendant by the deceased, the trial court did not err in refusing a special charge upon manslaughter. *Id.*

57. The indictment not purporting to set out the mortgage in *hæc verba*, or by its tenor, admits the latter in evidence, if the description of the mortgaged property, though not so full and minute as that contained in the mortgage, is sufficient to identify the property. See this case in illustration. *Glass v. State*, 425.

58. Evidence that, in the exchange of the mortgaged property, the accused stipulated the title should not pass to and vest in the vendee until he, the accused, should satisfy the mortgagee's claim against the same raised the issue of fraudulent intent essential to constitute the offense; wherefore, in failing to submit that issue in the charge to the jury, the trial court erred. *Id.*

59. Upon his trial for unlawfully carrying a pistol, the accused sought to exculpate himself under the exception to the statute, that the pistol was carried on his own premises. The proof was that the premises on which the pistol was carried was the joint inheritance of the wife of the accused and one M., but that it was occupied by M., and not by the accused or his wife. *Held* that the proof did not bring the premises within the exception. *Brannon v. State*, 428.

60. Upon the joint trial of this appellant and W. F. B., for murder, the State, over the objection of appellant, was permitted to prove threats against the deceased and his family, made by W. F. B. in the absence of appellant—the court promising to limit and control the said evidence in the charge to the jury, which it failed to do. *Held*, that in this failure the trial court erred. *Barron v. State*, 462.

61. See the opinion *in extenso* for a special instruction asked by the defendant, which, in view of the evidence in the case, should have been given. *Id.*

62. On this, a trial for murder, the State was permitted to prove by a witness that, when he arrived at the place of the homicide, some member of the crowd there congregated pointed to the defendant, whom the witness had just met two doors distant from the place of the homicide,

EVIDENCE—*continued.*

and exclaimed: "There is the man who did the shooting." The defendant at that time was walking with another man. The rule under which such proof could be admitted may be stated as follows: To entitle the State to introduce in evidence the declaration of a bystander, it must be clearly shown that the defendant understood himself to be accused of the criminal act committed; and, further, the circumstances must have been such as to require of him a response. Even when the requirements of this rule are complied with, and the evidence has been properly admitted, it devolves upon the trial court to instruct the jury as to the legal function of the evidence so admitted, and that it can not be relied upon by the State to establish the defendant's guilt of the main fact in issue, *i. e.*, that he committed the criminal act. *Held* that, under the rule stated, the admission of the declaration of the bystander in this case was error. *Felder v. State.* 477.

63 The value of the property privately stolen from the person of another is not a constituent of that offense as defined in Articles 744 and 745 of the Penal Code, nor does it in any wise affect the punishment prescribed for it. Wherefore, in prosecutions for that offense, the value of the stolen property need neither be alleged in the indictment nor established by the proof. See the opinion for an elucidation of this ruling, and for an exposition of the distinctions in these respects between ordinary theft and theft from the person. *Shaw v. State,* 493.

64. In a trial for privately stealing a gold ring from the finger of a lady, the defense claimed that the taking was an innocent mistake of the defendant, who mistook the said lady for another one upon whom he designed to perpetrate a joke. See the statement of the case and the opinion of the court for evidence *held* to refute this defense and to sustain the conviction. *Id.*

65. It is only when the State relies *exclusively* upon circumstantial evidence that the trial court is required to charge the jury upon the law controlling that character of evidence. *Jones v. State,* 501.

66. New trial was applied for in this case to procure the testimony of the co-defendant of the accused, who was tried and acquitted of the same offense subsequent to his conviction. Under the rule that an uncorroborated accomplice is not entitled to full credit, and that a new trial should not be granted to procure the testimony of a co-defendant subsequently acquitted, whose evidence standing alone is of a suspicious import, and of such doubtful credibility as to render it unlikely that it would change the result of the trial, the new trial in this case was properly refused. *Id.*

67. Intellectual weakness or impotent or feeble comprehension of a witness constitutes an exception to the general rule that leading questions can not be propounded. See the opinion for circumstances under which it is *held* that the rule in the first instance was not infringed, and that, while infringed in the second instance, it was without prejudice to the accused, and therefore does not constitute reversible error. *Rodriguez v. State,* 503.

68. It is a well settled rule of practice that it is only when an impugned

EVIDENCE—*continued.*

witness has denied, either directly or by qualification, having made state-ments contradictory of his or her testimony upon the trial, that proof of such statements is admissible. *Id.*

69. Trial judges are prohibited by statute from discussing or com-menting upon evidence of disputed admissibility, and are required to decide simply whether the proposed evidence is admissible. But the error in this case is immaterial, inasmuch as the proposed evidence was rejected, and the remarks of the judge could not have influenced the jury nor have prejudiced the defendant. *Id.*

70. The prosecution being for the theft of a horse in B. county on January 19, 1887, the State was permitted to prove, in rebuttal, that the defendant was seen in the city of B., in W. county, on the night of Jan-uary 31, when another horse than that named in the indictment was there stolen. *Held,* that the said evidence was erroneously admitted, be-cause it was irrelevant and immaterial, involved no issue in the case, and was not in rebuttal of any proof adduced by the defense. *Carter v. State,* 508.

71. Evidence that after his arrest the defendant refused to divulge his name was erroneously admitted, in view of the absence of evidence bringing such proof within the exceptions of Article 750 of the Code of Criminal Procedure. *Id.*

72. For the purpose of establishing identity in developing the *res gestæ,* or to prove guilt by circumstances connected with the theft, or to show the intent with which the accused acted with respect to the prop-erty involved in the trial, it was competent for the State to prove the theft of other property of the same kind at the time and place of the offense charged, but the failure of the trial court, in the charge to the jury, to so limit and circumscribe the purpose and effect of such proof was error. *Id.*

73. The perjury assigned in this case was the false testimony of the accused upon the trial of one W., for cattle theft. Upon the trial of the accused for the perjury the trial court permitted certain State's witnesses to testify to conversations among themselves and one M., concerning the suspicion of M. that W. was a cattle thief; and further, to an agreement entered into between the said witnesses and M. developing a plan whereby M. was to detect W. in the theft of cattle; neither the defen-dant nor W. being present when the said conversations were had and the agreement entered into. *Held,* that the testimony, being hearsay, was clearly inadmissible; and the conversations and agreement, being *res inter alios acta,* were not binding upon either W. or this defendant. *Maines v. State,* 568.

74. The State's witness M. was permitted to testify, on this trial, that after he had testified fully on the examining trial of W., for cattle theft, he fled the country because of serious threats uttered against him. *Held* that, in the absence of evidence showing that the threats were uttered by the defendant, or that he had some connection with them, the evi-dence was incompetent, and its admission was erroneous. *Id.*

75. Oral testimony of the contents of telegraphic dispatches sent by

EVIDENCE—*continued.*

or at the instance of an accused is not admissible until the failure to produce the better evidence is satisfactorily accounted for. *Chester v. State*, 577.

76 It was error to admit in evidence telegraphic dispatches purporting to be replies to telegrams sent by witnesses (in this case at the instance of defendant), inasmuch as the accused has the constitutional right to be confronted by the witnesses against him;—and especially does this rule obtain in the absence of proof that such dispatches were the acts of the parties purporting to send them. *Id.*

77. See the statement of the case for evidence *held* sufficient to qualify a witness as an expert in hand writing. *Id.*

78. In permitting the written documents used by the expert witness as standards of comparison to go into the hands of the jury, to be by them used as proof of the hand writing on the alleged forged instrument, the trial court erred. *Id.*

79. See the opinion *in extenso* for evidence adduced on a trial for receiving stolen property, knowing it to have been stolen, which, being hearsay testimony, should have been excluded. *Estes v. State*, 600.

80. See the statement of the case for evidence *held* insufficient to support a conviction for receiving stolen property, knowing it to be stolen. *Id.*

81. See the opinion for the substance of evidence held insufficient to support a conviction for unlawfully fencing the land of another. *Clark v. State*, 618.

82. See the opinion for evidence *held* inadmissible upon the main issue or as corroborative evidence, because of immateriality, and inadmissible as impeaching testimony because of the want of predicate; and, therefore, to have been properly excluded. *McCullough v. State*, 620.

83. See the statement of the case for evidence *held* sufficient to support a conviction for murder in the first degree. *Id.*

84. See the statement of the case for evidence, which, in view of the other facts in proof, should have been admitted on the trial of the accused for an aggravated assault. *Burns v. State*, 641.

85. See the statement of the case for evidence *held* insufficient to support a conviction for cattle theft, because insufficient to establish a fraudulent intent in the taking. *White v. State*, 643.

86. To develop the *res gestæ*, or to establish by circumstances immediately connected with it the theft charged in the indictment, or to prove the intent with which the accused acted with respect to the property charged in the indictment, it was competent for the State to prove the theft of other like property at the same time and place. But the failure of the charge to properly limit and restrict such proof was material error. *Mayfield v. State*, 645.

87. See the opinion *in extenso* for evidence in a theft case *held* inadmissible as hearsay, and, in view of the remaining proof in the case, to constitute such material error as to necessitate a reversal of the conviction. *Montgomery v. State*, 650.

88. See the opinion *in extenso* for a summary of evidence *held* in-

EVIDENCE—*continued.*
    sufficient to support a final judgment upon a forfeited bail bond. *Baker v. State*, 657.

    89.  A killing committed in resisting arrest under an illegal process is not, ordinarily, a higher degree of homicide than manslaughter. *A fortiori*, it is impossible for a homicide to be of a degree inferior to manslaughter, if the killing is committed by one in the attempt to make an illegal arrest, though the killing may be done upon reasonable apprehension of danger. Note the opinion for the comments of Hurt, J., on the rule, and see the opinion *in extenso* for evidence held, under the rules stated, to have been properly excluded. *Peter v. State*, 684.

    90.  See the statement of the case for evidence on a trial for murder *held* to present the issue of manslaughter, and, therefore, to have called for a charge upon that grade of homicide. *Ross v. State*, 689.

    91.  See the opinion and the statement of the case for evidence *held* sufficient to establish a conspiracy between the accused and two others to commit the theft, and therefore to have qualified, as evidence, certain statements inculpating the accused, made by the said parties before the consummation of the conspiracy. *Long v. State*, 692.

    92.  See the statement of the case for evidence *held* insufficient to support a conviction for assault with intent to murder. *Garcia v. State*, 712.

EXCEPTIONS.
    *See* CHALLENGE, 4.

EXECUTIVE PARDON.
    1.  The delivery and acceptance of a pardon are complete when the grantor has parted with his entire control or dominion over the instrument, with the intention that it shall pass to the grantee, and the latter assents to it either by himself or agent. In this case the pardoning power having executed and delivered the pardon to the agent of the grantee, who accepted it on his principal's behalf, the instrument took immediate effect upon delivery. *Rosson v. State*, 287.

    2.  A pardon once delivered by the grantor and accepted by the grantee or his agent can not be revoked by the authority which granted it. *Id.*

    3.  The appellant in this case was confined in the penitentiary under seven different convictions for horse theft, the penalties aggregating forty-five years. On August 25, 1886, the Governor issued his full pardon to cover each conviction, and delivered the same to the appellant's attorney. On the thirtieth day of the same month the said pardon was delivered to a clerk in the office of the superintendent of the penitentiary at Huntsville. On the same day, but before the same had been delivered to the appellant, or recorded in the books of the superintendent's office, the said superintendent received a telegram from the Governor, directing him to hold the said pardon for further orders. By subsequent telegram the Governor notified the superintendent that the said pardon had been revoked, and ordered its return, and it was returned to the Governor, who then indorsed upon it instructions to the Secretary of State, as fol-

EXECUTIVE PARDON—*continued.*

lows: "Issue an order revoking this pardon as having been granted upon misinformation." Thereafter proceedings by habeas corpus were insti-tuted in the district court of Travis county, and, to support his application for release under the pardon, the appellant produced in evidence the charter of pardon bearing the said indorsement. *Held*, 1: A pardon pro-cured by fraud upon the pardoning power, whether by suppression of truth or suggestion of falsehood, or by other imposition, is absolutely void. 2. Having relied upon the pardon with its indorsement, the ap-pellant established against himself, prima facie, the procurement of the pardon by fraud, and assumed the onus of proving no fraud; failing to do which, or to controvert the prima facie case established by himself, the trial court did not err in remanding him to the custody of the superin-tendent of the penitentiary. *Id.*

EXHIBITING GAMING BANK, ETC.

1. Charge of the court is erroneous if it announces imprisonment in jail to be part of the punishment for keeping or exhibiting a gaming bank, with no discretion in the jury to dispense therewith and impose a fine alone. Article 358 of the Penal Code prescribes the penalty as a fine, but empowers the jury to also assess imprisonment in the county jail for not exceeding thirty days; and this Article is still in full force, not-withstanding the abortive amendatory Act of March 19, 1885, heretofore declared unconstitutional in the case of Hunt v. The State, 22 Texas Court of Appeals, 396. *Wright v. State*, 313.

2. In prosecutions for gaming a conviction may be had upon the un-corroborated testimony of an accomplice or joint offender; and Article 367 of the Penal Code, which so provides, is a constitutional enactment. *Id.*

3. Charge of the court on a trial for exhibiting a gaming bank au-thorized and exacted confinement in jail as part of the penalty to be assessed by a verdict of guilty. *Held*, that so far as the confinement in jail was concerned, the charge was erroneous. *Ford v. State*, 520.

EXPERT TESTIMONY.
*See* EVIDENCE, 76, 77.

EYE WITNESS.
*See* EVIDENCE, 26.

F.

FACT CASES.

1. Evidence insufficient to support a conviction for assault to rape. *Pless v. State*, 73.

2. A mistrial because of disagreement of the jury as to a verdict in a trial for a capital offense does not establish *per se* that the proof is not evident, and that the accused is entitled to bail. But see the statement of the case for evidence in a habeas corpus proceeding for bail, under an indictment for murder, *held* not to authorize the refusal of bail. *Ex parte England*, 90.

FACT CASES—*continued.*

3. See the statement of the case for evidence on which it is *held* that the court below did not err in disallowing bail to an applicant charged by indictment with murder in the first degree. (Hurt, J., dissenting.) *Ex parte Smith*, 100.

4. See the statement of the case for evidence *held* sufficient to support a conviction for murder of the first degree, founded upon the defendant's plea of guilty; and also for a charge of the trial court, *held* to be correct, the evidence proving that the homicide was committed in the perpetration of robbery, which the Penal Code, Article 606, makes murder in the first degree *per se*. *Giles v. State*, 281.

5. See the statement of the case for evidence *held* insufficient to support a conviction for unlawful traffic in county scrip, inasmuch as it fails to establish the official character of the appellant as a county officer at the alleged date of the offense. *Huff v. State*, 291.

6. Evidence sufficient to support a conviction for theft. *Porter v. State*, 295.

7. See the statement of the case for evidence *held* insufficient to support a conviction for murder of the second degree—the deceased being the wife of the accused. *Olivares v. State*, 305.

8. Evidence insufficient to support a conviction for rape. *Nicholas v. State*, 317.

9. Evidence insufficient to support a conviction for obstructing public road. *Murphy v. State*, 333.

10. Note evidence *held* amply to sustain a conviction for the forgery of an account against the State by altering and augmenting the amount for which the account had been approved. *Hennessy v. State*, 340.

11. Evidence insufficient to support a conviction for aggravated assalt and battery. *Hutton v. State*, 386.

12. See the statement of the case for evidence adduced in a trial for carrying a pistol *held* insufficient to support the defense that, when he carried the pistol, the accused had reasonable grounds to apprehend an unlawful attack upon his person, etc. *Darby v. State*, 407.

13. Evidence insufficient to support a conviction for murder. *Scott v. State*, 452.

14. Evidence insufficient to support a conviction for theft. *Donohoe v. State*, 457.

15. Evidence sufficient to support a conviction for rape. *Grate v. State*, 458.

16. Evidence insufficient to support a conviction for carrying a pistol. *Cathey v. State*, 492.

17. See the statement of the case for evidence *held* sufficient to support a conviction for murder of the first degree, *Rodriguez v. State*, 503.

18. See the statement of the case for evidence *held* sufficient to support a conviction for receiving stolen property knowing it to be stolen. *Tucker v. State*, 512.

19. Evidence insufficient to support a conviction for carrying a pistol. *Sanderson v. State*, 520.

20. See the statement of this case for a chain of purely circumstantial

FACT CASES—*continued.*

evidence *held* sufficient to establish each and every material issue in a trial for murder—except that of express malice, of which there was direct testimony. *Scott v. State,* 521.

21. See the statement of the case for evidence in a habeas corpus proceeding for bail under an indictment for murder *held* insufficient to authorize the refusal of bail. *Ex parte Hay,* 585.

22. Evidence insufficient to support a conviction for receiving stolen property. *Estes v. State,* 600.

23. See the statement of the case for evidence *held* insufficient to support a conviction for cattle theft, because insufficient to establish a fraudulent intent in the taking. *White v. State,* 643.

24. See the statement of the case for evidence adduced in a proceeding by habeas corpus for bail under a charge of murder, *held* insufficient to authorize a refusal of bail. *Ex parte McDowell,* 679.

25. See the statement of the case for evidence *held* insufficient to support a conviction for assault with intent to murder. *Garcia v. State,* 712.

FALSE IMPRISONMENT.

The accused, upon his trial for the false imprisonment of one Broxton, requested the trial court to charge the jury in substance that, if one Blake was drunk on the street and disturbing the peace, it was the duty of the appellant, who was the city marshal, to arrest the said Blake without warrant, and to confine him in the calaboose, and that Broxton had no right to force or compel defendant to release said Blake on bond, while drunk; and that if, while defendant and his deputies were conveying Blake to jail, Broxton attempted to release Blake by force, then defendant had the right to arrest said Broxton and confine him in jail. *Held,* that responding to the evidence on the trial, the requested charge was a part of the law, and should have been given. *Moseley v. State,* 409.

FALSE SWEARING.

1. County clerks, by virtue of the general power conferred on them by Article 1149 of the Revised Statutes, "to administer all oaths and take depositions," have authority to take affidavits of the consent of parents to the marriage of their daughter, and such an affidavit, if false, may be assigned as "false swearing," though not as perjury. (Davidson v. The State, 22 Texas Ct. App., 376, on this subject, cited and approved.) *Steber v. State,* 176

2. Appellant was tried for falsely making oath that the mother of the intended bride was willing for her to marry her affianced husband. It was in proof that the bride's mother had been dead some two years when the oath was made and the license obtained, and that since her death the bride had lived in the family and at the home of one G., who stood to her *in loco parentis.* The trial court permitted the State to prove by said G. that he did not give his consent to the marriage. *Held* that this testimony was inadmissible because wholly irrelevant to the issue, and tended to prejudice the rights of the defendant. *Id.*

FALSE SWEARING—*continued.*

3. Article 196 of the Penal Code, in defining the offense of "false swearing," requires that it be done "deliberately and willfully." The trial court properly instructed the jury as to the legal signification of "deliberately" but omitted to define the legal meaning of "willfully." *Held*, in view of the facts in proof, that this omission was reversible error. *Id.*

FORCE.
*See* ASSAULT TO RAPE.

FOREIGN JUDGMENT.
*See* JUDGMENT, 2, 4.

FORMER ACQUITTAL.
*See* VERDICT, 5.

FORGERY.

1. Mere misplacement of the dot belonging to the letter "i" in setting out a proper name, plainly written, in an indictment for forgery, does not constitute a variance. See the opinion of the court in illustration. *Hennessy v. State*, 340.

2. Indictment for forgery alleged that the account in question was approved by "H. Knittel, chairman on the committee on contingent expenses of the senate." The instrument was signed "H. Knittel, chairman on Com. Contg. Exp." *Held*, that the discrepancy was not a variance, and it was a question of fact whether the signature was an approval of the account, as was alleged by the indictment. *Id.*

3. An indictment for forgery need not, in setting out the forged instrument, take any notice of writing put upon the instrument subsequent to the forgery. Such writing is no part of the instrument, nor of its description. *Id.*

4. In a trial for forgery by alteration of an account against the State for postage stamps, etc., the prosecution was permitted, over objection, to put in evidence certain post office receipts for disbursements made by the defendant for stamps, etc., about the time of the alleged forgery, and was also permitted to adduce evidence that the amounts of said receipts had been altered. The jury were instructed that they could not consider this evidence as any proof that the alleged alteration was made by the defendant, but only with reference to his intent, if in fact the alteration was made by him. *Held*, that the post office receipts were properly admitted as evidence on the question of intent, and for the purpose expounded to the jury. *Id.*

5. The prosecution was further allowed to adduce evidence tending to prove that the defendant had not purchased and distributed the quantity of postage stamps, etc., charged in his accounts against the State. *Held*, competent evidence of a fraudulent intent and a systematic falsification of a number of accounts which comprised the one involved in the charge of forgery on trial. *Id.*

Index.

FORGERY—*continued*.

6. Note evidence *held* amply to sustain a conviction for the forgery of an account against the State by altering and augmenting the amount for which the account had been approved. *Id.*

7. It is not essential that an indictment for forgery shall set out the forged instrument both by its purport and its tenor; nor is it necessary that it shall set out the name of the person intended to be defrauded, the allegation of the intent to defraud being sufficient. If, however, the indictment sets out the alleged forged instrument both by its purport and its tenor, any repugnancy between the two allegations is fatal to the indictment. The "purport" clause in the indictment in this case alleges the name of the injured party to be "C. J. Chapman," whereas the "tenor" clause alleges the name to be "C. J. Chatman." *Held*, that the obvious repugnancy between the two is fatal to the indictment. *Westbrook v. State,* 401.

8. See the opinion *in extenso* for the substance of an indictment for forgery, and for the contents of the alleged forged instrument, between which two documents there is held to be no variance, wherefore the forged instrument was properly admitted as evidence. *Mee v State,* 566.

9. An indictment which charges in separate counts the forgery of a written instrument and the uttering of a forged instrument, knowing it to be forged, is not vulnerable to a motion to quash upon the ground that it is duplicitous and charges two offenses; nor is it obnoxious to the objection that two distinct and separate offenses are charged in the same indictment. *Chester v. State,* 577.

10. It is correct pleading to insert in an indictment as many counts as will be necessary to provide for every possible contingency in the evidence. *Id.*

11. Variance and repugnancy between the dates of the instrument, as alleged in the two counts, become immaterial in view of the *nolle prosequi* entered by the State as to the second count, and the subsequent proceedings upon the trial, which were conducted alone upon the first count. *Id.*

FRAUDULENT DISPOSITION OF MORTGAGED PROPERTY.

1. The indictment in this case charged the appellant with the fraudulent disposition of "four bales of cotton" upon which he had previously executed and delivered a valid mortgage in writing, etc., and was sufficient to charge the offense of fraudulently disposing of mortgaged personal property. The mortgage, however, as it described the property mortgaged as a "*crop* of cotton to be raised by" defendant "during the year 1886," was inadmissible in support of the indictment. *Honeycut v. State,* 71.

2. Under the Act of the Nineteenth Legislature (General Laws, p. 85), a growing crop may be mortgaged, and a fraudulent disposition of the same when mortgaged is an offense against the laws of this State. See the opinion *in extenso* for a form of indictment for fraudulently disposing of a growing crop of cotton when mortgaged. *Id.*

3. Indictment conforming to number 519 of Willson's Criminal Forms,

FRAUDULENT DISPOSITION MORTGAGED PROPERTY—*continued.*
sufficiently charges the offense of fraudulently disposing of mortgaged property. *Glass v. State*, 425.

4. The indictment not purporting to set out the mortgage in *hæc verba*, or by its tenor, admits the latter in evidence, if the description of the mortgaged property, though not so full and minute as that contained in the mortgage, is sufficient to identify the property. *Id.*

5. Evidence that, in the exchange of the mortgaged property, the accused stipulated the title should not pass to and vest in the vendee until he, the accused, should satisfy the mortgagee's claim against the same raised the issue of fraudulent intent essential to constitute the offense; wherefore, in failing to submit that issue in the charge to the jury, the trial court erred. *Id.*

## G.

GAMING.

1. Faro is one of the games specifically denounced by the statute defining gaming. Indictment, therefore, which charged that the accused did "unlawfully bet and wager at a certain faro bank" sufficiently charged the offense of betting at a gaming table or bank. *Short v. State*, 312.

2. It is a rule of criminal pleading that "if there be exceptions contained in the same clause of an act which creates the offense, the indictment must show negatively that the defendant, or the subject of the indictment, does not come within the exception." The statute under which this prosecution was had denounces the playing of certain games with dice or dominoes, but excepts such games when played at a private residence. Failing to negative the exception, the indictment in this case is bad. *Colchell v. State*, 584.

## H.

HABEAS CORPUS.
*See* LOCAL OPTION LAW, 1–7.

1. A mistrial because of disagreement of the jury as to a verdict in a trial for a capital offense does not establish *per se* that the proof is not evident, and that the accused is entitled to bail. But see the statement of the case for evidence in a habeas corpus proceeding for bail, under an indictment for murder, *held* not to authorize the refusal of bail. *Ex parte England*, 90.

2. In a habeas corpus proceeding for bail after the presentment of an indictment for a capital offense, it is incumbent on the applicant to show that he is entitled to bail. In his application for the writ of habeas corpus he must allege under oath that he "is illegally restrained in his liberty," and, as this allegation is an affirmative one, and the applicant the actor or plaintiff, the burden is upon him to maintain it in the proof. He can not rest his right to bail upon the presumption of innocence, inasmuch as the issue of which he has assumed the affirmative is determinable by the proof alone, regardless of the presumption of innocence. In his trial upon the indictment, of course the presumption

**HABEAS CORPUS—*continued.***

of innocence obtains in favor of the accused, and, the State being then the actor or plaintiff, and holding the affirmative of the issue of guilty or not guilty, the burden of proof on that issue is upon the State. Note the collocation in the opinion of the court of adjudicated cases maintaining this ruling, and the citations from the Bill of Rights and the Code of Procedure impliedly sanctioning it. (Hurt, J., dissents.) *Ex Parte Smith,* 100.

3. In this case the court renounces the ruling in Foster's case, 5 Texas Court of Appeals, 625, to the effect that bail should be refused in a capital case if the judge would sustain a capital conviction found by a jury upon such evidence as that adduced before him. A better test is that announced in McAnally's case, 53 Alabama, 495, viz: "If the evidence is clear and strong, leading a well guarded and dispassionate judgment to the conclusion that the offense has been committed, that the accused is the guilty agent, and that he will probably be punished capitally if the law be administered, bail is not a matter of right." *Id.*

4. From the fact that there is a conflict of evidence in a habeas corpus trial for bail, it does not necessarily follow that the inculpatory evidence fails to make the proof "evident;" for it is not all exculpatory evidence that will destroy or impair that which is inculpatory, or which will raise a reasonable doubt of the guilt of the applicant for bail. The evidence is to be considered in its entirety, and if, when so considered, a reasonable doubt of the applicant's guilt of a capital offense is not engendered, the "proof is evident," and bail should be refused *Id.*

5. The trial court admitted certain inculpatory evidence which this court considers inadmissible because it was *res inter alios acta,* but, instead of reversing the judgment on that account, this court excludes the objectionable evidence from consideration, and upon the legal evidence affirms the judgment refusing bail. *Id.*

6. See the dissenting opinion of Hurt, Judge, controverting the ruling formulated in the first headnote, and maintaining that the general rule favors the right to bail in all cases except capital cases in which the "proof is evident,"—that in cases of this character the State stands on the exception and must establish it,—that the true issue is whether or not the "proof is evident" that the applicant is guilty of a capital offense, and of this issue the State has the affirmative and the burden of proof;—that the indictment, even if its allegations proved anything, can have no bearing upon this issue, inasmuch as it does not allege that the "proof is evident" of the capital offense charged;—that the presumption of innocence avails the accused in this as well as on his trial upon the indictment;—and, therefore, that the applicant is entitled to bail unless the State shows, by evident proof, that he is guilty of the capital offense charged against him. Note the dissenting opinion *in extenso* for an exhaustive discussion of these positions and of those announced in the opinion rendered by a majority of the court. *Id.*

7. See the statement of the case for evidence on which it is *held* that the court below did not err in disallowing bail to an applicant charged by indictment with murder in the first degree. (Hurt, J., dissenting.) *Id.*

HABEAS CORPUS—*continued.*

8. See the statement of the case for evidence in a habeas corpus pro-ceeding for bail under an indictment for murder *held* insufficient to au-thorize the refusal of bail. *Ex parte Hay*, 585.

9. See the statement of the case for evidence adduced in a proceed-ing by habeas corpus for bail under a charge of murder, *held*, insuffi-cient to authorize a refusal of bail. *Ex parte McDowell*, 679.

HEARSAY TESTIMONY.
*See* EVIDENCE, 7, 12, 78.

HUNTING AND FISHING ON THE LANDS OF ANOTHER, ETC.

Information to be sufficient to charge the offense defined by the act of March, 31, 1885, entitled, "an act to prevent fishing and hunting on the enclosed lands of another," must expressly allege, not only want of con-sent of the owner to the entry upon the land, but also the want of the like consent of the "proprietor and the agent in charge." *Holtzgraft v. State*, 404.

IMPEACHING TESTIMONY.
*See* EVIDENCE, 67.

1. It is a well settled rule of practice that a new trial will not be awarded in order to enable the defendant to secure witnesses to impeach a witness who testified on the trial. *Grate v. State*, 458.

2. It is competent for a defendant on trial for murder to impeach the dying declarations of the deceased inculpating him as the slayer, by proving statements made by the deceased, contradictory of his dying declarations; and, in excluding such impeaching proof in this case, the trial court erred. See the opinion on the question. *Felder v. State*, 477.

3. It is competent to impeach the testimony of a witness by showing that it conflicts with his previous testimony before the grand jury. Ruby's case (9 Texas Ct. App., 353) holds otherwise, but on this question was overruled in Clanton's case, 13 Texas Court of Appeals, 139. *Scott v. State*, 521.

INCEST.

New trial was applied for in this case to procure the testimony of the co-defendant of the accused, who was tried and acquitted of the same offense subsequent to his conviction. Under the rule that an un-corroborated accomplice is not entitled to full credit, and that a new trial should not be granted to procure the testimony of a co-defendant subse-quently acquitted, whose evidence standing alone is of a suspicious im-port, and of such doubtful credibility as to render it unlikely that it would change the result of the trial, the new trial in this case was prop-erly refused. *Jones v. State.* 501.

INDICTMENT.

1. The first count in the indictment alleged the ownership of the stolen property to be unknown, and the second count alleged it to be in one S. The proof sustained the second count. *Held*, that a conviction could be had only under the second count, and therefore the trial court should have confined its charge to that count. *Boren v. State*, 28.

2. An indictment in several counts is a collection of several bills against the same defendant, for offenses which on their faces appear distinct, under one caption, and found and indorsed collectively as true by the grand jury. The object is to charge the defendant with distinct offenses, under the idea that the court may, as often as it will, allow them to be tried together, thus averting from both parties the burden of two or more trials; or, in another class of cases, to vary what is meant to be one accusation, so as, at the trial, to avoid an acquittal by an unforeseen lack of harmony between allegation and proof, or a legal doubt as to what form of charge the court will approve. The objection urged to the second count in this indictment is that the Eugene Boren therein charged is not alleged, by the descriptive words, "the said" or their equivalent, to be the same Eugene Boren charged in the first count; and the same objection is applied to the property. *Held*, that the objection is hypercritical. *Id.*

2. Under the practice of this State a general verdict responds sufficiently to an indictment containing two good counts, and is likewise sufficient under an indictment containing one good and one bad count, inasmuch as it will be assignable to the former. See the opinion *in extenso* on the doctrine of repugnancy. *Id.*

3. Indictment may be sufficient to charge burglary with intent to commit theft, without describing the property intended to be stolen *Neiderluck v. State*, 38.

4. The indictment in this case charged the appellant with the fraudulent disposition of "four bales of cotton" upon which he had previously executed and delivered a valid mortgage in writing, etc., and was sufficient to charge the offense of fraudulently disposing of mortgaged personal property. The mortgage, however, as it described the property mortgaged as a "*crop* of cotton to be raised by" defendant "during the year 1886," was inadmissible in support of the indictment. *Honeycut v. State*, 71.

5. Under the Act of the Nineteenth Legislature (General Laws, p. 85), a growing crop may be mortgaged, and a fraudulent disposition of the same when mortgaged is an offence against the laws of this State. See the opinion *in extenso* for a form of indictment for fraudulently disposing of a growing crop of cotton when mortgaged. *Id.*

6. By an unbroken line of decisions in the Supreme as well as this court it has been as it is now *held*, that a conviction for aggravated assault may be had under an indictment for assault with intent to murder, notwithstanding no circumstance of aggravation be alleged in the indictment. (Hurt, J., dissents.) *Bolding v. State*, 172.

7. If the pleader concludes the indictment with the phrase "against the peace and dignity of the State," no words following that phrase and

INDICTMENT—*continued.*

not forming part of it can vitiate the indictment. See the opinion in this case in illustration, and note the comment upon Haun's case, 13 Texas Court of Appeals, 383. *Rowlett v. State*, 191.

8. Objection to an indictment is primarily made in this court on the ground that the record shows that the indictment was not presented in open court by the grand jury. The objection is based upon the fact that the clerk of the court below, in noting upon the minutes the presentment of the indictment, misnamed the offense charged in it. *Held* that if the objection could ever have been maintained, it could only have been made available by exception to the indictment in the trial court before the plea of not guilty was entered, and comes too late when first raised in this court. But even upon its merits the objection is futile, inasmuch as there was no occasion to name the offense in the minutes of the trial court, and the clerk's unnecessary and erroneous attempt to do so can not vitiate the indictment. *Id.*

9. Indictment for assault with intent to murder charged that the accused "did then and there make an assault upon Frank Stoker, with the intent to murder him, the said Frank Stoker." This was excepted to on the ground that it charges a conclusion of law, and not the facts constituting the offense. *Held*, by a majority of the court, that the indictment was sufficient, and the exception properly overruled. Note the animadversion of Hurt, J., upon the ruling, and upon the precedents and reasoning on which it is maintained. *Gordon v. State*, 219.

10. The offense defined by Article 813 of the Penal Code is the "*knowingly* sending or delivering of a threatening letter," etc.; and the appellant in this case was prosecuted under that article. *Held*, that, the information charging that appellant knowingly did threaten to "take the life of Arizona C. Benton, by sending her a threatening letter," etc., it does not charge the offense defined by the statute under which the prosecution was had; wherefore the conviction can not stand. It is not knowingly threatening, but knowingly sending or delivering a threatening letter, which constitutes the offense defined in said Article. *Castles v. State*, 281.

11. Indictment is sufficient to charge the offense of murder if it alleges the name of the person killed, although it omits to charge that the deceased was a "reasonable creature in being." Whether or not the deceased was a "reasonable creature in being" is a matter of proof, and not of pleading. That the alleged name of the deceased (*e. g.*, "Smutty My Darling,") is an unprecedented one is immaterial. *Wade v. State*, 308.

12. Faro is one of the games specifically denounced by the statute defining gaming. Indictment, therefore, which charged that the accused did "unlawfully bet and wager at a certain faro bank" sufficiently charged the offense of betting at a gaming table or bank. *Short v. State*, 312.

13. In order to constitute a rape of the first class, that is, rape of "a woman," it is essential that the offense was committed by the means of "force, threats, or fraud, and without the consent" of the woman. It is not necessary in such case to allege or prove that the woman raped was

INDICTMENT—*continued*.

over the age of ten years, and if such an allegation be contained in the indictment, it need not be proved, inasmuch as the offense would be complete without the words "over the age of ten years." *Nicholas v. State*, 317.

14. "Duplicity in an indictment is the joinder of two or more distinct offenses in a single count"—a pleading tolerated in criminal practice only in rare exceptional cases. Whether or not offenses are to be treated as distinct depends upon whether or not they are embraced within the same general definition, and punishable in the same manner. If they are, then they are not distinct offenses, and may be charged in a single count in the same indictment. *Id*.

15. Although in this State the general definition of rape covers both classes of the offense, and although the punishment is the same in each class (Penal Code, art. 524), yet the two classes are essentially distinct in their constituent elements. *Quære*, can the two classes of rape as defined by our statute be joined, as in this case, in a single count? But note that the defendant failed at the proper time to move to quash the indictment, and, in any event, under the general rule that, if duplicitous, an indictment will not be quashed on that ground after verdict, the defendant can not now be heard to complain. *Id*.

16. If the indictment charges that the carnal knowledge was obtained by means of force, threats, or fraud, it charges a rape, whether perpetrated upon a female under or over the age of ten years, and if the indictment also contains an averment of non-age, the same may be treated as surplusage and eliminated. In this case the proof showed the female alleged to have been raped to be over the age of ten years, and the defendant requested the trial court to charge the jury, in substance, that, the indictment charging the non-age of the prosecutrix at the time of the offense, the defendant was entitled to an acquittal if the jury believed from the evidence that she was then over ten years old. The trial judge refused the special charge "because the indictment alleges that the offense was committed by means of 'force and threats' on the part of defendant, and the allegation of age of the prosecutrix or injured female is not of that descriptive character which requires corresponding proof, the State having proved force and threats." *Held*, that the ruling was correct, and the special charge was properly refused. *Id*.

17. See the statement of the case for a count of an indictment *held* sufficient to charge an unlawful assembly. *McGehee v. State*, 330.

18. Mere misplacement of the dot belonging to the letter "i" in setting out a proper name, plainly written in an indictment for forgery, does not constitute a variance. *Hennessy v. State*, 340.

19. Indictment for forgery alleged that the account in question was approved by "H. Knittel, chairman on the committee on contingent expenses of the senate;" the instrument was signed "H. Knittel, chairman on Com. Contg. Exp." *Held*, that the discrepancy was not a variance, and it was a question of fact whether the signature was an approval of the account, as was alleged by the indictment. *Id*.

20. An indictment for forgery need not, in setting out the forged in-

INDICTMENT—*continued.*
      strument, take any notice of writing put upon the instrument subsequent
      to the forgery.  Such writing is no part of the instrument, nor of its de-
      scription.  *Id.*.
         21.  Indictment charged in one count that the accused played at a
      game with cards "at a house for retailing spirituous liquors," and
      in another count alleged the place as "a certain room attached to a
      house for retailing spirituous liquors."  The proof is that the game was
      played in a room over a store-room in which spirituous liquors were
      "sold," and that there was no immediate connection between the "saloon
      where liquors were sold and the upper room" where the cards were
      played.  *Held* that the offense was well charged in each count of the
      indictment, but the proof fails to support the conviction because it fails
      to prove that liquors were *retailed* anywhere.  A *sale* does not import a
      *retailing*, nor does the word "saloon" designate a house for retailing
      spirituous liquors.  *Early v. State*, 364.
         22.  If an indictment for perjury shows by its allegations that the per-
      jury was committed in a judicial proceeding in a court of competent
      jurisdiction, and describes the judicial proceeding with reasonable cer-
      tainty, it need only allege in general terms that a certain issue was
      joined in said proceeding, and need not specifically allege what the issue
      was.  *Covey v. State*, 388.
         23.  Though the testimony taken at an examining trial should be
      reduced to writing as directed by the Code of Procedure, yet perjury
      may be assigned upon oral testimony taken but not reduced to writing
      in such trial.  *Id.*
         24.  It is not essential that an indictment for forgery shall set out the
      forged instrument both by its purport and its tenor; nor is it necessary
      that it shall set out the name of the person intended to be defrauded,
      the allegation of the intent to defraud being sufficient.  If, however, the
      indictment sets out the alleged forged instrument, both by its purport
      and its tenor, any repugnancy between the two allegations is fatal to the
      indictment.  The "purport" clause in the indictment in this case alleges
      the name of the injured party to be "C. J. Chapman," whereas the
      "tenor" clause alleges the name to be "C. J. Chatman."  *Held*, that the
      repugnancy is fatal.  *Westbrook v. State*, 401.
         25.  "Striking and beating with a pistol in a manner calculated to in-
      flict serious bodily pain and injury" does not *per se* constitute an aggra-
      vated assault.  If, as used, the pistol was a deadly weapon, or if the
      assault was made with premeditated design, the assault would be an ag-
      gravated one; but, in the absence of both these allegations, the indict-
      ment charges a simple assault only.  *Miles v. State*, 410.
         26.  Proof of the alleged venue of the offense is indispensable, not-
      withstanding the judge and jury may personally know the *locus in quo*
      to be within the jurisdiction of the trial court.  *Id.*
         27.  Though the venue of the offense was laid in Scurry county, the
      trial court instructed the jury that the venue was sufficiently proved if
      the *locus in quo* was shown to be in either Kent county or Garza county,
      which were unorganized counties attached to Scurry county for judicial

INDICTMENT—*continued.*

purposes. *Held,* error. Such proof would not sustain the allegation of venue made in the indictment; and if the offense was committed in one of said attached counties, the indictment should have so alleged. *Id.*

28. Indictment conforming to No. 519 of Willson's Criminal Forms, sufficiently charges the offense of fraudulently disposing of mortgaged property. *Glass v. State,* 425.

29. The indictment, not purporting to set out the mortgage in *hæc verba,* or by its tenor, admits the latter in evidence, if the description of the mortgaged property, though not so full and minute as that contained in the mortgage, is sufficient to identify the property. See this case in illustration. *Id.*

30. Matters of form in an indictment or information are amendable before both parties announce ready for trial upon the merits, but not thereafter. Allegations as to the court and term at which the indictment was presented are matters of form, and amendable, subject to the above limitations. *Osborne v. State,* 431.

31. Over objection by the defense, the trial court permitted the State to substitute, by amendment, the words "fourth Monday" in place of "first Monday," where the indictment designated the commencement of the term at which the indictment was presented. Prior to the allowance of the amendment, both the State and the defense had announced ready for trial on the merits, but the defendant had not been arraigned, nor had he pleaded to the indictment. *Held,* that the allowance of the amendment, after such announcement by both parties, though before arraignment or plea, was erroneous, because in contravention of Article 550 of the Code of Criminal Procedure; but, as the defect was in a matter of mere form, and as no exception therefor was taken to the indictment, the error was cured by the verdict, and is not cause for reversal. *Id.*

32. Indictment for swindling is insufficient if it fails to allege that the injured party was induced to part with the ownership of the property acquired by the defendant, by means of the false pretenses, etc., alleged in the indictment. *Hightower v. State,* 451.

33. The value of the property privately stolen from the person of another is not a constituent of that offense as defined in Articles 744 and 745 of the Penal Code, nor does it in any wise affect the punishment prescribed for it. Wherefore, in prosecutions for that offense, the value of the stolen property need neither be alleged in the indictment nor established by the proof. See the opinion for an elucidation of this ruling, and for an exposition of the distinctions in these respects between ordinary theft and theft from the person. *Shaw v. State,* 493.

34. See the opinion *in extenso* for the substance of an indictment for forgery, and for the contents of the alleged forged instrument, between which two documents there is held to be no variance, wherefore the forged instrument was properly admitted as evidence. *Mee v. State,* 566.

35. An indictment which charges in separate counts the forgery of a written instrument and the uttering of a forged instrument, knowing it to be forged, is not vulnerable to a motion to quash upon the ground

INDICTMENT—*continued.*

that it is duplicitous and charges two offenses; nor is it obnoxious to the objection that two distinct and separate offenses are charged in the same indictment. *Chester v. State,* 577.

36. It is correct pleading to insert in an indictment as many counts as will be necessary to provide for every possible contingency in the evidence. *Id.*

37. Variance and repugnancy between the dates of the instrument, as alleged in the two counts, become immaterial in view of the nolle prosequi entered by the State as to the second count, and the subsequent proceedings upon the trial, which were conducted alone upon the first count. *Id.*

38. It is a rule of criminal pleading that "if there be exceptions contained in the same clause of an act which creates the offense, the indictment must show negatively that the defendant, or the subject of the indictment, does not come within the exception." The statute under which the prosecution was had denounces the playing of certain games with dice or dominoes, but excepts such games when played at a private residence. Failing to negative the exception, the indictment in this case is bad. *Colchell v. State,* 584.

39. Indictment conforming substantially to No. 25 of Willson's Criminal Forms is sufficient to charge against a county officer the offense of misapplying the public money, as that offense is defined by Article 103 of the Penal Code. *Crump v. State,* 615.

40. Indictment, to properly charge theft of property belonging to more than one owner, must negative the consent of either to the taking. *Williams v. State,* 619.

41. When a statute makes it an offense to do one *or* another of several things, the several things may be charged together, but this must be done conjunctively, using *and* instead of the word *or* used in the statute. If the word *or* be used in such case, it renders the indictment uncertain. The indictment in this case charging that the pistol was carried "on *or* about the person," etc., is substantially defective. *Davis v. State,* 637.

42. Indictment for burglary need not allege the non consent of the owner or occupant to the entry of the house. *Taylor v. State,* 639.

43. But to be sufficient, an indictment for burglary must allege the elements of the felony or theft intended to be committed, with the same particularity that is required in charging directly the intended offense. Indictment, to charge theft, and, therefore, to charge burglary to commit theft, of property belonging to two or more owners, must, to be sufficient, negative the consent of each of the owners, and not merely their conjoint consent, unless a separate possession and ownership of the property in two or more persons is to be charged, as was the case in Smith v. The State, 21 Texas Court of Appeals, 96. The indictment in this case charged that the intent was to take the property of B. and H., without *their* consent, and was bad. *Id.*

44. Indictment for theft is sufficient as to the allegation of ownership if it alleges that the property stolen belongs to some person unknown to the grand jurors. *McVey v. State,* 659.

## INFORMATION.

*See* AFFIDAVIT, 1.

1. Information, to be sufficient to charge the offense defined by the act of March 31, 1885, entitled, "an act to prevent fishing and hunting on the enclosed lands of another," must expressly allege, not only want of consent of the owner to the entry upon the land, but also the want of the like consent of the "proprietor and the agent in charge." *Holtzgraft v. State*, 404.

2. Information in this case, charging malicious injury to a private store house, was formulated under Article 683 of the Penal Code, which article relates only to the destruction of or injury to "growing fruit, corn, grain, or other agricultural product or property, real or personal." The information, therefore, charges no offense against the laws of the State, and will not support this conviction. *Beeson v. State*, 406.

3. The complaint charges McDevro, the information McDero. *Held,* that the variance is fatal. *McDevro v State*, 429..

## INTENT.

1. In order to sustain a prosecution for theft when the taking was originally lawful (Penal Code, art. 727), the proof must show either that the taker obtained the lawful possession of the property by some false pretext, which induced or deceived the owner to surrender the possession of the property to him; or that, at the time he obtained the possession of the property with the consent of the owner, he intended to deprive the owner of the value of the same, and to appropriate it to his own use. *Porter v. State*, 295.

2. In a trial for forgery by alteration of an account against the State for postage stamps, etc., the prosecution was permitted, over objection, to put in evidence certain postoffice receipts for disbursements made by the defendant for stamps, etc., about the time of the alleged forgery, and was also permitted to adduce evidence that the amounts of said receipts had been altered. The jury were instructed that they could not consider this evidence as any proof that the alleged alteration was made by the defendant, but only with reference to his intent, if in fact the alteration was made by him. *Held*, that the postoffice receipts were properly admitted as evidence on the question of intent, and for the purpose expounded to the jury. *Hennessy v State*, 340.

3. The prosecution was further allowed to adduce evidence tending to prove that the defendant had not purchased and distributed the quantity of postage stamps, etc., charged in his accounts against the State. *Held*, competent evidence of a fraudulent intent and a systematic falsification of a number of accounts which comprised the one involved in the charge of forgery on trial. *Id.*

4. Under the Penal Code of this State the willful burning of any "house" is arson, and a house is any building, edifice or structure enclosed with walls and covered, whatever the materials used for building. Though the house be neither destroyed nor seriously injured, the "burning" is complete when the fire has communicated to it, and, if the burning was designed, it is immaterial by what means the fire was communi-

49 — TEX. APP. XXIII.

INTENT—*continued*.

cated.   Appellant, while confined in the wooden prison of a county poor farm, set fire to the roof of the prison, burning a hole therein.   Being tried for arson, there was no evidence tending to disclose with what intent he set fire to the building.   To the charge given by the trial court to the jury the defense objected, in substance, because it did not instruct for an acquittal if the appellant's intent was to effect an escape, and not to consume or injure the building.   *Held*, on a review of both elementary and adjudicated authority, that the exception to the charge was not well taken.   Delaney's case, 41 Texas, 601, is overruled on this point.   *Smith v. State*, 357.

5.   Evidence that, in the exchange of the mortgaged property, the accused stipulated the title should not pass to and vest in the vendee until he, the accused, should satisfy the mortgagee's claim against the same raised the issue of fraudulent intent essential to constitute the offense; wherefore, in failing to submit that issue in the charge to the jury, the trial court erred.   *Gláss v. State*, 435.

6.   Article 45 of the Penal Code provides that "if a person laboring under a mistake as to a particular fact shall do an act which would otherwise be criminal, he is guilty of no offense."   See the statement of the case for evidence which, under this rule, is *held* insufficient to support a conviction for misdemeanor theft.   *Donahue v. State*, 457.

7.   In a trial for privately stealing a gold ring from the finger of a lady the defense claimed that the taking was an innocent mistake of the defendant, who mistook the said lady for another one upon whom he designed to perpetrate a joke.   See the statement of the case and the opinion of the court for evidence *held* to refute this defense and to sustain the conviction.   *Shaw v. State*, 493.

INTERPRETATION OF THE CODES.

*See* CONSTITUTIONAL LAW, 12.

1.   Article 608 of the Penal Code of this State reads as follows:  "Where a defendant seeks to justify himself on the ground of threats against his own life, he may be permitted to introduce proof of the threats made, but the same shall not be regarded as affording a justification for the offense, unless it be shown that, at the time of the homicide, the person killed, by some act then done, manifested an intention to execute the threats so made."   *Held*, that the effect of the said article is not to control the admissibility of previous threats as evidence in homicide cases, but only to control the effect of such evidence when the threats are relied upon to justify the homicide.   Previous threats, therefore, are *per se* admissible as independent evidence in homicide cases, and may be proved without a predicate.   See the opinion *in extenso* for a discussion of the question, and for evidence *held* to have been erroneously excluded.   *Howard v. State*, 265.

2.   The county court of Burnet county was one of the county courts which, by the Act of the Seventeenth Legislature (Reg. Sess, 1881, chap. 19, pp. 12 and 13), entitled "An Act to diminish the civil and crimina jurisdiction of county courts," was deprived of jurisdiction of all mat

INTERPRETATION OF THE CODES—*continued.*

ters and causes, civil and criminal, over which it theretofore had juris-
diction under the general laws of the State, except as to matters of
probate, etc.   Section 5 of the Act of March 24, 1885 (Gen. Laws 19th
Leg., Reg. Sess., chap. 49, pp. 47 and 48), entitled "An Act to restore and
confer upon the county courts of   *   *   *   counties [including Burnet
county] the civil and criminal jurisdiction heretofore belonging to said
courts under the Constitution and General Laws of the State," etc., reads
as follows: "Said county courts shall have exclusive original jurisdiction
of all misdemeanors except misdemeanors involving official misconduct,
and except cases in which the highest penalty of fine that may be im-
posed under the law may not exceed two hundred dollars; and said court
shall also have appellate jurisdiction in criminal cases in which justices
of the peace and other inferior tribunals in said county have original
jurisdiction." *Held*, that the effect of the said Act of March 24, 1885, was
to reinvest the county court of Burnet county with the criminal jurisdic-
tion of which it was deprived by the said Act of the Seventeenth Legis-
lature. See the opinion *in extenso* on the question. *Galloway v. State*,
398.

## J.

JEOPARDY.

*See* VERDICT, 5.

The failure of the jury to pass upon the pleas of jeopardy and former
acquittal, in the absence of any supporting proof, can not operate to the
prejudice of an accused, and, therefore, becomes immaterial. *Robinson
v. State*, 315.

JOINDER OF OFFENSES.

*See* INDICTMENT, 14.

An indictment in several counts is a collection of several bills against
the same defendant, for offenses which on their faces appear dis-
tinct, under one caption, and found and indorsed collectively as true by
the grand jury.   The object is to charge the defendant with distinct
offenses, under the idea that the court may, as often as it will, allow
them to be tried together, thus averting from both parties the burden of
two or more trials; or, in another class of cases, to vary what is meant to
be one accusation, so as, at the trial, to avoid an acquittal by an unfore-
seen lack of harmony between allegation and proof, or a legal doubt as
to what form of charge the court will approve.   The objection urged to
the second count in this indictment is that the Eugene Boren therein
charged is not alleged, by the descriptive words "the said" or their
equivalent, to be the same Eugene Boren charged in the first count; and
the same objection is applied to the property.   *Held*, that the objection
is hypercritical. *Boren v. State*, 28.

JUDGMENT.

1. As shown by the verdict in this case, the jury assessed the punish-
ment of the appellant at a fine of ten dollars.   The recital in the judg-
ment that the fine assessed was five dollars being evidently a clerical

JUDGMENT—*continued.*

mistake, this court reforms the judgment to conform to the verdict of the jury. *Short v. State*, 312.

2. The Penal Code of Texas defines "felony" to be "every offense which is punishable with death, or by imprisonment in the penitentiary, either absolutely or as an alternative," and provides that all forgeries are punishable by confinement in the penitentiary; wherefore, all forgeries in this State are felonies, and, as such, under the Constitution of this State, can only be prosecuted by indictment. The Code of Procedure (Art. 730) disqualifies as witnesses "all persons who have been or may be convicted of felony in this State, *or in any other jurisdiction*," unless pardoned, etc. Relying upon this latter provision, the defense in this case, for the purpose of disqualifying a State's witness, offered a certified copy of a judgment of a circuit court of the State of Kansas which showed that, upon an information, a man bearing the same name as the witness had been convicted of forgery in the second degree, and therefore had been sentenced to a term in the penitentiary. The State objected to the judgment because it neither showed that forgery was a felony in Kansas, nor that the witness had been convicted of a felony. The trial court sustained these objections to the judgment. *Held* that the defense, in order to make the judgment available for the purpose of disqualifying the State's witness, should have proved by the law of Kansas that forgery was a felony in that State, and that such a felony can be there prosecuted upon an information; and, as no such proof was adduced, the said judgment could not disqualify the witness in any court of this State, wherefore the trial court committed no reversible error in sustaining the said objections. *Pitner v. State*, 366.

3. The judgment offered to disqualify the State's witness showed upon its face that it was rendered upon an information, and not upon an indictment, and that he had been convicted in Kansas of forgery in the second degree; wherefore the prosecution contends that the said offense must either be a misdemeanor in Kansas, or, if a felony, the judgment of conviction was void because the Constitution of the United States provides that "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury." But *held* that this provision of the United States Constitution is a limitation only upon the the powers of the Federal Government, and does not impair the powers of the States. Therefore it is competent for Kansas or any other State to authorize the prosecution of felonies by information; but, to warrant the use in the courts of Texas of a judgment of conviction rendered on an information in another State for an offense which is felony in this State, it must be proved by the law of the other State that such judgment was valid under its organic and statutory law. *Id.*

4. Article 730 of the Code of Procedure disables as witnesses "all persons who have been or may be convicted of felony in this State or in *any other jurisdiction*," unless, etc. *Held* that the expression "other jurisdiction" is not to be limited to the tribunals of the United States exercising their jurisdiction in Texas, for such a construction would be a

JUDGMENT—*continued.*
narrow and strained interpretation of the language used, and would not fully accomplish the legislative intent. See the opinion for a clear exposition of this and the antecedent rulings. *Id.*

JURISDICTION.
The county court of Burnet county was one of the county courts which, by the Act of the Seventeenth Legislature (Reg. Sess., 1881, chap. 19, pp. 12 and 13), entitled "An act to diminish the civil and criminal jurisdiction of county courts," was deprived of jurisdiction of all matters and causes, civil and criminal, over which it theretofore had jurisdiction under the general laws of the State, except as to matters of probate, etc. Section 5 of the act of March 24, 1885 (Gen. Laws 19th Leg., Reg. Sess., chap. 49, pp. 47 and 48), entitled "An act to restore and confer upon the county courts of * * * counties [including Burnet county] the civil and criminal jurisdiction heretofore belonging to said courts under the Constitution and General Laws of the State," etc., reads as follows: "Said county courts shall have exclusive original jurisdiction of all misdemeanors except misdemeanors involving official misconduct, and except cases in which the highest penalty of fine that may be imposed under the law may not exceed two hundred dollars; and said court shall also have appellate jurisdiction in criminal cases in which justices of the peace and other inferior tribunals in said county have original jurisdiction." *Held,* that the effect of the said act of March 24, 1885, was to reinvest the county court of Burnet county with the criminal jurisdiction of which it w s deprived by the said Act of the Seventeenth Legislature. *Galloway v. State,* 398.

JURY LAW.
1. A juror who tried the case qualified himself on his *voir dire* by declaring himself a freeholder in the State. It transpired after the trial that he was neither a freeholder in the State nor a householder in the county. Applying for a new trial, the appellant and his counsel made affidavit that they did not know of the disqualification of the juror until after the return of the verdict. *Held,* that the new trial should have been awarded, notwithstanding appellant and his counsel had intimately known the juror for years. *Boren v. State,* 28.
2. In the return of a sheriff upon a special venire, he set down in a column the names of twelve of the veniremen, and opposite the first name wrote "not found after diligent search." Under this and opposite each of the other names he put ditto marks, to indicate the same return as to them. The defense moved to quash the writ because the return did not, as required by the Code of Procedure, Article 614, state the diligence used to summon the said veniremen and the cause of the failure to do so. The trial court permitted the sheriff to amend his return so as to show that each of said twelve veniremen had moved out of the county or was absent from it. The defense excepted to the overruling of the motion to quash, and also to the amendment of the return, and to the sufficiency of the return as amended. *Held,* that the amendment was properly allowed, and none of the objections are tenable. *Powers v. State,* 42.

JURY LAW—*continued.*

3. An exception reserved to the overruling of a challenge for cause is of no avail when it does not appear that the party had exhausted his peremptory challenges, and consequently that an objectionable juror was forced upon him. *Id.*

4. While the jury in a capital case was being organized, and during a temporary absence of the defendant from the court room, a talesman was examined as to his qualifications and was peremptorily challenged by the State. The attention of the court being called to the absence of the defendant, further proceedings were stayed and the sheriff was sent to bring back the challenged talesman. After waiting an hour without avail, the court, over defendant's objection, proceeded with the examination of the remaining talesmen. *Held,* that there was no material error in the action of the court, in as much as there is nothing to indicate that it either did prejudice, or could have prejudiced, any right of the defendant. *Id.*

4. A citizen house holder and voter of an unorganized county is a competent juror to serve on juries impaneled in the organized county to which the unorganized county of his residence was attached for judicial purposes. *Groom v. State,* 82.

5. On the *voir dire* of a juror he said he had heard a person in whom he had confidence make a statement of the case, based not upon his own knowledge but on hearsay, and thereupon he, the juror, had formed a conclusion provided the statement was true, but had formed no conclusion as to whether or not it was true. *Held,* not a disqualifying conclusion. *Bolding v. State,* 172.

6. The mere fact that the trial court erroneously overruled a good challenge for cause to an unqualified juror, and thereby necessitated the defense to expend a peremptory challenge on him, is not reversible error where it does not appear that any objectionable juror was forced upon the defendant. *Id.*

7. In organizing a jury in a capital case, the name of one C., which was the eighth on the copy of the venire served on the defendant, was reached and called, when the sheriff informed the court that C. had not been summoned; whereupon the court, over objection by the defense, proceeded to complete the panel out of the remaining veniremen. The defense waived nothing and reserved exceptions. *Held,* that the action of the court was without authority of law, and in derogation of valuable rights guaranteed to the defendant by Articles 617 and 640 of the Code of Criminal Procedure. The court should either have suspended the proceedings until the said C. should be brought in, or a new *venire facias* in lieu of the first one should have been issued, and the organization of the jury accomplished *de novo. Osborne v. State,* 431.

JUSTICE OF THE PEACE.
    *See* MISAPPLICATION OF PUBLIC MONEY.

# L

LOCAL OPTION LAW.

1. The local option law is an enactment which comes within the scope of the police powers of this State and does not take, damage nor destroy private property for public use within the meaning of section 1 of the Bill of Rights, and does not infringe upon any other provision of constitutional law. (See Ex parte Lynn, 19 Texas Ct. App., 293.) *Ex parte Kennedy*, 77.

2. Article 3230 of the Revised Statutes, requiring the county clerk to post copies of the order of election at least twenty days before an election under the local option law, controls Article 3229, which makes it the duty of the court to order the election to take place not less than fifteen nor more than thirty days after the issuance of the order. *Id.*

3. When a penal law prohibits two or more acts, one valid and constitutional and the other not, it may and will be held valid and constitutional, and can and will be enforced, as to that portion which is valid and constitutional. See the opinion for a case to which the rule applies. *Id.*

4. It is not a valid objection to the legality of an election under the local option law that two of the five notices required by law to be posted in the county were posted in a single precinct. *Id.*

5. The local option law of this State (Rev. Stat., arts. 3230, 3232), requires that the commissioners court of the county "shall appoint and qualify the proper officers in accordance with the election law," and that "the officers holding said election shall in all respects not herein specified conform to the existing laws regulating elections." Articles 1681 and 1682 of the Revised Statutes prescribe the duties of officers under the general election law. *Id.*

6. Failure on the part of the proper officers to perform duties required of them in furtherance of an election will, if the election be a special one, render it nugatory and void, if thereby electors sufficient to have changed the result were deprived of the right to vote at said election. See the opinion *in extenso* upon the question, and for a case to which the rule applies. *Id.*

7. Local option law, when adopted by the vote of the electors, does not become operative until the order of the commissioners court declaring the result of the election has been published for four successive weeks, and the sale of intoxicating liquors in the community to be affected is not, prior to such publication, a violation of the local option law. The order in this case was published in four successive issues of the newspaper of July 4, 11, 18 and 25, and the trial court charged in substance that the law became operative on the last named date. *Held,* erroneous. The law contemplates that the order shall be published for four full consecutive weeks, or twenty-eight days from the day of its first publication, and in refusing a special charge to that effect the trial court further erred. *Phillips v. State*, 304.

8. The local option law of this State requires that the commissioners court of the county to be affected by the election under the said law shall order the said election at the first session of the said court after

LOCAL OPTION LAW—*continued.*
the filing of the petition for said election, and this statute is mandatory. An election held under an order issued at any other than the first session of the said court after the filing of the petition is absolutely void. *Ex parte Sublett*, 309.

9. Under the local option law, as it existed in November, 1876,. an election under its provisions could be ordered at a special session of the commissioners court, if such was the first session after the filing of the petition. *Id.*

10. The record on appeal must show that the order for election under the local option law was based on a legal petition. *Carnes v. State*, 449.

### M.

MALICIOUS MISCHIEF.
Information in this case, charging malicious injury to a private store house, was formulated under Article 683 of the Penal Code, which article relates only to the destruction of or injury to "growing fruit, corn, grain, or other agricultural product or property, real or personal." The information, therefore, charges no offense against the laws of the State, and will not support this conviction. *Beeson v. State*, 406.

MANSLAUGHTER.
1. See the statement of the case for the substance of evidence developed in a trial for murder, which resulted in a conviction for manslaughter, whereunder the trial court, having charged in substance the rule of law laid down in Article 615 of the Penal Code, did not, in view of said evidence, err in omitting to charge upon the rules declared in Articles 612 and 614 of the said Code with regard to an instrument not necessarily a deadly weapon, unless its use and manner of use were accompanied by an intention to kill. *Hartwell v. State*, 88.

2. The uttering of insulting words by the deceased about a female relative of the slayer, though they were not uttered in the presence of the slayer, is adequate cause to reduce a homicide to manslaughter, provided the slayer was informed of the utterance of the insulting words, and slew the deceased upon the first meeting after being so informed. But, before the slayer can prove the utterance of the insulting words in mitigation of the homicide, it devolves upon him to establish a com plete predicate by showing that he was informed of the utterance of the insulting words before he killed the deceased, and that he killed him on the first meeting thereafter. Proof that the insulting words were communicated to the slayer is not enough to establish a predicate; it must go farther and show that the killing occurred upon the first meeting of the parties. *Howard v. State*, 265.

3. Article 608 of the Penal Code of this State reads as follows: "Where a defendant seeks to justify himself on the ground of threats against his own life, he may be permitted to introduce proof of the threats made, but the same shall not be regarded as affording a justification for the offense, unless it be shown that, at the time of the homicide, the person killed, by some act then done, manifested an intention to execute the threats so made." *Held*, that the effect of the said article is not to con-

**MANSLAUGHTER**—*continued.*

trol the admissibility of previous threats as evidence in homicide cases, but only to control the effect of such evidence when the threats are re-lied upon to justify the homicide. Previous threats, therefore, are *per se* admissible as independent evidence in homicide cases, and may be proved without a predicate. *Id.*

4. In order to raise the issue of manslaughter, it is not essential that the overt act relied upon was sufficient to raise the issue of self defense; but if, in connection with other antecedent facts and circumstances, it excited in the mind of the accused, and was sufficient to excite in the mind of a person of ordinary temper, such sudden passion as would ren-der it incapable of cool reflection, then adequate cause would be pro-duced sufficient to raise the issue of manslaughter, and the law of man-slaughter would be part of the law of the case. See the opinion for a case to which the rule applies, and which demanded of the trial court a charge upon the law of manslaughter; and note the approval of Hobbs's case, 16 Texas Court of Appeals, 523. *Id.*

5. "D—d son of a bitch" is an expression which does not come within the legal meaning of the terms "insulting words towards a female rela-tive," as those terms are used in the statute defining manslaughter. See the opinion for the substance of a charge upon manslaughter *held* suffi-cient under the evidence. *Simmons v. State,* 653.

6. A killing committed in resisting arrest under an illegal process is not, ordinarily, a higher degree of homicide than manslaughter. *A fortiori,* it is impossible for a homicide to be of a degree inferior to manslaughter, if the killing is committed by one in the attempt to make an illegal arrest, though the killing may be done upon reasonable ap-prehension of danger. Note the opinion for the comments of Hurt, J., on the rule, and see the opinion *in extenso* for evidence held, under the rules stated, to have been properly excluded. *Peter v. State,* 684.

7. See the opinion for the substance of evidence adduced upon a trial for murder, *held,* to exclude the issue of self defense. *Id.*

8. See the statement of the case for evidence on a trial for murder *held* to present the issue of manslaughter, and, therefore, to have called for a charge upon that grade of homicide. *Ross v. State,* 689.

**MARRIAGE LICENSES.**

County clerks, by virtue of the general power conferred on them by Article 1149 of the Revised Statutes, "to administer all oaths and take depositions," have authority to take affidavits of the consent of parents to the marriage of their daughter, and such an affidavit, if false, may be assigned as "false swearing," though not as perjury. (Davidson v. The State, 22 Texas Ct. App., 376, on this subject, cited and approved.) *Steber v. State,* 176.

**MISAPPLICATION OF PUBLIC MONEY.**

1. Indictment conforming substantially to No. 25 of Willson's Crimi-nal Forms is sufficient to charge against a county officer the offense of misapplying the public money, as that offense is defined by Article 103 of the Penal Code. *Crump v. State,* 615.

MISAPPLICATION OF PUBLIC MONEY—*continued.*

2. A justice of the peace is a county officer within the purview of Article 103 of the Penal Code. See the opinion for the distinction between this and the case of Edwards v. The State, 2 Texas Court of Appeals, 525. *Id.*

3. See the opinion for the substance of a charge of the court *held* erroneous. But in view of the evidence in the case, and the failure of the appellant to except to the charge at the proper time, the error is immaterial. *Id.*

MISDEMEANORS.

1. Trial courts are not required to charge the jury in misdemeanor cases, except when requested to do so by one or both sides of the cause; and even then they can be required only to give, with or without modification, or to refuse such charges as are requested in writing. The refusal of a special charge does not impose upon the court the duty of giving an independent charge. *Sparks v. State,* 447.

2. Special charges which respond to no issue raised by the evidence are correctly refused. *Id.*

3. Refusal of the trial court in a misdemeanor case to instruct the jury as to the legal meaning of the word "willful," when that word is used to characterize the offense, and a correct instruction is requested in writing, is error. *Id.*

"MONEY."
*See* PROPERTY.

MOTIVE.

A State's witness being on the stand, the court, over objection of the defense, allowed prosecuting counsel to ask him if he had not had frequent difficulties with the defendant. The objections of the defense were that the question was irrelevant, incompetent, and calculated to moot the character of the defendant, which he had not put in issue. The trial judge, explaining the bill of exceptions, states that the defendant was "boss" on the witness's ranch, and that the prosecuting counsel announced the object of the question to be to prove that the witness and the defendant had had difficulties, and that the witness had threatened the defendant to discharge him and employ the deceased in his place—thus showing a motive for the homicide, for which purpose alone the question was allowed. *Held* that the explanation shows sufficient reason for the allowance of the question. *Powers v. State,* 42.

MURDER.

1. Appellant and two other prisoners conspired to escape from jail, and arranged that C., who was one of them, should secure and detain the jailer in the corridor while the escape should be effected. No understanding to kill or injure the jailer, otherwise than by his detention, was expressly proved, but the conspirators had obtained and prepared a piece of iron with which the jailer was killed by C., and it had been con-

Index.

MURDER—*continued.*

cealed by the appellant the morning previous to the homicide. C. killed the jailer in the corridor of the jail, and whilst the appellant and the other prisoner were locked up in their cell and thus disabled from assisting C. in the homicide. There was no proof that appellant by word or gesture encouraged C. to kill the jailer. *Held* that on this state of case the question arises whether the appellant was a principal in the homicide, and the test of that question is whether he and C. acted together, and whether the act was done in pursuance of a common design and purpose wherein their minds had agreed. *Kirby v. State*, 13.

2. It is contended for appellant that the conspiracy extended no further than the escape, and did not contemplate the killing of the jailer, or the infliction of bodily injury upon him beyond his mere detention, and that the killing was the individual and independent act of C. alone, perpetrated without appellant's knowledge or complicity, and without ability on his part to prevent it. But *held*, in view of the nature and object of the conspiracy, and of the preparation and use of a deadly weapon as a means to execute the common design, that the homicide was not the independent act of C. alone, but was the act of each and all the conspirators, because it was directly incident to and grew out of the common design of all. See the opinion *in extenso* on the amenability of co-conspirators for the acts of each other done in the execution of an unlawful thing. *Id.*

3. A person unlawfully attacked is not bound to retreat in order to avoid the necessity of killing his assailant, when the attack is such as produces a reasonable expectation or fear of death or some serious bodily injury; and in many cases it is the imperative duty of the trial court to so instruct the jury. Such an instruction, however, was unnecessary and would have been irrelevant in this case, inasmuch as the evidence adduced to show self defense affirmed that the defendant was in full retreat when he fired the fatal shot. *May v. State*, 146.

4. The true rule upon the doctrine of reasonable doubt as applied to murder of the second degree is that the inculpatory proof must show beyond a reasonable doubt the *absence* of the mitigating, excusing or justifying facts. *White v. State*, 154.

5. It is a part of the law of self defense under the code of this State that an assailed party is not bound to retreat in order to make good his right of self defense. Failure to so charge the jury will not of itself ne cessitate reversal, in the absence of exception, unless under all the facts of the case, the omission to so charge was calculated to injure the rights of the accused. The omission in this case, not having been excepted to, and being in no wise calculated to prejudice the accused, was not reversible error. *Id.*

6. An established rule upon the right of self defense, when the slayer provoked the occasion for the killing, is as follows: "If he (the slayer) provoke the contest, or produce the occasion, in order to have a pretext for killing his adversary, or doing him great bodily harm, the killing will be murder, no matter to what extremity he may have been reduced in the combat. But if he provoked the combat or produced the

MURDER—*continued.*

occasion, without any felonious intent—intending, for instance, an ordinary battery merely—the final killing in self defense will be manslaughter only." See the opinion *in extenso* for a charge upon the subject *held*, in view of the evidence, erroneous. *Id.*

7. It is an equally well established rule that "no words nor libelous publications, however aggravating, will compromit a slayer's right of defense, if in consequence of the same he is attacked; for no words, of whatsoever nature, will justify an assault." *Held* that, under this rule, and in view of the evidence, the trial court erred in refusing the defendant's requested instruction to the effect that threats made by defendant against deceased did not operate to deprive defendant of his right of self defense. *Id.*

8. It is an established rule of practice in this State that the charge of the court must make a pertinent application of the law arising out of the evidence, no matter how weak and impotent the evidence may appear to the court. See the opinion *in extenso* for evidence in a murder case which, under this rule, demanded of the trial court a charge upon the law of manslaughter. *Liskosski v. State*, 165.

9. There being evidence in this case tending to show an original conflict between the deceased on the one hand, and the accused and one K., acting together, on the other, and that that conflict was abandoned, and that it was renewed between K., acting alone, and the deceased, in which second conflict the fatal injury was inflicted, the trial court, having correctly instructed the jury upon a conflict in which K. and the accused acted together, should have further charged upon the alternative theory of a homicide in which K. acted alone. *Id.*

10. As a predicate for the introduction in evidence of a dying declaration, the State must prove, first, that the deceased, when he made it was conscious of approaching death, and believed there was no hope of his recovery; second, that the declaration was voluntarily made, and not through the persuasion of any person; third, that it was not made in answer to interrogatories calculated to lead deceased to make any particular statement; and, fourth, that the deceased was of sane mind at the time of making the declaration. See the opinion of the court for a predicate *held* insufficient to prove the first of the above requisites; wherefore the dying declaration was erroneously admitted. *Ledbetter v. State*, 247.

11. A peace officer has no authority, beyond the limits of his county, to arrest a party accused of crime. *Id.*

12. Warrant of arrest issued by a justice of the peace is wholly without authority in a different county, unless it be indorsed by a judge of the Supreme Court, Court of Appeals, district or county courts (when it may be executed anywhere in the State), or by a magistrate of the county in which the accused is found, when it may be executed in the latter county. If so indorsed, the warrant must be executed by an officer of the county in which the accused is found. *Id.*

13. Homicide to prevent illegal arrest amounts, as a general rule, to no higher offense than manslaughter. *Id.*

MURDER—*continued.*

14. See the statement of the case for evidence *held* sufficient to support a conviction for murder of the first degree, founded upon the defendant's plea of guilty; and also for a charge of the trial court, *held* to be correct, the evidence proving that the homicide was committed in the perpetration of robbery, which the Penal Code, Article 606, makes murder in the first degree *per se.* *Giles v. State*, 281.

15. See the statement of the case for evidence *held* insufficient to support a conviction for murder of the second degree—the deceased being the wife of the accused. *Olivares v. State*, 305.

16. Indictment is sufficient to charge the offense of murder if it alleges the name of the person killed, although it omits to charge that the deceased was a "reasonable creature in being." Whether or not the deceased was a "reasonable creature in being" is a matter of proof, and not of pleading. That the alleged name of the deceased (*e. g.*, "Smutty My Darling,") is an unprecedented one is immaterial. *Wade v. State*, 308.

17. It is a settled rule of practice in this State that, to relieve the trial judge of the duty of charging upon the lower degrees of culpable homicide, the evidence must establish the highest degree; for the reason that if there be reasonable doubt it must be solved by the jury and not by the court. It would be error to charge that the jury must either convict of murder of the first degree or acquit, if by any possible legitimate construction of the evidence the jury might convict of the second degree. *Conner v. State.* 378.

1. Stated in another form, the rule has been held to be, in effect, that a failure, to define murder of the second degree, in a case where the jury upon the evidence might have found the defendant guilty of the less offense, will be cause for reversal whether the instructions were asked or not. In this case the jury returned a verdict of guilty in the second degree under the charge of the court defining that grade of murder, and the defendant has nothing to complain of. *Id.*

19. The charge upon self defense failed to instruct that reasonable appearances of danger must be judged of from the standpoint of the accused; but the defense asked no special charge to that effect, and the charge given presented the law applicable to the facts in proof. *Held*, no reversible error. *Id.*

20. It was competent for the State to prove in this trial for murder that the homicide occurred in a house of prostitution, and that the accused was the proprietress of the house,—as those facts tended in this case to elucidate the *res gestæ.* *Gibson v. State*, 414.

21. The State has the right, on the trial of a criminal case, to anticipate defensive testimony upon a material issue, and may support its theory thereupon by its evidence in chief as well as by its evidence in rebuttal. See the opinion for a case to which this rule applies. *Id.*

22. That the trial court is required to compel the State, under all circumstances, to introduce every eye witness to the transaction is a doctrine which has never been announced by this court, and which is not supported by its adjudications in the Hunnicutt case (20 Texas Ct. App., 626) and the Phillips case (22 Texas Ct. App., 139). *Id.*

MURDER—*continued.*

23. The State having proved the acts and declarations of the defendant just before and just after the shooting, the defense proposed to prove statements made to a witness by the defendant, twelve days subsequent to the shooting, with respect to her declarations at the time of the shooting, which proposed evidence was excluded by the trial court. It is insisted by the defense that the excluded testimony was admissible under the last clause of Article 751 of the Code of Criminal Procedure, which reads as follows: "And when a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood, or to explain the same, may also be given in evidence." *Held,* that the proposed evidence was properly excluded. The rule announced in the said Article can not be invoked in this case, inasmuch as the declarations of the accused at the time of the shooting were proved as *res gestæ* on the trial, and not as detailed declarations. See the opinion on this question. *Id.*

24. In the absence of proof showing that the defendant's husband and co-principal, who fired the fatal shot, heard or was informed of the insulting epithet applied to the defendant by the deceased, the trial court did not err in refusing a special charge upon manslaughter. *Id.*

25. "Lying in wait" is evidence of express malice, and one of the standard illustrations thereof; but the code of this State nowhere provides that a murder committed while lying in wait is *per se* murder in the first degree. It is error, therefore, to instruct a jury to the effect that a murder so committed is *per se* murder in the first degree. *Osborne v. State*, 431.

26. Evidence insufficient to support a conviction for murder. *Scott v. State*, 452.

27. Upon the joint trial of this appellant and W. F. B., for murder, the State, over the objection of appellant, was permitted to prove threats against the deceased and his family, made by W. F. B. in the absence of appellant—the court promising to limit and control the said evidence in the charge to the jury, which it failed to do. *Held,* that in this failure the trial court erred. *Barron v. State*, 462.

28. See the opinion *in extenso* for a special instruction asked by the defendant, which, in view of the evidence in the case, should have been given. *Id.*

29. On this, a trial for murder, the State was permitted to prove by a witness that, when he arrived at the place of the homicide, some member of the crowd there congregated pointed to the defendant, whom the witness had just met two doors distant from the place of the homicide and exclaimed: "There is the man who did the shooting." The defendant at that time was walking with another man. The rule under which such proof could be admitted may be stated as follows: To entitle the State to introduce in evidence the declaration of a bystander, it must be clearly shown that the defendant understood himself to be accused of the criminal act committed; and, further, the circumstances must have been such as to require of him a response. Even when the requirements of this rule are complied with, and the evidence has been properly ad-

MURDER—*continued.*

mitted, it devolves upon' the trial court to instruct the jury as to the legal function of the evidence so admitted, and that it can not be relied upon by the State to establish the defendant's guilt of the main fact in issue, *i. e.*, that he committed the criminal act. *Held* that, under the rule stated, the admission of the declaration of the bystander in this case was error. *Felder v. State.* 477.

30. It is competent for a defendant on trial for murder to impeach the dying declarations of the deceased inculpating him as the slayer, by proving statements made by the deceased, contradictory of his dying declarations; and, in excluding such impeaching proof in this case, the trial court erred. *Id.*

31. See the statement of the case for evidence *held* sufficient to support a conviction for murder of the first degree, *Rodriguez v. State,* 503.

32. See the statement of this case for a chain of purely circumstantial evidence *held* sufficient to establish each and every material issue in a trial for murder—except that of express malice, of which there was direct testimony. *Scott v. State,* 521.

33. See the statement of the case for evidence in a habeas corpus proceeding for bail under an indictment for murder *held* insufficient to authorize the refusal of bail. *Ex parte Hay,* 585.

36. Charge of the court with respect to the reasonable doubt is sufficient if it applies the doctrine to the whole of the case, though not to each and every contested question arising upon the evidence. *McCullough v. State,* 620

37. See the opinion for evidence *held* inadmissible upon the main issue or as corroborative evidence, because of immateriality, and inadmissible as impeaching testimony because of the want of predicate; and, therefore, to have been properly excluded. *Id.*

38. See the statement of the case for evidence *held* sufficient to support a conviction for murder in the first degree. *Id.*

39. The trial court in this case did not err in charging upon murder of the first degree, in view of evidence tending to establish a premeditated killing, and in view of the further fact that such charge was necessary to a complete exposition of the elements of murder of the second degree. *Simmons v. State,* 653.

40. "D—d son of a bitch" is an expression which does not come within the legal meaning of the terms "insulting words toward a female relative," as those terms are used in the statute defining manslaughter. See the opinion for the substance of a charge upon manslaughter *held* sufficient under the evidence. *Id.*

MUTILATED PAPERS.
*See* SUBSTITUTION OF LOST PAPERS.

MUTUAL COMBAT.

A homicide committed in mutual combat would not be reduced to manslaughter, under the code of this State, unless it was committed under the influence of sudden passion arising from an adequate

Index.

MUTUAL COMBAT—*continued.*

cause; and therefore, if death did not ensue, the offense would not be mitigated from assault with intent to murder to aggravated assault. Note the distinction taken in the opinion between manslaughter under the code of this State and manslaughter at common law and in some of the other States. *Spearman v. State,* 224.

## N.

NEW TRIAL.

*See* BURGLARY, 2.

EVIDENCE, 4.

VERDICT, 4.

1. A juror who tried the case qualified himself on his *voir dire* by declaring himself a freeholder in the State. It transpired after the trial that he was neither a freeholder in the State nor a householder in the county. Applying for a new trial, the appellant and his counsel made affidavit that they did not know of the disqualification of the juror until after the return of the verdict. *Held,* that the new trial should have been awarded, notwithstanding appellant and his counsel had intimately known the juror for years. *Boren v. State,* 28

2. That a continuance was refused because of a want of diligence does not absolve the trial court, on the motion for a new trial, from the duty of considering the materiality and probable truth of the testimony expected from the absent witness in connection with the evidence adduced at the trial. Though an application for a continuance to obtain absent testimony fails to comply with the requirements of the statute, if, in view of the evidence adduced at the trial, the absent testimony appears to be material and true, it should be considered in determining the motion for a new trial. *Jackson v. State,* 183.

3. A continuance on account of absent witnesses was refused by the trial court, and the refusal is assigned for error. But it appears that one of them appeared and testified at the trial; that the testimony expected from another was fully supplied at the trial, and its truth not disputed; and that the remainder of the expected testimony was immaterial. *Held,* no error in the refusal of the continuance. *Brown v. State,* 214.

4. Though a continuance was properly refused because diligence was not shown, yet upon the motion for new trial, if the evidence adduced at the trial denotes that the absent testimony was material and probably true, the trial court should grant a new trial. And the action of the trial court in this matter will be revised on appeal if it appears that the defendant may have sustained injury in consequence of the refusal of the continuance. *Covey v. State,* 388.

5. New trial will not be awarded that the accused may secure witnesses to impeach a State's witness who testified on the trial. *Grate v. State,* 458.

6. New trial was applied for in this case to procure the testimony of the co-defendant of the accused, who was tried and acquitted of the same offense subsequent to his conviction. Under the rule that an uncorroborated accomplice is not entitled to full credit, and that a new trial

NEW TRIAL—*continued.*

should not be granted to procure the testimony of a co-defendant subsequently acquitted, whose evidence standing alone is of a suspicious import, and of such doubtful credibility as to render it unlikely that it would change the result of the trial, the new trial in this case was properly refused. *Jones v. State.* 501.

7. See the statement of the case for evidence set up in an application for continuance, which, considered in connection with the evidence adduced on the trial, entitled the accused to a new trial—the continuance having been refused. *Mayfield v. State*, 645.

8. Newly discovered evidence, when relied upon to secure a new trial, must appear to be in fact *newly discovered*, and such as could not by a reasonable exercise of diligence have been discovered in time for the trial. Moreover, it must appear, in the light of the evidence adduced, to be probably true. *McVey v. State*, 659.

# O.

OBSTRUCTING PUBLIC ROADS.

1. The gravamen of the offense of obstructing a public road is that the act was *willfully* done by the accused. See the opinion and the statement of the case for the effect and substance of evidence *held* insufficient to support a conviction for willfully obstructing a public road, inasmuch as the evidence leaves the true location or route of the road in doubt and uncertainty. *Murphy v. State*, 333.

2. Evidence insufficient to support a conviction for obstructing a public road. *Guthrie v. State*, 339.

OCCUPATION TAX.

1. The offense denounced by Article 110 of the Penal Code consists not in the mere sale of spirituous liquors without license, but in the pursuing of the occupation of selling spirituous liquors without first having paid the occupation tax levied on such avocation. The defense in this case requested a special instruction conforming to this doctrine, and the refusal of which, under the facts in proof, was error. *Williams v. State*, 499.

2. See the opinion *in extenso* for the substance of evidence *held* insufficient to support a conviction for following the occupation of selling spirituous liquors without having paid the tax levied thereon. *Id.*

3. An Act of the Seventeenth Legislature of the State of Texas imposes upon "every commercial traveler, drummer, salesman or solicitor of trade by sample or otherwise" an annual occupation tax of thirty-five dollars, payable in advance to the State comptroller, and enacts that any such trader who fails or refuses to exhibit the comptroller's receipt, when demanded by any tax collector or justice of the peace, shall be guilty of a misdemeanor punishable by fine of not less than twenty-five dollars, nor more than one hundred dollars. *Held* that this enactment, whether considered with reference to citizens of this or of other States, is a valid exercise of the taxing power of the legislature, and in no respect

OCCUPATION TAX—*continued.*

> violates or contravenes that provision of the United States Constitution
> which empowers Congress to "regulate commerce with foreign nations,
> and among the several States, and with the Indian tribes." The con-
> trary doctrine, in so far as citizens of other States are concerned, has been
> recently held by the Supreme Court of the United States in the case of
> Robbins v. The Taxing District, etc., but this court, while conceding
> that State tribunals are bound by such construction of the United States
> Constitution as is settled by adjudications of the Supreme Court of the
> United States, declines to recognize the authority of the said case, inas-
> much as it was determined by a mere majority of the sitting justices,
> and a minority of a full bench, and is in direct conflict with other de-
> cisions of the same court, unanimously concurred in. See the opinion
> of this court for a collocation of elementary authorities, and of adjudi-
> cations, both State and Federal, in support of its ruling. *Ex parte Asher*,
> 662.

OPINION.

> When an emotion, such as fear, anger, and the like, was manifested
> merely by demeanor or appearances not otherwise communicable,
> the witness may be allowed to describe its effect upon his mind, even
> though the effect be opinion. In this case a State's witness testified that
> the defendant, about two hours before he killed the deceased, put his
> foot on the foot of the deceased and kept it there for about half a
> minute after the deceased remarked to him, " that's my foot you are on,"
> and then the deceased pushed the defendant's foot off of his. The State,
> over defendant's objection, asked the witness whether the defendant
> put his foot on the deceased's in a jocular or an insulting manner, and
> the witness replied that he regarded the act as an insult. *Held*, that
> the question and answer were allowable. Note the sixth subdivision of
> the opinion of the court for a succinct but lucid exposition of the rules
> governing this species of testimony. *Powers v. State*, 42.

OWNERSHIP.

*See* Theft, 1.

> 1. See the opinion and the statement of the case for evidence *held* in-
> sufficient to support a conviction for theft, because insufficient to sup-
> port the allegation of ownership.    *Groom v. State*, 82.
>
> 2. Bill of sale executed by the general owners of the cattle subsequent
> to the alleged theft of the same from the special owner, was improperly
> admitted, because irrelevant, and because, not being of record at the
> time of the theft, it was not evidence of ownership.    *Id.*

# P.

PENALTY.

*See* Exhibiting Gaming Table, 1.

> With regard to the punishment for cattle theft, the trial court in-
> structed the jury that it was "not less than two nor more than five
> years," but failed to instruct that it should be by confinement in the

PENALTY—*continued.*

penitentiary. The verdict assessed the punishment at "confinement in the penitentiary for two years." The charge of the court was not excepted to. *Held* that the omission in the charge is not fundamental, nor even reversible, error, inasmuch as it is obvious that it neither misled the jury nor prejudiced the accused. So far as this ruling may conflict with that of this court in Hamilton's case, 2 Texas Court of Appeals, 494, the latter case is overruled. *Pitner v. State*, 366.

PERJURY.

1. If the perjury assigned be evidence given by the accused as a witness in a case under judicial investigation, the materiality of his testimony is a question of law and not of fact. But, like any other question of law, it may be so mingled with the facts that the court should submit it to the jury, with proper instructions upon the law. In no event, however, can the materiality of the testimony assigned as perjury be established by the opinions of witnesses. *Washington v. State*, 336.

2. The perjury assigned being the false testimony given by the defendant upon the trial of one G., the trial court erred in permitting certain witnesses who served as jurors upon the trial of G. to testify, upon this trial, that they discredited and discarded the evidence of this defendant in considering of their verdict in the G. case. See the opinion on the question. *Id.*

3. If an indictment for perjury shows by its allegations that the perjury was committed in a judicial proceeding in a court of competent jurisdiction, and describes the judicial proceeding with reasonable certainty, it need only allege in general terms that a certain issue was joined in said proceeding, and need not specifically allege what the issue was. *Covey v. State*, 388.

4. Though the testimony taken at an examining trial should be reduced to writing as directed by the Code of Procedure, yet perjury may be assigned upon oral testimony taken but not reduced to writing in such trial. *Id.*

5. The perjury assigned in this case was the false testimony of the accused upon the trial of one W., for cattle theft. Upon the trial of the accused for the perjury the trial court permitted certain State's witnesses to testify to conversations among themselves and one M., concerning the suspicion of M. that W. was a cattle thief; and further, to an agreement entered into between the said witnesses and M. developing a plan whereby M. was to detect W. in the theft of cattle; neither the defendant nor W. being present when the said conversations were had and the agreement entered into. *Held*, that the testimony, being hearsay, was clearly inadmissible; and the conversations and agreement, being *res inter alios acta*, were not binding upon either W. or this defendant. *Maines v. State*, 568.

6. The State's witness M. was permitted to testify, on this trial, that after he had testified fully on the examining trial of W., for cattle theft, he fled the country because of serious threats uttered against him. *Held* that, in the absence of evidence showing that the threats were uttered

PERJURY—*continued.*

by the defendant, or that he had some connection with them, the evidence was incompetent, and its admission was erroneous.  *Id.*

7.   The record of proceedings on the trial of W. for theft was admissible against the defendant on his trial for perjury committed on the trial of W., but only as matter of inducement in committing the perjury, and not to prove the perjury; and, being admitted for that specific purpose, the charge of the trial court, omitting to restrict and limit it accordingly, though not excepted to, was erroneous.  *Id.*

PLAYING CARDS, ETC.

Indictment charged in one count that the accused played at a game with cards "at a house for retailing spirituous liquors," and in another count alleged the place as "a certain room attached to a house for retailing spirituous liquors."  The proof is that the game was played in a room over a store-room in which spirituous liquors were "sold," and that there was no immediate connection between the "saloon where liquors were sold and the upper room" where the cards were played.  *Held* that the offense was well charged in each count of the indictment, but the proof fails to support the conviction because it fails to prove that liquors were *retailed* anywhere.  A *sale* does not import a *retailing,* nor does the word "saloon" designate a house for retailing spirituous liquors.  *Early v. State,* 364.

PLEADING.

*See* COMPLAINT.

INDICTMENT, 35, 36.

INFORMATION.

1.   An indictment in several counts is a collection of several bills against the same defendant, for offenses which on their faces appear distinct, under one caption, and found and indorsed collectively as true by the grand jury.  The object is to charge the defendant with distinct offenses, under the idea that the court may, as often as it will, allow them to be tried together, thus averting from both parties the burden of two or more trials; or, in another class of cases, to vary what is meant to be one accusation, so as, at the trial, to avoid an acquittal by an unforeseen lack of harmony between allegation and proof, or a legal doubt as to what form of charge the court will approve.  The objection urged to the second count in this indictment is that the Eugene Boren therein charged is not alleged, by the descriptive words "the said" or their equivalent, to be the same Eugene Boren charged in the first count; and the same objection is applied to the property.  *Held,* that the objection is hypercritical.  *Boren v. State,* 28.

2.   If the pleader concludes the indictment with the phrase "against the peace and dignity of the State," no words following that phrase and not forming part of it can vitiate the indictment.  See the opinion in this case in illustration, and note the comment upon Haun's case, 13 Texas Court of Appeals, 383.  *Rowlett v. State,* 191.

3.   When a statute makes it an offense to do one *or* another of several

PLEADING—*continued.*

things, the several things may be charged together, but this must be done conjunctively, using *and* instead of the word *or* used in the statute. If the word *or* be used in such case, it renders the indictment uncertain. The indictment in this case charging that the pistol was carried "on *or* about the person," etc., is substantially defective. *Davis v. State*, 637.

POSSESSION.

Possession of the servant is possession of the master, and proof that the property was taken from the possession of the servant will support the allegation that it was taken from the possession of the master. *Clark v. State*, 612.

PRACTICE.

*See* Bill of Exceptions. Local Option Law, 10.
 Burden of Proof, 1. Murder, 21.
 Challenge. New Trial, 2.
 Charge of the Court, 26. Opinion.
 Constitutional Law, 13. Substitution of Lost Papers
 Evidence, 13, 74, 77. Sunday Law.
 Information. Special Judge.
 Interpretation of Codes. Verdict, 1, 3.
 Jurisdiction.

1. Article 730 of the Code of Criminal Procedure provides as follows: "Children or other persons who, after being examined by the court, appear not to possess sufficient intelligence to relate transactions with respect to which they are interrogated, or who do not understand the obligation of an oath, are incompetent witnesses." See the opinion *in extenso* for circumstances under which it is *held* that the prosecuting witness was incompetent to testify, because, even if intelligent enough to relate the transaction, she was not sufficiently intelligent to understand the obligation of an oath. *Holst v. State*, 1.

2. Certificates given to authenticate depositions or testimony taken at coroner's inquests or examining trials, are not necessary or even proper matters to be incorporated in a statement of facts. *Kirby v. State*, 13.

3. The Code of Criminal Procedure, Article 774, places testimony taken at an inquest in the same category as testimony taken at an examining trial, and the same rules govern the admissibility of both; wherefore the confession of a prisoner to a coroner's inquest is competent evidence against him if, as provided in Article 750, it was made in his voluntary statement taken in accordance with law, or was made voluntarily after having been cautioned that it could be used against him, etc. Articles 261 and 262 prescribe the mode of taking and authenticating such a voluntary statement "in accordance with law," and require that it be made before any witness be examined, and be signed but not sworn to by the accused. *Id.*

5. Appellant being on trial for the murder of his jailer, the State was allowed, over objection, to put in evidence his statement to the coroner's inquest, which statement, as shown by the magistrate's certificate,

PRACTICE—*continued.*

was made after due caution that it could be used against him. It does not appear that he was in arrest or under accusation when he made the statement, but it is inferred that he was then suspected by the magistrate, and was therefore cautioned, though treated as a witness and sworn to his statement. *Held,* that the statement is not "a confession made in the voluntary statement of the accused," and its admissibility depends upon whether it was "made voluntarily after having been first cautioned that it may be used against him." *Id.*

6. The Code of Criminal Procedure prescribes no form in which must be given the "caution" that a voluntary statement may be used in evidence against the maker. The caution is sufficient if the maker of the statement be warned that so much of it as is inculpatory of himself may be used against him. His silence or refusal to testify could not be used against him as a confession. *Id.*

7. In view of the ample caution given appellant in this case, and of his subsequent declaration that he was willing to tell all he knew in regard to the killing, and of his signing and swearing to his statement, the statement must be regarded as clearly a "voluntary statement;" and the trial court committed no error in admitting it as evidence for the State. *Id.*

8. A juror who tried the case qualified himself on his *voir dire* by declaring himself a freeholder in the State. It transpired after the trial that he was neither a freeholder in the State nor a householder in the county. Applying for a new trial, the appellant and his counsel made affidavit that they did not know of the disqualification of the juror until after the return of the verdict. *Held,* that the new trial should have been awarded, notwithstanding appellant and his counsel had intimately known the juror for years. *Boren v. State,* 28.

9. See the opinion *in extenso* for a state of proof in a theft case under which the trial court should have given in charge to the jury the law of accomplice testimony. *Id.*

10. As tending to prove guilty knowledge on the part of the defendant, the State relied upon the shape and condition of the brand on the alleged stolen animal. It was proved that the brand of the person from whom the defendant claimed to have acquired the animal was a long horizontal "11," and that the brand on the stolen animal was a short perpendicular 11. The defense offered to prove by stock men that mistakes in the placing of brands were of frequent occurrence. *Held,* that in excluding the evidence the trial court erred. *Id.*

11. In order to convict a domestic servant for the burglary of his master's house, it must be shown that he, if he acted alone, entered the same by an actual breaking. If, however, the domestic servant is shown to have been one of two or more conspirators to enter and burglarize his master's house, and, in pursuance of the conspiracy, he admitted his co-conspirators, a constructive breaking, it seems, will authorize his conviction. Independent of this rule, the co-conspirators will be guilty of burglary upon the constructive breaking by the domestic servant. *Neiderluck v. State,* 38.

PRACTICE—*continued.*

12. A State's witness being on the stand, the court, over objection of the defense, allowed prosecuting counsel to ask him if he had not had frequent difficulties with the defendant. The objections of the defense were that the question was irrelevant, incompetent, and calculated to moot the character of the defendant, which he had not put in issue. The trial judge, explaining the bill of exceptions, states that the defendant was "boss" on the witness's ranch, and that the prosecuting counsel announced the object of the question to be to prove that the witness and the defendant had had difficulties, and that the witness had threatened the defendant to discharge him and employ the deceased in his place—thus showing a motive for the homicide, for which purpose alone the question was allowed. *Held* that the explanation shows sufficient reason for the allowance of the question. *Powers v. State*, 42.

13. A citizen householder and voter of an unorganized county is a competent juror to serve on juries impaneled in the organized county to which the unorganized county of his residence was attached for judicial purposes. *Groom v. State*, 82.

14. A person unlawfully attacked is not bound to retreat in order to avoid the necessity of killing his assailant, when the attack is such as produces a reasonable expectation or fear of death or some serious bodily injury; and in many cases it is the imperative duty of the trial court to so instruct the jury. Such an instruction, however, was unnecessary and would have been irrelevant in this case, inasmuch as the evidence adduced to show self defense affirmed that the defendant was in full retreat when he fired the fatal shot. *May v. State*, 146.

15. If the defendant elicits from a witness an answer prejudicial to his interest, he is not entitled to have it excluded from the consideration of the jury. *Id.*

16. By an unbroken line of decisions in the Supreme as well as this court it has been as it is now *held*, that a conviction for aggravated assault may be had under an indictment for assault with intent to murder, notwithstanding no circumstance of aggravation be alleged in the indictment. (Hurt, J., dissents.) *Bolding v. State*, 172.

17. The law confides to teachers a discretionary power to punish their pupils, and exonerates them from responsibility unless the punishment be excessive or malicious. Moderate restraint and correction of a pupil by his teacher is not an offense, but is authorized by law; and it seems that the authority of a teacher is not limited to the time the pupil is at the school room or under the actual control of the teacher. *Id.*

18. On the *voir dire* of a juror he said he had heard a person in whom he had confidence make a statement of the case, based not upon his own knowledge but on hearsay, and thereupon he, the juror, had formed a conclusion provided the statement was true, but had formed no conclusion as to whether or not it was true. *Held*, not a disqualifying conclusion. *Id.*

19. The mere fact that the trial court erroneously overruled a good challenge for cause to an unqualified juror, and thereby necessitated the defense to expend a peremptory challenge on him, is not reversible

PRACTICE—*continued.*

error where it does not appear that any objectionable juror was forced upon the defendant.  *Id.*

20.  Appellant was tried for falsely making oath that the mother of the intended bride was willing for her to marry her affianced husband.  It was in proof that the bride's mother had been dead some two years when the oath was made and the license obtained, and that since her death the bride had lived in the family and at the home of one G., who stood to her *in loco parentis.*  The trial court permitted the State to prove by said G. that he did not give his consent to the marriage.  *Held* that this testimony was inadmissible because wholly irrelevant to the issue, and tended to prejudice the rights of the defendant.  *Steber v. State,* 176.

21.  Objection to an indictment is primarily made in this court on the ground that the record shows that the indictment was not presented in open court by the grand jury.  The objection is based upon the fact that the clerk of the court below, in noting upon the minutes the presentment of the indictment, misnamed the offense charged in it.  *Held* that if the objection could ever have been maintained, it could only have been made available by exception to the indictment in the trial court before the plea of not guilty was entered, and comes too late when first raised in this court.  But even upon its merits the objection is futile, inasmuch as there was no occasion to name the offense in the minutes of the trial court, and the clerk's unnecessary and erroneous attempt to do so can not vitiate the indictment.  *Rowlett v. State,* 191.

22.  Over objection by the defense, a State's witness was allowed to testify that, after the commission of the offense, and in the absence of the accused, certain persons came to witness and made overtures for a compromise, inquiring how much money it would take, etc.  There was no proof that these overtures were made by the authority or with the knowledge of the accused.  *Held,* that the evidence was hearsay and inadmissible, and was calculated to prejudice the accused.  *Barbee v. State,* 199.

23.  A jury in a felony case should always be instructed that they are the exclusive judges of the facts proved, and of the weight to be given to the testimony.  *Id.*

24.  It is not competent to indict for an assault with intent to rape, and convict upon evidence establishing an attempt to rape by fraud.  *Milton v. State,* 204.

25.  Assault with intent to rape can only be established by proof of force or attempted force, and not by proof of threats or fraud as the means of accomplishing the offense.  But an attempt to commit rape may be committed by means of threats or fraud, and the use of chloroform as the means comes within the meaning of fraud, and can not be construed to be force.  *Id.*

26.  In a trial for the theft of a "horse," the State was permitted, over objection by the defense, to prove that the animal was a mare.  The objection was on the ground of variance between the allegation and the proof.  *Held* no variance, and the objection was properly overruled.  *Davis v. State,* 210.

PRACTICE—*continued.*

27. That the State, over objection, was allowed, in the cross examination of the defendant's wife, to elicit testimony not germane to her evidence in chief, is not reversible error unless the objectionable testimony was calculated to prejudice defendant's rights. *Id.*

28. In a trial for horse theft the State introduced evidence tending to prove that, besides the animal in question, other horses were stolen at the same time and in the same neighborhood; but the trial court omitted to instruct the jury for what purposes the evidence was allowed, and this omission was relied upon in the motion for a new trial. The State's case stood upon circumstantial evidence alone. *Held* that the omission in the charge, though not excepted to nor a proper instruction requested, was calculated to prejudice the rights of the defendant, and is therefore reversible error. *Id.*

29. It was not *held* in the cases of Hunnicut v. The State, 20 Texas Court of Appeals, 632, and Phillips v. The State, 22 Texas Court of Appeals, 139, that the State must in every case introduce all the eye witnesses of the *res gestæ.* As laid down in the latter case, this is a matter within the sound discretion of the trial court, though there may be cases in which the requirement should be made. *Wheelis v. State,* 238.

30. In a trial for murder this appellant was convicted of manslaughter upon evidence which showed that the deceased, as appellant knew, had threatened to kill him if he should ever speak to him, and that, the deceased having dropped some coins, the appellant spoke to him and called his attention to one of them; whereupon the deceased, calling appellant a d—d son of a bitch, replied that he had told and sent him word not to speak to him. Appellant, saying "all right," went out of the back door of the house, and then called to him a relative of the deceased, and in their ensuing conversation said he could "not stand this," and that he would "kill him." Deceased, still in the house, commenced whittling, and was apparently listening, and soon, closing his knife and putting it in his pocket, walked towards where appellant was, and when he got about a third of the way, he took his knife out of his pocket and seemed to be opening it. Proceeding to and having passed out of the back door, he was shot and killed by appellant. A pocket knife, partly open, lay close by deceased on the ground, after he was shot. The trial court did not give in charge to the jury the law of self defense, and rejected a requested instruction on that subject. *Held,* that the evidence fairly raised the issue of self defense, and the defendant was entitled not only to have all relevant circumstances, whether anterior to or contemporaneous with the killing, put in evidence, but also the law of self defense given in charge to the jury. *Id.*

31. A peace officer has no authority, beyond the limits of his county, to arrest a party accused of crime. *Ledbetter v. State,* 247.

32. Warrant of arrest issued by a justice of the peace is wholly without authority in a different county, unless it be indorsed by a judge of the Supreme Court, Court of Appeals, district or county courts (when it may be executed anywhere in the State), or by a magistrate of the county in which the accused is found, when it may be executed in the latter county.

PRACTICE—*continued.*

If so indorsed, the warrant must be executed by an officer of the county in which the accused is found. *Id.*

33. Homicide to prevent illegal arrest amounts, as a general rule, to no higher offense than manslaughter. *Id.*

34. Complaint alleging that the affiant "has good reason to believe and does believe" that the allegations made in the complaint are true is not invalid by reason of that form of averring the charge preferred. *Clark v. State,* 260.

35. Complaint and information, otherwise good, which describes the building defaced as a "public building" that was "held for public use by Cooke county" is sufficient to charge the offense of defacing a public building. *Id.*

36. The failure of the trial court to define the word "willful" in the charge given to the jury was error, but not reversible error, inasmuch as, the offense being a misdemeanor, it devolved upon the defendant to request a special charge to supply the omission, or to reserve exception to the omission. *Id.*

37. Special charges are properly refused if they announce incorrect principles of law, or if, being correct, they are substantially embraced in the general charge. *Id.*

38. The fact that the title to a school house was vested in the county judge in his official capacity, for the use of the county, could not disqualify him to preside over a trial for defacing the said school house, and hence the motion to transfer this cause to the district court was properly overruled. *Id.*

39. The State, in this case, before the defendant could interpose an objection, proved the former trial and conviction of the defendant for this same offense, and the trial court refused to entertain a subsequent objection to the proof, and permitted it to go to the jury. *Held,* error. The statute specially provides that a former conviction shall not operate as a presumption of guilt, and inhibits allusion to it in argument. The evidence being illegitimate, and having been adduced before the defendant could interpose an objection, the court, upon the defendant's motion, should have withdrawn it from the jury, charging them that the same could not be considered in their deliberations upon their verdict. *Id.*

40. The statement by the State's counsel in the concluding argument that seven good men had contributed to the employment of special prosecuting counsel, and that he could have proved certain facts with regard to which the court excluded evidence, had not the defendant objected, was an abuse of the privilege of argument which not only called for the condemnation of the trial court, but which would, of itself, work a reversal of the conviction. *Id.*

41. Variance, as to the date of the alleged offense, between the affidavit or complaint and the information based upon it, is fatal, and a motion to quash the information should prevail. *Huff v. State,* 291.

42. In support of a motion to amend the complaint in this case, the county attorney filed his affidavit to the effect that, since the filing of the complaint and information, some unknown person had fraudulently

**PRACTICE**—*continued.*

added a figure to the original figure inserted by him in the complaint to indicate the date of the offense, by which fraudulent addition the variance between the complaint and the information was made to appear. Upon the hearing of evidence the trial court sustained the motion to amend, and the trial proceeded. *Held,* that the proceeding was wholly unauthorized. The date of the offense, both in the complaint and information, being matter of substance and not of form merely, could not be amended, either upon motion or by order of the court. *Id.*

43. The fraudulent alteration of a date in an affidavit or complaint amounts to a mutilation of the same, and is a mutilation of the information. The only remedy available in such case is by substitution of the complaint and information, in the manner provided by Article 434, of the Code of Criminal Procedure. *Id.*

44. It is a rule of evidence that when an original document can be produced in court, oral proof of its contents can not be made. The original instrument in this case being in court on this trial, the court below erred in permitting a witness to testify to the contents and date of the same. *Id.*

45. The trial courts of this State have the power to reject an informal or illegal verdict, and such a verdict can not be held to operate as an acquittal unless the intention of the jury to acquit is apparent. Likewise, informal verdicts may be amended under the direction of the court. *Robinson v. State,* 315.

46. The award of a new trial because of an informal or illegal verdict places the case in the same condition as if no trial had been had. *Id.*

47. Neither jeopardy nor former acquittal are such pleas as can be interposed by a defendant at a subsequent trial upon a showing that his conviction on his former trial was set aside by the trial court because of an illegal verdict. *Id.*

48. The failure of the jury to pass upon the pleas of jeopardy and former acquittal in the absence of any supporting proof, can not operate to the prejudice of an accused, and, therefore, becomes immaterial. *Id.*

49. If the perjury assigned be evidence given by the accused as a witness in a case under judicial investigation, the materiality of his testimony is a question of law and not of fact. But, like any other question of law, it may be so mingled with the facts that the court should submit it to the jury with proper instructions upon the law. In no event, however, can the materiality of the testimony assigned as perjury be established by the opinions of witnesses. *Washington v. State,* 336.

50. The perjury assigned being the false testimony given by the defendant upon the trial of one G., the trial court erred in permitting certain witnesses who served as jurors upon the trial of G. to testify, upon this trial, that they discredited and discarded the evidence of this defendant in considering of their verdict in the G. case. *Id.*

51. The record and judgment in the proceeding in which the perjury was alleged to have been committed, while not admissible in evidence to be considered by the jury indiscriminately, was admissible as matter of inducement in the matter assigned as perjury. When admitted for this

PRACTICE—*continued.*

specific purpose, it became the duty of the trial court to give to the jury an instruction as to the purpose of its admission and the extent to which it could be considered. The omission of such an instruction was material error. *Id.*

52. The manner of introducing evidence is largely left to the discretionary control and regulation of the trial court, and rulings thereon will not be revised on appeal when no abuse of that discretion to the defendant's prejudice is apparent. *Hennessy v. State,* 340.

53. Bill of exceptions, to be available on appeal, should set forth the facts relevant to the ruling excepted to. The judge's authentication of the bill does not establish the validity of its grounds of exception, but merely certifies its presentation and the court's disposition of it. *Id.*

54. Predicate sufficient to admit in evidence the written testimony of an absent witness taken upon the examining trial is laid when it is shown that the absent witness either lives out of the State or that he has removed beyond the limits of the State. In this case it was shown that the absent witness was an officer in the United States army; that he was temporarily on duty in the State at the time of the examining trial; that his command, at that time, was stationed in the Indian Territory; that since the examining trial he had left this State to go to the post where his command was stationed, and that, since his departure, the witness proving the predicate had received a telegram from him announcing his arrival at his post. *Held,* a sufficient predicate to admit his written testimony. *Conner v. State,* 378.

55. This court has judicial knowledge of the fact that the Indian Territory is beyond the jurisdiction of this State. *Id.*

56. Circumstantial evidence is competent to establish the fact that an absent witness is beyond the limits or jurisdiction of this State. *Id.*

57. The rule of evidence which would require the State to produce a telegram as the best evidence of its contents, before resorting to secondary evidence to prove the same, obtains when the contents of the telegram become essential in determining the rights of parties to it. The object sought in this case was not proof of the contents of the telegram, but proof only of the independent fact that the telegram purporting to have been sent by the absent witness was received by the witness on the stand. *Held,* that the evidence was properly admitted. *Id.*

58. It is a settled rule of practice in this State that, to relieve the trial judge of the duty of charging upon the lower degrees of culpable homicide, the evidence must establish the highest degree; for the reason that if there be reasonable doubt it must be solved by the jury and not by the court. It would be error to charge that the jury must either convict of murder of the first degree or acquit, if by any possible legitimate construction of the evidence the jury might convict of the second degree. *Id.*

59. Stated in another form, the rule has been held to be, in effect, that a failure to define murder of the second degree, in a case where the jury upon the evidence might have found the defendant guilty of the less offense, will be cause for reversal whether the instructions were asked or

PRACTICE—*continued*.

not. In this case the jury returned a verdict of guilty in the second degree under the charge of the court defining that grade of murder, and the defendant has nothing to complain of. *Id.*

60. The charge upon self defense failed to instruct that reasonable appearances of danger must be judged of from the standpoint of the accused; but the defense asked no special charge to that effect, and the charge given presented the law applicable to the facts in proof. *Held,* no reversible error. *Id.*

61. Before being required to announce for trial, counsel for the defense were permitted to privately interrogate a State's witness as to what his testimony would be. The witness refused to divulge, and the trial court refused to compel him to do so to the defense privately,—disclaiming power in the court to so compel the witness on such an occasion. *Held,* that there was no error in the refusal of the court. *Withers v. State,* 396.

62. In a prosecution for keeping and exhibiting a gaming table, it appears that at a previous trial the prosecuting witness swore that the offense was committed in a certain saloon, but at this trial he swore that it was committed at a different saloon and locality. The defense, claiming surprise at this change in the witness's testimony, moved for a postponement or continuance of the case, to enable the defense to procure the testimony of certain witnesses who would disprove the charges in the indictment. *Held* that under the circumstances the trial court erred in overruling the motion and forcing the defendant to trial. *Id.*

63. It was competent for the State to prove in this trial for murder that the homicide occurred in a house of prostitution, and that the accused was the proprietress of the house,—as those facts tended in this case to elucidate the *res gestæ. Gibson v. State,* 414.

64. The State has the right, on the trial of a criminal case, to anticipate defensive testimony upon a material issue, and may support its theory thereupon by its evidence in chief as well as by its evidence in rebuttal. See the opinion for a case to which this rule applies. *Id.*

65. That the trial court is required to compel the State, under all circumstances, to introduce every eye witness to the transaction is a doctrine which has never been announced by this court, and which is not supported by its adjudications in the Hunnicutt case (20 Texas Ct. App., 626) and the Phillips case (22 Texas Ct. App., 139). *Id.*

66. The State having proved the acts and declarations of the defendant just before and just after the shooting, the defense proposed to prove statements made to a witness by the defendant, twelve days subsequent to the shooting, with respect to her declarations at the time of the shooting, which proposed evidence was excluded by the trial court. It is insisted by the defense that the excluded testimony was admissible under the last clause of Article 751 of the Code of Criminal Procedure, which reads as follows: "And when a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood, or to explain the same, may also be given in evidence." *Held,* that the proposed evidence was properly excluded. The rule announced in the said Article can not

PRACTICE—*continued.*

be invoked in this case, inasmuch as the declarations of the accused at the time of the shooting were proved as *res gestœ* on the trial, and not as detailed declarations. See the opinion on this question. *Id.*

67. Substantial compliance with the statute regulating the transfer of causes from the district to the county courts (Code Crim. Proc., art. 435) is all that is required in such proceedings. *Brannon v. State,* 428.

68. Upon his trial for unlawfully carrying a pistol, the accused sought to exculpate himself under the exception to the statute, that the pistol was carried on his own premises. The proof was that the premises on which the pistol was carried was the joint inheritance of the wife of the accused and one M., but that it was occupied by M., and not by the accused or his wife. *Held* that the proof did not bring the premises within the exception. *Id.*

69. If on an appeal from a justice's court to the county court the appeal bond conforms substantially to the requirements prescribed therefor by Article 854 of the Code of Criminal Procedure, it is sufficient, whether in literal compliance with them or not. *Cyechawaich v. State,* 430.

70. Matters of form in an indictment or information are amendable before both parties announce ready for trial upon the merits, but not thereafter. Allegations as to the court and term at which the indictment was presented are matters of form, and amendable, subject to the above limitations. *Osborne v. State,* 431.

71. Over objection by the defense, the trial court permitted the State to substitute, by amendment, the words "fourth Monday" in place of "first Monday," where the indictment designated the commencement of the term at which the indictment was presented. Prior to the allowance of the amendment, both the State and the defense had announced ready for trial on the merits, but the defendant had not been arraigned, nor had he pleaded to the indictment. *Held,* that the allowance of the amendment, after such announcement by both parties, though before arraignment or plea, was erroneous, because in contravention of Article 550 of the Code of Criminal Procedure; but, as the defect was in a matter of mere form, and as no exception therefor was taken to the indictment, the error was cured by the verdict, and is not cause for reversal. *Id.*

72. In organizing a jury in a capital case, the name of one C., which was the eighth on the copy of the venire served on the defendant, was reached and called, when the sheriff informed the court that C. had not been summoned; whereupon the court, over objection by the defense, proceeded to complete the panel out of the remaining veniremen. The defense waived nothing and reserved exceptions. *Held,* that the action of the court was without authority of law, and in derogation of valuable rights guaranteed to the defendant by Articles 617 and 640 of the Code of Criminal Procedure. The court should either have suspended the proceedings until the said C. should be brought in, or a new *venire facias* in lieu of the first one should have been issued, and the organization of the jury accomplished *de novo. Id.*

**PRACTICE—**_continued._

73. "Lying in wait" is evidence of express malice, and one of the standard illustrations thereof; but the code of this State nowhere provides that a murder committed while lying in wait is _per se_ murder in the first degree. It is error, therefore, to instruct a jury to the effect that a murder so committed is _per se_ murder in the first degree. _Id._

74. It was agreed in this case that the appellant should be tried upon her bond, and judgment was rendered against both the appellant and her sureties. _Held,_ error as to the sureties, but as to appellant the judgment is affirmed. _Huffman v. State,_ 491.

75. The trial court has authority to require the sheriff, upon application of the prosecuting counsel, to so amend his return upon the special venire as to show the diligence used by him in attempting to obtain service upon the veniremen not summoned. _Rodriguez v. State,_ 503.

76. It is not required that every person drawn as a juror upon a special or other venire shall be summoned, but only that the sheriff shall exercise reasonable diligence to summon them. An accused is not entitled to process for veniremen not summoned. _Id._

77. Intellectual weakness or impotent or feeble comprehension of a witness constitutes an exception to the general rule that leading questions can not be propounded. See the opinion for circumstances under which it is _held_ that the rule in the first instance was not infringed, and that, while infringed in the second instance, it was without prejudice to the accused, and therefore does not constitute reversible error. _Id._

78. It is a well settled rule of practice that it is only when an impugned witness has denied, either directly or by qualification, having made statements contradictory of his or her testimony upon the trial, that proof of such statements is admissible. _Id._

79. Trial judges are prohibited by statute from discussing or commenting upon evidence of disputed admissibility, and are required to decide simply whether the proposed evidence is admissible. But the error in this case is immaterial, inasmuch as the proposed evidence was rejected, and the remarks of the judge could not have influenced the jury nor have prejudiced the defendant. _Id._

80. Before reading his charge in this case to the jury, the trial judge, in the presence of the jury, announced to the counsel for the defense, that he would enforce the rules laid down by the Court of Appeals with reference to exceptions on trial to the charge. _Held,_ that such action was not error. _Held,_ further, that, while the action of the court in requiring the defendant's counsel to point out specifically his objections to the charge, at the time it was given, was error, it became immaterial in view of the fact that the counsel subsequently obtained complete bills embodying his said exceptions. _Tucker v. State,_ 512.

81. A third application for continuance was properly refused the defendant in this case, in view of the fact that he adduced upon the trial from other sources, the substance of the alleged absent testimony. _Id._

82. Defendant in a murder case applied for a change of the venue, alleging that such prejudice against him existed in the county of the forum that he could not get a fair and impartial trial in that county,

PRACTICE—*continued*.

and in support of the application he filed the affidavits of three compurgators. Resisting the motion, the State assailed the means of knowledge of the defendant's compurgators and alleged that their residence in the county and acquaintance with its citizens were not such as warranted their representions; and the testimony of seven well known citizens sustained the issue tendered by the State. *Held* that no error is apparent in the overruling of the application for a change of the venue. It was not incumbent on the trial court to call the defendant's compurgators and examine them as to their means of knowledge. *Scott v. State*, 521.

83. This court will not revise the refusal of a continuance by the court below, unless a bill of exceptions thereto appears in the record. *Id.*

84. It is competent to impeach the testimony of a witness by showing that it conflicts with his previous testimony before the grand jury. Ruby's case (9 Texas Ct. App., 353) holds otherwise, but on this question was overruled in Clanton's case, 13 Texas Court of Appeals, 139. *Id.*

85. Oral testimony of the contents of telegraphic dispatches sent by or at the instance of an accused is not admissible until the failure to produce the better evidence is satisfactorily accounted for. *Chester v. State*, 577.

86. It was error to admit in evidence telegraphic dispatches purporting to be replies to telegrams sent by witnesses (in this case at the instance of defendant), inasmuch as the accused has the constitutional right to be confronted by the witnesses against him;—and especially does this rule obtain in the absence of proof that such dispatches were the acts of the parties purporting to send them. *Id.*

87. See the statement of the case for evidence *held* sufficient to qualify a witness as an expert in hand writing. *Id.*

88. In permitting the written documents used by the expert witness as standards of comparison to go into the hands of the jury, to be by them used as proof of the hand writing on the alleged forged instrument, the trial court erred. *Id.*

89. The legal meaning of the word "willful" should, ordinarily, when it enters into the description of the offense, be given in charge to the jury. Such, however, is not the rule when willfulness is comprehended in the other concomitants of the forbidden act. *Wheeler v. State*, 598.

90. A justice of the peace is a county officer within the purview of Article 103 of the Penal Code. See the opinion for the distinction between this and the case of Edwards v. The State, 2 Texas Court of Appeals, 525. *Crump v. State*, 615.

91. See the opinion for the substance of a charge of the court *held* erroneous. But in view of the evidence in the case, and the failure of the appellant to except to the charge at the proper time, the error is immaterial. *Id.*

92. An erroneous charge of the court in a misdemeanor case is not cause for reversal, unless the same was excepted to when it was given. *Burns v. State*, 641.

93. See the statement of the case for evidence, which, in view of the

PRACTICE—*continued.*

other facts in proof, should have been admitted on the trial of the accused for an aggravated assault. *Id.*

94. A general combination of citizens to suppress crime generally is not such an influential combination as is contemplated by Article 578 of the Code of Criminal Procedure, which specifies the grounds upon which a change of venue may be awarded. The obnoxious combination must be one directed against the person accused in the particular case. *Cravey v. State,* 677.

95. Such prejudice as is contemplated by the statute, *supra,* is not shown by proof that the commissioners court of the county of the forum with or without authority, previous to the trial or indictment of the accused, had appropriated funds for the employment of special counsel to aid generally in the prosecution of offenders. *Id.*

96. The merit of an application for a change of venue is to be determined by the trial court. If the State has joined issue with the accused, and witnesses *pro* and *con* are introduced, the trial judge has the right to interrogate and examine them. *Id.*

97. If, upon a trial for theft, the trial court admits proof of contemporaneous and contiguous thefts of other property, it becomes the imperative duty of the trial judge, in his charge, to limit and restrict such proof to its legitimate purpose, and omission to do so is fundamental error. *Id.*

98. A capias issued by a justice of the peace of one county, for the arrest of an alleged offender, can not be legally executed in another county until the same has been endorsed as required by Articles 237 and 238 of the Code of Criminal Procedure, and, even when so endorsed, it must be executed by the proper officer of the county of the arrest. *Peter v. State,* 684.

## PRACTICE IN THE COURT OF APPEALS.

*See* EVIDENCE.

PLEADING, 20.

1. Moreover, the statute of this State (Code Crim. Proc., arts. 840 and 841) dispenses with the appearance before the Court of Appeals of a person appealing from a criminal conviction, if he be confined in jail, and requires the confinement in jail, pending appeal, of any person convicted of a felony. *Tooke v. State,* 10.

2. As shown by the verdict in this case, the jury assessed the punishment of the appellant at a fine of ten dollars. The recital in the judgment that the fine assessed was five dollars being evidently a clerical mistake, this court reforms the judgment to conform to the verdict of the jury. *Short v. State,* 312.

3. As cause for reversal on appeal, however, it must not only appear that the defendant suffered prejudice by reason of the refusal of the continuance by the trial court, but it must be reasonably probable that the absent testimony would induce a verdict more favorable to the appellant. *Covey v. State,* 388.

4. At the last term of this court the appeal in this case was dis-

PRACTICE IN THE COURT OF APPEALS—*continued.*
missed because the record failed to show notice of appeal in the court below. The *certiorari* to perfect the record, subsequently awarded, discloses that, in fact, notice of appeal was given in the court below. *Held* sufficient to reinstate the appeal in this court. *Davis v. State,* 637.

PREDICATE.
1. As a predicate for the introduction in evidence of a dying declaration, the State must prove, first, that the deceased, when he made it was conscious of approaching death, and believed there was no hope of his recovery; second, that the declaration was voluntarily made, and not through the persuasion of any person; third, that it was not made in answer to interrogatories calculated to lead deceased to make any particular statement; and, fourth, that the deceased was of sane mind at the time of making the declaration. See the opinion of the court for a predicate *held* insufficient to prove the first of the above requisites; wherefore the dying declaration was erroneously admitted. *Ledbetter v. State,* 247.
2. The uttering of insulting words by the deceased about a female relative of the slayer, though they were not uttered in the presence of the slayer, is adequate cause to reduce a homicide to manslaughter, provided the slayer was informed of the utterance of the insulting words, and slew the deceased upon the first meeting after being so informed. But, before the slayer can prove the utterance of the insulting words in mitigation of the homicide, it devolves upon him to establish a complete predicate by showing that he was informed of the utterance of the insulting words before he killed the deceased, and that he killed him on the first meeting thereafter. Proof that the insulting words were communicated to the slayer is not enough to establish a predicate; it must go farther and show that the killing occurred upon the first meeting of the parties. *Howard v. State,* 265.
3. Predicate sufficient to admit in evidence the written testimony of an absent witness taken upon the examining trial is laid when it is shown that the absent witness either lives out of the State or that he has removed beyond the limits of the State. In this case it was shown that the absent witness was an officer in the United States army; that he was temporarily on duty in the State at the time of the examining trial; that his command, at that time, was stationed in the Indian Territory; that since the examining trial he had left this State to go to the post where his command was stationed, and that, since his departure, the witness proving the predicate had received a telegram from him announcing his arrival at his post. *Held,* a sufficient predicate to admit his written testimony. *Conner v. State,* 378.

PRINCIPAL OFFENDERS.
1. Appellant and two other prisoners conspired to escape from jail, and arranged that C., who was one of them, should secure and detain the jailer in the corridor while the escape should be effected. No understanding to kill or injure the jailer, otherwise than by his detention,

PRINCIPAL OFFENDERS—*continued.*

was expressly proved, but the conspirators had obtained and prepared a piece of iron with which the jailer was killed by C., and it had been concealed by the appellant the morning previous to the homicide. C. killed the jailer in the corridor of the jail, and whilst the appellant and the other prisoner were locked up in their cell and thus disabled from assisting C. in the homicide. There was no proof that appellant by word or gesture encouraged C. to kill the jailer. *Held* that on this state of case the question arises whether the appellant was a principal in the homicide, and the test of that question is whether he and C. acted together, and whether the act was done in pursuance of a common design and purpose wherein their minds had agreed. *Kirby v. State*, 13.

2. It is contended for appellant that the conspiracy extended no further than the escape, and did not contemplate the killing of the jailer, or the infliction of bodily injury upon him beyond his mere detention, and that the killing was the individual and independent act of C. alone, perpetrated without appellant's knowledge or complicity, and without ability on his part to prevent it. But *held*, in view of the nature and object of the conspiracy, and of the preparation and use of a deadly weapon as a means to execute the common design, that the homicide was not the independent act of C. alone, but was the act of each and all the conspirators, because it was directly incident to and grew out of the common design of all. See the opinion *in extenso* on the amenability of co-conspirators for the acts of each other done in the execution of an unlawful thing. *Id.*

PRIVILEGE OF COUNSEL.

The statement by the State's counsel in the concluding argument that seven good men had contributed to the employment of special prosecuting counsel, and that he could have proved certain facts with regard to which the court excluded evidence, had not the defendant objected, was an abuse of the privilege of argument which not only called for the condemnation of the trial court, but which would, of itself, work a reversal of the conviction. *Clark v. State*, 260.

"PROPERTY."

"Property," as defined in Article 732, Penal Code, includes any and every article commonly known and designated as personal property, and money certainly is commonly so known and designated. Money, therefore, is "property" within the meaning of Article 219 of the Code of Procedure, by which the venue of prosecutions for embezzlement is regulated. *Brown v. State*, 214.

"PROOF EVIDENT."

*See* BAIL, 4.

1. In this case the court renounces the ruling in Foster's case, 1 Texas Court of Appeals, 625, to the effect that bail should be refused in a capital case if the judge would sustain a capital conviction found by a jury upon such evidence as that adduced before him. A better test is

**"PROOF EVIDENT"**—*continued*.

that announced in McAnally's case, 53 Alabama, 495, viz: "If the evidence is clear and strong, leading a well guarded and dispassionate judgment to the conclusion that the offense has been committed, that the accused is the guilty agent, and that he will probably be punished capitally if the law be administered, bail is not a matter of right." *Ex parte Smith*, 100.

2. See the dissenting opinion of Hurt, Judge, controverting the ruling formulated in the first headnote, and maintaining that the general rule favors the right to bail in all cases except capital cases in which the "proof is evident,"—that in cases of this character the State stands on the exception and must establish it,—that the true issue is whether or not the "proof is evident" that the applicant is guilty of a capital offense, and of this issue the State has the affirmative and the burden of proof;—that the indictment, even if its allegations proved anything, can have no bearing upon this issue, inasmuch as it does not allege that the "proof is evident" of the capital offense charged;—that the presumption of innocence avails the accused in this as well as on his trial upon the indictment;—and, therefore, that the applicant is entitled to bail unless the State shows, by evident proof, that he is guilty of the capital offense charged against him. Note the dissenting opinion *in extenso* for an exhaustive discussion of these positions and of those announced in the opinion rendered by a majority of the court. *Id.*

## Q.

**QUALIFICATION OF WITNESSES.**
   *See* WITNESS.

## R.

**RAPE.**

1. In this State the common law rule in rape cases obtains, that neither the particulars of the injured female's complaint nor the name of the person she mentioned as the offender can be proved as original evidence, though they may be brought out by the defendant, if he chooses, upon cross examination. Under this rule the trial court erred in permitting the State to prove the particulars of the complaint made by the prosecutrix and the name she gave as that of the person who assaulted her. *Holst v. State*, 1.

2. Although the statute (Penal Code, art. 528) contains but one general definition of rape, it embraces two separate offenses: 1. rape when committed upon "a woman," and, 2, rape when committed upon "a female under the age of ten years." *Nicholas v. State*, 317.

3. In order to constitute a rape of the first class, that is, rape of "a woman," it is essential that the offense was committed by the means of "force, threats, or fraud, and without the consent" of the woman. It is not necessary in such case to allege or prove that the woman raped was over the age of ten years, and if such an allegation be contained in the indictment, it need not be proved, inasmuch as the offense would be complete without the words "over the age of ten years." *Id.*

RAPE—*continued.*

4. Rape of the second class, that is, rape of "a female under the age of ten years," comprehends none of the elements of rape of the first class, *e. i.*, force, threats, fraud, or non-consent; but carnal knowledge is, in itself, *ipso facto* rape. *Id.*

5. "Duplicity in an indictment is the joinder of two or more distinct offenses in a single count"—a pleading tolerated in criminal practice only in rare exceptional cases. Whether or not offenses are to be treated as distinct depends upon whether or not they are embraced within the same general definition, and punishable in the same manner. If they are, then they are not distinct offenses, and may be charged in a single count in the same indictment. *Id.*

6. Although in this State the general definition of rape covers both classes of the offense, and although the punishment is the same in each class (Penal Code, art. 524), yet the two classes are essentially distinct in their constituent elements. *Quære*, can the two classes of rape as defined by our statute be joined, as in this case, in a single count? But note that the defendant failed at the proper time to move to quash the indictment, and, in any event, under the general rule that, if duplicitous, an indictment will not be quashed on that ground after verdict, the defendant can not now be heard to complain. *Id.*

7. If the indictment charges that the carnal knowledge was obtained by means of force, threats, or fraud, it charges a rape, whether perpetrated upon a female under or over the age of ten years, and if the indictment also contains an averment of non-age, the same may be treated as surplusage and eliminated. In this case the proof showed the female alleged to have been raped to be over the age of ten years, and the defendant requested the trial court to charge the jury, in substance, that, the indictment charging the non-age of the prosecutrix at the time of the offense, the defendant was entitled to an acquittal if the jury believed from the evidence that she was then over ten years old. The trial judge refused the special charge "because the indictment alleges that the offense was committed by means of 'force and threats' on the part of defendant, and the allegation of age of the prosecutrix or injured female is not of that descriptive character which requires corresponding proof the State having proved force and threats." *Held*, that the ruling was correct, and the special charge was properly refused. *Id.*

8. See the statement of the case for evidence *held* insufficient to support a conviction for rape. *Id.*

9. Evidence sufficient to support a conviction for rape. *Grate v. State*, 458.

REASONABLE DOUBT.
See CHARGE OF THE COURT, 49.
MURDER, 36.
The true rule upon the doctrine of reasonable doubt as applied to murder of the second degree is that the inculpatory proof must show beyond a reasonable doubt the *absence* of the mitigating, excusing or justifying facts. *White v. State*, 154.

RECEIVING STOLEN PROPERTY.

1. The charge in the indictment being that the appellant received the property from one Noon Tucker, knowing that the same was stolen by the said Noon Tucker, the theft of the property by the said Noon Tucker became an essential issue in the case, and, as tending to es- tablish that issue, the court properly permitted a State's witness to testify that when he saw the said Noon Tucker in possession of the said property, he questioned the said Noon as to his title, and the said Noon replied that he had raised it. The failure of the trial court, in its charge to the jury, to limit and restrict such evidence became immaterial in view of the defendant's failure to except to such omission, and in view of the fact that the omission could not prejudice his rights. *Tucker v. State*, 512.

2. See the statement of the case for evidence *held* sufficient to support a conviction for receiving stolen property knowing it to be stolen. *Id.*

3. See the opinion *in extenso* for evidence adduced on a trial for re- ceiving stolen property, knowing it to have been stolen, which, being hearsay testimony, should have been excluded. *Estes v. State*, 600.

4. See the statement of the case for evidence *held* insufficient to sup- port a conviction for receiving stolen property, knowing it to be stolen. *Id.*

REINSTATEMENT.

At the last term of this court the appeal in this case was dismissed be- cause the record failed to show notice of appeal from the court below. The *certiorari* to perfect the record, subsequently awarded, discloses that, in fact, notice of appeal was given in the court below. *Held*, suffi- cient to reinstate the appeal in this court. *Davis v. State*, 637.

REPUGNANCY.

1. Under the practice of this State a general verdict responds suffi- ciently to an indictment containing two good counts, and is likewise sufficient under an indictment containing one good and one bad count, inasmuch as it will be assignable to the former. See the opinion *in ex- tenso* on the doctrine of repugnancy. *Boren v. State*, 28.

2. It is not essential that an indictment for forgery shall set out the forged instrument both by its purport and its tenor; nor is it necessary that it shall set out the name of the person intended to be defrauded, the allegation of the intent to defraud being sufficient. If, however, the indictment sets out the alleged forged instrument, both by its purport and its tenor, any repugnancy between the two allegations is fatal to the indictment. The "purport" clause in the indictment in this case alleges the name of the injured party to be "C. J. Chapman," whereas the "tenor" clause alleges the name to be "C, J. Chatman." *Held*, that the repugnancy is fatal. *Westbrook v. State*, 401.

RES GESTÆ.

If inculpatory declarations of a defendant were *res gestæ*, they are competent evidence against him, notwithstanding they would be incom-

RES GESTÆ—*continued.*

petent as confessions because he was in arrest when he made them. See the eighth subdivision of the opinion of the court in elucidation of this important distinction. *Powers v. State*, 42.

RESTORATION OF JURISDICTION.
*See* JURISDICTION.

RETREAT.
*See* MURDER, 3.

REVOCATION.

A pardon once delivered by the grantor and accepted by the grantee or his agent can not be revoked by the authority which granted it. *Rosson v. State*, 281.

RIOT.

Article 295 of the Penal Code provides that "if the persons unlawfully assembled together do or attempt to do any illegal act, all those engaged in such illegal act are guilty of riot." *McGehee v. State*, 330.

## S.

"SALOON."
*See* PLAYING CARDS.

SCHOOL TEACHERS.

The law confides to teachers a discretionary power to punish their pupils, and exonerates them from responsibility unless the punishment be excessive or malicious. Moderate restraint and correction of a pupil by his teacher is not an offense, but is authorized by law; and it seems that the authority of a teacher is not limited to the time the pupil is at the school room or under the actual control of the teacher. *Bolding v. State*, 172.

SELF DEFENSE.
*See* CHARGE OF THE COURT, 13.

1. It is a part of the law of self defense under the code of this State that an assailed party is not bound to retreat in order to make good his right of self defense. Failure to so charge the jury will not of itself necessitate reversal, in the absence of exception, unless under all the facts of the case, the omission to so charge was calculated to injure the rights of the accused. The omission in this case, not having been excepted to, and being in no wise calculated to prejudice the accused, was not reversible error. *White v. State*, 154.

2. An established rule upon the right of self defense, when the slayer provoked the occasion for the killing, is as follows: "If he (the slayer) provoke the contest, or produce the occasion, in order to have a pretext for killing his adversary, or doing him great bodily harm, the killing will be murder, no matter to what extremity he may have been

SELF DEFENSE—*continued*.

reduced in the combat. But if he provoked the combat or produced the occasion, without any felonious intent—intending, for instance, an ordinary battery merely—the final killing in self defense will be manslaughter only." *Id.*

3. It is an equally well established rule that "no words nor libelous publications, however aggravating, will compromit a slayer's right of defense, if in consequence of the same he is attacked; for no words, of whatsoever nature, will justify an assault." *Held* that, under this rule, and in view of the evidence, the trial court erred in refusing the defendant's requested instruction to the effect that threats made by defendant against deceased did not operate to deprive defendant of his right of self defense. *Id.*

4. The trial court instructed the jury in effect that, to constitute justification on the ground of self defense, the act must have been done "in fact in self defense, and not merely colorably so." *Held* erroneous, because subversive of the right of self defense resulting from reasonable expectation or fear of death or serious bodily injury, and because it absolved the jury from their duty to view the circumstances from the standpoint of the defendant at the time. *Spearman v. State,* 224.

5. In a trial for murder this appellant was convicted of manslaughter upon evidence which showed that the deceased, as appellant knew, had threatened to kill him if he should ever speak to him, and that, the deceased having dropped some coins, the appellant spoke to him and called his attention to one of them; whereupon the deceased, calling appellant a d—d son of a bitch, replied that he had told and sent him word not to speak to him. Appellant, saying "all right," went out of the back door of the house, and then called to him a relative of the deceased, and in their ensuing conversation said he could "not stand this," and that he would "kill him." Deceased, still in the house, commenced whittling, and was apparently listening, and soon, closing his knife and putting it in his pocket, walked towards where appellant was, and when he got about a third of the way, he took his knife out of his pocket and seemed to be opening it. Proceeding to and having passed out of the back door, he was shot and killed by appellant. A pocket knife, partly open, lay close by deceased on the ground, after he was shot. The trial court did not give in charge to the jury the law of self defense, and rejected a requested instruction on that subject. *Held,* that the evidence fairly raised the issue of self defense, and the defendant was entitled not only to have all relevant circumstances, whether anterior to or contemporaneous with the killing, put in evidence, but also the law of self defense given in charge to the jury. *Wheelis v. State,* 238.

6. The charge upon self defense failed to instruct that reasonable appearances of danger must be judged of from the standpoint of the accused; but the defense asked no special charge to that effect, and the charge given presented the law applicable to the facts in proof. *Held,* no reversible error. *Conner v. State,* 378.

SERVICE OF PROCESS.
A capias issued by a justice of the peace of one county, for the arres-
of an alleged offender, can not be legally executed in another county
until the same has been endorsed as required by Articles 237 and 238 of
the Code of Criminal Procedure, and even when so endorsed, it must
be executed by the proper officer of the county of the arrest. *Peter v*
*State*, 684.

SHERIFF'S RETURN.
*See* AMENDMENT, 1.
SPECIAL VENIRE, 1.

SPECIAL JUDGE.
The statutes of this State confer upon a special judge "all the
power and authority of the judge of said court, during such continued
absence or inability (of the regular judge), and until the completion of
any business begun before such special judge." Pending the examina-
tion of the witnesses in this cause, the special judge before whom it was
tried suspended the trial until the night of the succeeding day, and left
the county and district. On his return and resumption of the trial, the
defense moved to stay the proceedings and discharge the jury, on the
ground that the adjournment of the trial was *ultra vires*, and that the de-
parture of the judge from the county and district had terminated his
functions and vacated his office. *Held* that the action of the special
judge was not *ultra vires* nor in violation of any law; and consequently
the motion of the defense was properly overruled. *Powers v. State*, 42.

SPECIAL VENIRE.
1. In the return of a sheriff upon a special venire, he set down in
a column the names of twelve of the veniremen, and opposite the first
name wrote "not found after diligent search." Under this and opposite
each of the other names he put ditto marks, to indicate the same return
as to them. The defense moved to quash the writ because the return did
not, as required by the Code of Procedure, Article 614, state the diligence
used to summon the said veniremen and the cause of the failure to do
so. The trial court permitted the sheriff to amend his return so as to
show that each of said twelve veniremen had moved out of the county or
was absent from it. The defense excepted to the overruling of the motion
to quash, and also to the amendment of the return, and to the sufficiency
of the return as amended. *Held*, that the amendment was properly al-
lowed, and none of the objections are tenable. *Powers v. State*, 42.
2. In organizing a jury in a capital case, the name of one C., which
was the eighth on the copy of the venire served on the defendant, was
reached and called, when the sheriff informed the court that C. had
not been summoned; whereupon the court, over objection by the de-
fense, proceeded to complete the panel out of the remaining veniremen.
The defense waived nothing and reserved exceptions. *Held*, that the
action of the court was without authority of law, and in derogation of
valuable rights guaranteed to the defendant by Articles 617 and 640 of

SPECIAL VENIRE—*continued.*

the Code of Criminal Procedure. The court should either have suspended the proceedings until the said C. should be brought in, or a new *venire facias* in lieu of the first one should have been issued, and the organization of the jury accomplished *de novo.* *Osborne v. State,* 431.

3. The trial court has authority to require the sheriff, upon application of the prosecuting counsel, to so amend his return upon the special venire as to show the diligence used by him in attempting to obtain service upon the veniremen not summoned. *Rodriguez v. State,* 503.

4. It is not required that every person drawn as a juror upon a special or other venire shall be summoned, but only that the sheriff shall exercise reasonable diligence to summon them. An accused is not entitled to process for veniremen not summoned. *Id.*

STATEMENT OF FACTS.

1. Certificates given to authenticate depositions, or testimony taken at coroner's inquests or examining trials, are not necessary or even proper matters to be incorporated in a statement of facts. *Kirby v. State,* 13.

2. Charge of the court, in the absence of a statement of facts, can be considered on appeal only with reference to fundamental errors. If it conforms to the indictment it must be presumed that it responded to the evidence adduced on the trial. *Wade v. State,* 308.

SUBSTITUTION OF LOST PAPERS.

The fraudulent alteration of a date in an affidavit or complaint amounts to a mutilation of the same, and is a mutilation of the information. The only remedy available in such case is by substitution of the complaint and information, in the manner provided by Article 434, of the Code of Criminal Procedure. *Huff v. State,* 291.

SUNDAY LAW.

1. See the statement of the case for evidence *held* insufficient to support a conviction for selling intoxicating liquors on Sunday,—the statutory inhibition not extending to the *gift* of intoxicating liquors on Sunday. *Keller v. State,* 259.

2. The prosecution was for selling whisky on Sunday. It is in proof that the beverage sold was "whisky cocktail," a compound in which whisky was the predominant element. *Held,* that the sale was of "whisky" within the purview of the statute, and that there was no variance between the allegation and the proof. *Galloway v. State,* 398.

SURPRISE.

In a prosecution for keeping and exhibiting a gaming table, it appears that at a previous trial the prosecuting witness swore that the offense was committed in a certain saloon, but at this trial he swore that it was committed at a different saloon and locality. The defenset claiming surprise at this change in the witness's testimony, moved for a postponement or continuance of the case, to enable the defense to procure the testimony of certain witnesses who would disprove the charges

SURPRISE—*continued.*

in the indictment. *Held* that under the circumstances the trial court erred in overruling the motion and forcing the defendant to trial. *Withers v. State*, 396.

SWINDLING.

Indictment for swindling is insufficient if it fails to allege that the injured party was induced to part with the ownership of the property acquired by the defendant, by means of the false pretenses, etc., alleged in the indictment. *Hightower v. State*, 451.

T.

THEFT.

*See* INDICTMENT, 40.

THEFT FROM THE PERSON.

1. The first count in the indictment alleged the ownership of the stolen property to be unknown, and the second count alleged it to be in one S. The proof sustained the second count. *Held*, that a conviction could be had only under the second count, and therefore the trial court should have confined its charge to that count. *Boren v. State*, 28.

2. See the opinion and the statement of the case for evidence *held* insufficient to support a conviction for theft, because insufficient to support the allegation of ownership. *Groom v. State*, 82.

3. Bill of sale executed by the general owners of the cattle subsequent to the alleged theft of the same from the special owner, was improperly admitted, because irrelevant, and because, not being of record at the time of the theft, it was not evidence of ownership. *Id.*

4. A citizen householder and voter of an unorganized county is a competent juror to serve on juries impaneled in the organized county to which the unorganized county of his residence was attached for judicial purposes. *Id.*

5. In a trial for burglary and theft of oats from the premises entered, it was in proof that oats were found in the defendants's crib. and that he told the searching party that he had bought them from one B. In his defense he relied upon his alleged purchase, and adduced evidence in support of it. The trial court properly instructed the jury with regard to opportune explanation of the possession of recently stolen property, but wholly ignored the defense of purchase relied on by the accused. *Held*, that the charge was insufficient. The defendant denied that the oats found in his crib were stolen, and, on the contrary, claimed to have purchased them; and to this defense the instruction was not directly-relevant, as it should have been. *Bond v. State*. 180.

6. It is the right of a defendant to have the charge of the court make a distinct and affirmative presentation of his issues to the jury, and to have them determined by the jury alone. *Id.*

7. Appellant was tried for burglary and the theft of certain oats which were found in the possession of one Bond, which oats the said Bond, in appellant's presence, claimed to have purchased; and there was evidence in support of this claim of Bond's. *Held* that the trial court, in its charge to the jury, should have affirmatively and pertinently ex-

THEFT—*continued.*

pounded the law both as to opportune explanation of the possession of recently stolen property and as to the defense of purchase of the property, as claimed by Bond, who was jointly indicted with this appellant for the offense. *Shuler v. State*, 182.

8. In a trial for the theft of a "horse," the State was permitted, over objection by the defense, to prove that the animal was a mare. The objection was on the ground of variance between the allegation and the proof. *Held* no variance, and the objection was properly overruled. *Davis v. State*, 210.

9. That the State, over objection, was allowed, in the cross examination of the defendant's wife, to elicit testimony not germane to her evidence in chief, is not reversible error unless the objectionable testimony was calculated to prejudice defendant's rights. *Id.*

10. In a trial for horse theft the State introduced evidence tending to prove that, besides the animal in question, other horses were stolen at the same time and in the same neighborhood; but the trial court omitted to instruct the jury for what purposes the evidence was allowed, and this omission was relied upon in the motion for a new trial. The State's case stood upon circumstantial evidence alone. *Held* that the omission in the charge, though not excepted to nor a proper instruction requested, was calculated to prejudice the rights of the defendant, and is therefore reversible error. *Id.*

11. In a trial for theft, the State, for the purpose of rebutting proof of alibi, proved a statement of defendant that he was not at the wedding of one H., and then, over objection, was permitted to put in evidence the marriage license of H., with the minister's certificate of its solemnization. *Held*, that it was error to admit in evidence the marriage license and certificate, because, with relation to the accused, they were *res inter alios acta.* The proper evidence of the fact of the marriage and its date would have been the testimony of some one who was present when it was solemnized. *Chew v. State*, 230.

12. In order to sustain a prosecution for theft when the taking was originally lawful (Penal Code, art. 727), the proof must show either that the taker obtained the lawful possession of the property by some false pretext, which induced or deceived the owner to surrender the possession of the property to him; or that, at the time he obtained the possession of the property with the consent of the owner, he intended to deprive the owner of the value of the same, and to appropriate it to his own use. *Porter v. State*, 295.

13. Evidence insufficient to support a conviction for theft. *Thompson v. State*, 356.

14. Article 45 of the Penal Code provides that "if a person laboring under a mistake as to a particular fact shall do an act which would otherwise be criminal, he is guilty of no offense." See the statement of the case for evidence which, under this rule, is *held* insufficient to support a conviction for misdemeanor theft. *Donahoe v. State*, 457.

15. The prosecution being for the theft of a horse in B. county on January 19, 1887, the State was permitted to prove, in rebuttal, that the

THEFT—*continued*.

defendant was seen in the city of B., in W. county, on the night of January 31, when another horse than that named in the indictment was there stolen. *Held*, that the said evidence was erroneously admitted, because it was irrelevant and immaterial, involved no issue in the case, and was not in rebuttal of any proof adduced by the defense. *Carter v. State*, 508.

16. Evidence that after his arrest the defendant refused to divulge his name was erroneously admitted, in view of the absence of evidence bringing such proof within the exceptions of Article 750 of the Code of Criminal Procedure. *Id.*

17. For the purpose of establishing identity in developing the *res gestœ*, or to prove guilt by circumstances connected with the theft, or to show the intent with which the accused acted with respect to the property involved in the trial, it was competent for the State to prove the theft of other property of the same kind at the time and place of the offense charged, but the failure of the trial court, in the charge to the jury, to so limit and circumscribe the purpose and effect of such proof was error. *Id.*

18. Theft may be prosecuted either in the county of the original taking or in any county through or into which the thief transported the property. Proof, therefore, that the accused brought the property stolen in another county into the county of the forum will support the venue in the latter. *Clark v. State*, 612.

19. Possession of the servant is possession of the master, and proof that the property was taken from the possession of the servant will support the allegation that it was taken from the possession of the master. *Id.*

20. See statement of the case for evidence *held* sufficient to establish the issue of value both in the county of the original taking and in the county of the forum. In substance the trial court charged that the measure of value was the value of the property at the time of the taking in the county of the taking, and not in the county of the forum at the time it was brought into that county. *Held*, that the converse of the charge is the law, the rule being that "where a party is prosecuted in a county other than that in which the theft was committed, a complete offense must be shown in the county where the conviction was had." See the opinion on the question. *Id.*

21. See the statement of the case for evidence *held* insufficient to support a conviction for cattle theft, because insufficient to establish a fraudulent intent in the taking. *White v. State*, 643.

22. To develop the *res gestœ*, or to establish by circumstances immediately connected with it the theft charged in the indictment, or to prove the intent with which the accused acted with respect to the property charged in the indictment, it was competent for the State to prove the theft of other like property at the same time and place. But the failure of the charge to properly limit and restrict such proof was material error. *Mayfield v. State*, 645.

23. See the opinion *in extenso* for evidence in a theft case *held* inad-

THEFT—*continued.*

missible as hearsay, and, in view of the remaining proof in the case, to constitute such material error as to necessitate a reversal of the conviction. *Montgomery v. State,* 650.

24. Indictment for theft is sufficient as to the allegation of ownership if it alleges that the property stolen belongs to some person unknown to the grand jurors. *McVey v. State,* 659.

25. See the statement of the case for evidence *held* sufficient to support a conviction for horse theft. *Id.*

26. See the opinion for a charge of the court on a trial for cattle theft, *held* erroneous, inasmuch as it authorized a conviction although the evidence should fail to show that the accused had any connection with the original taking. *Curlin v. State,* 681.

27. See the statement of the case for a state of proof which demanded of the trial court a charge to the effect that, in order to raise a presumption against the defendant, because of his possession of the stolen animal, his possession must be shown to be recent. *Id.*

28. In view of the reasonable explanation of his possession given by the accused when his possession was first challenged, the omission of the trial court to instruct the jury as to the legal effect of the explanation was material error. *Id.*

29. See the opinion and the statement of the case for evidence *held* sufficient to establish a conspiracy between the accused and two others to commit the theft, and therefore to have qualified, as evidence, certain statements inculpating the accused, made by the said parties before the consummation of the conspiracy. *Long v. State,* 692.

THEFT FROM THE PERSON.

1. The value of the property privately stolen from the person of another is not a constituent of that offense as defined in Articles 744 and 745 of the Penal Code, nor does it in any wise affect the punishment prescribed for it. Wherefore, in prosecutions for that offense, the value of the stolen property need neither be alleged in the indictment nor established by the proof. See the opinion for an elucidation of this ruling, and for an exposition of the distinctions in these respects between ordinary theft and theft from the person. *Shaw v. State,* 493.

7. In a trial for privately stealing a gold ring from the finger of a lady the defense claimed that the taking was an innocent mistake of the defendant, who mistook the said lady for another one upon whom he designed to perpetrate a joke. See the statement of the case and the opinion of the court for evidence *held* to refute this defense and to sustain the conviction. *Id.*

THREATS.

1. Article 608 of the Penal Code of this State reads as follows: "Where a defendant seeks to justify himself on the ground of threats against his own life, he may be permitted to introduce proof of the threats made, but the same shall not be regarded as affording a justification for the offense, unless it be shown that, at the time of the homicide, the person

Index.

THREATS—*continued*.

killed, by some act then done, manifested an intention to execute the
threats so made." *Held*, that the effect of the said article is not to con-
trol the admissibility of previous threats as evidence in homicide cases,
but only to control the effect of such evidence when the threats are re-
lied upon to justify the homicide. Previous threats, therefore, are *per
se* admissible as independent evidence in homicide cases, and may be
proved without a predicate. *Howard v. State*, 265.

2. The offense defined by Article 813 of the Penal Code is the "*know-
ingly* sending or delivering of a threatening letter," etc.; and the appel-
lant in this case was prosecuted under that article. *Held*, that, the
information charging that appellant knowingly did threaten to "take
the life of Arizona C. Benton, by sending her a threatening letter," etc.,
it does not charge the offense defined by the statute under which the
prosecution was had; wherefore the conviction can not stand. It is not
knowingly threatening, but knowingly sending or delivering a threaten-
ing letter, which constitutes the offense defined in said Article. *Castles
v. State*, 286.

TRANSFER OF CAUSES.

Substantial compliance with the statute regulating the transfer of
causes from the district to the county courts (Code Crim. Proc., art. 435),
is all that is required in such proceedings. *Brannon v. State*, 428.

"TRAVELER."
*See* CARRYING PISTOL.

U.

UNLAWFUL ASSEMBLY.

1. Article 279 of the Penal Code defines an unlawful assembly to be
the "meeting of three or more persons with intent to aid each other by
violence, or in any other manner, either to commit an offense, or illegally
to deprive any person of any right, or to disturb him in the enjoyment
thereof." *McGehee v. State*, 330.

2. Article 289 of the Penal Code provides that, "if the purpose of the
unlawful assembly be to prevent any person from pursuing any labor,
occupation or employment, or to intimidate any person from following
his daily avocation, or to interfere in any manner with the labor or em-
ployment of another, the punishment shall be by fine not exceeding five
hundred dollars. *Id.*

3. See the statement of the case for a count of an indictment *held* suf-
ficient to charge an unlawful assembly. *Id.*

4. Although at the time of the alleged commission of this offense it
was not an *per se* offense to stop the running of a train of cars (Murray
and Anthony v. The State, 21 Texas Ct. App., 620), it was, nevertheless,
under the provisions of Article 279, an offense for two or more persons to
meet and co-operate in preventing the conductor of a railway train from
pursuing his usual avocation and employment of operating the said
train. See the opinion for a charge of the court upon the subject *held*
correct. *Id.*

Index.

UNLAWFUL SALE OF LIQUOR.

1. The offense denounced by Article 110 of the Penal Code consists not in the mere sale of spirituous liquors without license, but in the pursuing of the occupation of selling spirituous liquors without first having paid the occupation tax levied on such avocation. The defense in this case requested a special instruction conforming to this doctrine, and the refusal of which, under the facts in proof, was error. *Williams v. State*, 499.

2. See the opinion *in extenso* for the substance of evidence *held* insufficient to support a conviction for following the occupation of selling spirituous liquors without having paid the tax levied thereon. *Id.*

UNLAWFUL SALE OF LIQUOR TO A MINOR.

1. To support a conviction for the offense of knowingly selling intoxicating liquor to a minor the evidence must show that at the time the liquor was sold the seller knew the purchaser to be a minor. *Williams v. State*, 70.

2. Upon a trial for the unlawful sale of liquor to a minor, the point at issue being the defendant's knowledge of the purchaser's minority, the State was permitted, over objection, to ask a witness if, at the time of the alleged offense, the purchaser, by reason of his physical appearance, would be taken by a person of ordinary observation to be a minor; and the witness was permitted to answer in the affirmative. *Held*, error. *Koblenschlag v. State*, 264.

UNLAWFUL TRAFFIC IN COUNTY CLAIMS.

See the statement of the case for evidence *held* insufficient to support a conviction for unlawful traffic in county scrip, inasmuch as it fails to establish the official character of the appellant as a county officer at the alleged date of the offense. *Huff v. State*, 291.

UTTERING A FORGED INSTRUMENT.
See FORGERY, 8.

VALUE.
See THEFT FROM THE PERSON.

VARIANCE.
See AFFIDAVIT, 1.
    FORGERY, 7.

1. In a trial for the theft of a "horse," the State was permitted, over objection by the defense, to prove that the animal was a mare. The objection was on the ground of variance between the allegation and the proof. *Held*, no variance, and the objection was properly overruled. *Davis v. State*, 210.

2. Variance between affidavit and information as to the date of the offense is fatal to conviction. *Baumgartner v. State*, 335.

3. Mere misplacement of the dot belonging to the letter "i" in set-

VARIANCE—continued.

ting out a proper name, plainly written, in an indictment for forgery, does not constitute a variance. Hennessy v. State, 340.

4. Indictment for forgery alleged that the account in question was approved by "H. Knittel, chairman on the committee on contingent expenses of the senate." The instrument was signed "H. Knittel, chairman on Com. Contg. Exp." Held, that the discrepancy was not a variance, and it was a question of fact whether the signature was an approval of the account, as was alleged by the indictment. Id.

5. An indictment for forgery need not, in setting out the forged instrument, take any notice of writing put upon the instrument subsequent to the forgery. Such writing is no part of the instrument, nor of its description. Id.

6. The prosecution was for selling whisky on Sunday. It is in proof that the beverage sold was "whisky cocktail," a compound in which whisky was the predominant element. Held, that the sale was of " whisky" within the purview of the statute, and that there was no variance between the allegation and the proof. Galloway v. State, 398.

7. The complaint alleges the surname of the accused as McDevro—the information as McDero. Held, that the variance is fatal. McDevro v. State, 429.

VENUE.

1. Embezzlement, like theft, may be prosecuted in any county through or into which the property was transported by the accused, and the fact of transportation may, like any other fact, be proved by circumstantial evidence. See the opinion for circumstantial evidence held sufficient to prove the venue in the county of the forum, which was a different county from that wherein he received the embezzled money. Brown v. State, 214.

2. Appellant's principal lived in B. county, and was engaged in the business of selling and putting up lightning rods anywhere in Texas. He there employed appellant as a traveling agent to sell and put up rods, furnishing him the rods and outfit. Appellant sold and put up rods in R. county, and there received the money for the same. Thence he returned to B. county, where, in a settlement with his employer, he denied that he had received the money, and thus his employer first discovered that he had embezzled it. Held that, at common law and without reference to our code, the proper court of B. county had jurisdiction of the offense, inasmuch as the code, if it does not provide for such jurisdiction, does not exclude it. Id.

3. Proof of the alleged venue of the offense is indispensable, notwithstanding the judge and jury may personally know the locus in quo to be within the jurisdiction of the trial court. Miles v. State, 410.

4. Though the venue of the offense was laid in Scurry county, the trial court instructed the jury that the venue was sufficiently proved if the locus in quo was shown to be in either Kent county or Garza county, which were unorganized counties attached to Scurry county for judicial purposes. Held, error. Such proof would not sustain the allegation of

**VENUE—**_continued._

venue made in the indictment; and if the offense was committed in one of said attached counties, the indictment should have so alleged. _Id._

5. Venue is an affirmative allegation which must be proved. _McDevro v. State_, 429.

6. Defendant in a murder case applied for a change of the venue, alleging that such prejudice against him existed in the county of the forum that he could not get a fair and impartial trial in that county, and in support of the application he filed the affidavits of three compurgators. Resisting the motion, the State assailed the means of knowledge of the defendant's compurgators and alleged that their residence in the county and acquaintance with its citizens were not such as warranted their representions; and the testimony of seven well known citizens sustained the issue tendered by the State. _Held_ that no error is apparent in the overruling of the application for a change of the venue. It was not incumbent on the trial court to call the defendant's compurgators and examine them as to their means of knowledge. _Scott v. State_, 521.

7. A general combination of citizens to suppress crime generally is not such an influential combination as is contemplated by Article 578 of the Code of Criminal Procedure, which specifies the grounds upon which a change of venue may be awarded. The obnoxious combination must be one directed against the person accused in the particular case. _Cravey v. State_, 677.

8. Such prejudice as is contemplated by the statute, _supra,_ is not shown by proof that the commissioners court of the county of the forum, with or without authority, previous to the trial or indictment of the accused, had appropriated funds for the employment of special counsel to aid generally in the prosecution of offenders. _Id._

9. The merit of an application for a change of venue is to be determined by the trial court. If the State has joined issue with the accused, and witnesses _pro_ and _con_ are introduced, the trial judge has the right to interrogate and examine them. _Id._

**VERDICT.**

1. Under the practice of this State a general verdict responds sufficiently to an indictment containing two good counts, and is likewise sufficient under an indictment containing one good and one bad count, inasmuch as it will be assignable to the former. See the opinion _in extenso_ on the doctrine of repugnancy. _Boren v. State_, 28.

2. In this case it is complained that the verdict of conviction was, under order of the court, received and entered on the minutes on the Sabbath day, and that, in the absence of the defendant, the judgment was rendered on the succeeding day. _Held_, that a verdict may lawfully be returned and entered on Sunday, and that the presence of the defendant is not necessary when the judgment of conviction is entered by the clerk. _Powers v. State_, 42.

3. The trial courts of this State have the power to reject an informal or illegal verdict, and such a verdict can not be held to operate as

**VERDICT**—*continued.*

an acquittal unless the intention of the jury to acquit is apparent. Likewise, informal verdicts may be amended under the direction of the court. *Robinson v. State,* 315.

4. The award of a new trial because of an informal or illegal verdict places the case in the same condition as if no trial had been had. *Id.*

5. Neither jeopardy nor former acquittal are such pleas as can be interposed by a defendant at a subsequent trial upon a showing that his conviction on his former trial was set aside by the trial court because of an illegal verdict. *Id.*

6. With regard to the punishment for cattle theft, the trial court instructed the jury that it was "not less than two nor more than five years," but failed to instruct that it should be by confinement in the penitentiary. The verdict assessed the punishment at "confinement in the penitentiary for two years." The charge of the court was not excepted to. *Held* that the omission in the charge is not fundamental, nor even reversible, error, inasmuch as it is obvious that it neither misled the jury nor prejudiced the accused. So far as this ruling may conflict with that of this court in Hamilton's case, 2 Texas Court of Appeals, 494, the latter case is overruled. *Pitner v. State,* 366.

**VOLUNTARY STATEMENTS.**

1. The Code of Criminal Procedure, Article 774, places testimony taken at an inquest in the same category as testimony taken at an examining trial, and the same rules govern the admissibility of both; wherefore the confession of a prisoner to a coroner's inquest is competent evidence against him if, as provided in Article 750, it was made in his voluntary statement taken in accordance with law, or was made voluntarily after having been cautioned that it could be used against him, etc. Articles 261 and 262 prescribe the mode of taking and authenticating such a voluntary statement "in accordance with law," and require that it be made before any witness be examined, and be signed but not sworn to by the accused. *Kirby v. State,* 13.

2. Appellant being on trial for the murder of his jailer, the State was allowed, over objection, to put in evidence his statement to the coroner's inquest, which statement, as shown by the magistrate's certificate, was made after due caution that it could be used against him. It does not appear that he was in arrest or under accusation when he made the statement, but it is inferred that he was then suspected by the magistrate, and was therefore cautioned, though treated as a witness and sworn to his statement. *Held,* that the statement is not "a confession made in the voluntary statement of the accused," and its admissibility depends upon whether it was "made voluntarily after having been first cautioned that it may be used against him." *Id.*

3. The Code of Criminal Procedure prescribes no form in which must be given the "caution" that a voluntary statement may be used in evidence against the maker. The caution is sufficient if the maker of the statement be warned that so much of it as is inculpatory of himself may be used against him. His silence or refusal to testify could not be used against him as a confession. *Id.*

VOLUNTARY STATEMENTS—*continued.*

4. In view of the ample caution given appellant in this case, and of his subsequent declaration that he was willing to tell all he knew in regard to the killing, and of his signing and swearing to his statement, the statement must be regarded as clearly a "voluntary statement;" and the trial court committed no error in admitting it as evidence for the State. *Id.*

## W.

WITNESS.

1. Article 730 of the Code of Criminal Procedure provides as follows: "Children or other persons who, after being examined by the court, appear not to possess sufficient intelligence to relate transactions with respect to which they are interrogated, or who do not understand the obligation of an oath, are incompetent witnesses." See the opinion *in extenso* for circumstances under which it is *held* that the prosecuting witness was incompetent to testify, because, even if intelligent enough to relate the transaction, she was not sufficiently intelligent to understand the obligation of an oath. *Holst v. State*, 1.

2. The Constitution of this State (Bill of Rights, sec. 10) guarantees to any one accused of crime the right to have compulsory process for his witnesses, and of this right it is not in the power of the legislature to deprive him. In so far, therefore, as the act of the Eighteenth legislature "to provide for the payment of attached witnesses in felony cases" deprives a defendant of his right to an attachment for his absent witnesses, that act is unconstitutional and void. *Homan v. State*, 212.

3. The Penal Code of Texas defines "felony" to be "every offense which is punishable with death, or by imprisonment in the penitentiary, either absolutely or as an alternative," and provides that all forgeries are punishable by confinement in the penitentiary; wherefore, all forgeries in this State are felonies, and, as such, under the Constitution of this State, can only be prosecuted by indictment. The Code of Procedure (Art. 730) disqualifies as witnesses "all persons who have been or may be convicted of felony in this State, *or in any other jurisdiction,*" unless pardoned, etc. Relying upon this latter provision, the defense in this case, for the purpose of disqualifying a State's witness, offered a certified copy of a judgment of a circuit court of the State of Kansas which showed that, upon an information, a man bearing the same name as the witness had been convicted of forgery in the second degree, and therefore had been sentenced to a term in the penitentiary. The State objected to the judgment because it neither showed that forgery was a felony in Kansas, nor that the witness had been convicted of a felony. The trial court sustained these objections to the judgment. *Held* that the defense, in order to make the judgment available for the purpose of disqualifying the State's witness, should have proved by the law of Kansas that forgery was a felony in that State, and that such a felony can be there prosecuted upon an information; and, as no such proof was adduced, the said judgment could not disqualify the witness in any court of this State, wherefore the trial court committed no reversible error in sustaining the said objections. *Pitner v. State*, 366.

WITNESS—*continued.*

4. The judgment offered to disqualify the State's witness showed upon its face that it was rendered upon an information, and not upon an indictment, and that he had been convicted in Kansas of forgery in the second degree; wherefore the prosecution contends that the said offense must either be a misdemeanor in Kansas, or, if a felony, the judgment of conviction was void because the Constitution of the United States provides that "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury." But *held* that this provision of the United States Constitution is a limitation only upon the the powers of the Federal Government, and does not impair the powers of the States. Therefore it is competent for Kansas or any other State to authorize the prosecution of felonies by information; but, to warrant the use in the courts of Texas of a judgment of conviction rendered on an information in another State for an offense which is felony in this State, it must be proved by the law of the other State that such judgment was valid under its organic and statutory law. *Id.*

5. Article 730 of the Code of Procedure disables as witnesses "all persons who have been or may be convicted of felony in this State or in *any other jurisdiction,*" unless, etc. *Held* that the expression "other jurisdiction" is not to be limited to the tribunals of the United States exercising their jurisdiction in Texas, for such a construction would be a narrow and strained interpretation of the language used, and would not fully accomplish the legislative intent. See the opinion for a clear exposition of this and the antecedent rulings. *Id.*

6. Before being required to announce for trial, counsel for the defense were permitted to privately interrogate a State's witness as to what his testimony would be. The witness refused to divulge, and the trial court refused to compel him to do so to the defense privately,—disclaiming power in the court to so compel the witness on such an occasion. *Held,* that there was no error in the refusal of the court. *Withers v. State,* 396.